IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

EMPIRICAL FOODS, INC.,

        Plaintiff and
        Counterclaim-Defendant,

    v.

PRIMUS BUILDERS, INC.,

        Defendant, Counterclaimant,
        and Third-Party Plaintiff,

    v.

SWISSLOG LOGISTICS, INC.,

        Third-Party Defendant

No. CV: 8:19-cv-00457

**ANSWER AND COUNTERCLAIM**

COME NOW Third-Party Defendant, Counterclaimant, and Third-Party Plaintiff Swisslog Logistics, Inc. ("Swisslog") and for its Answer and Affirmative Defenses to the Third-Party Complaint of Primus Builders, Inc. ("Primus") Complaint state as follows:

## PARTIES

1.      Swisslog admits the allegations in paragraph 1 of the Third-Party Complaint.

2.      Swisslog admits it is a Virginia corporation with its principal place of business at 161 Enterprise Drive, Newport News, Virginia 23603.  Swisslog admits it contracts to provide ASRS Systems, including those used in the production, storage, and distribution of food products at commercial freezer facilities.  Swisslog admits it maintains a registered agent at CSC-Lawyers Incorporating Service Company in Lincoln, Nebraska.  Swisslog denies the remaining allegations in paragraph 2 of the Third-Party Complaint.

3.     Swisslog admits that empirical is a Nebraska corporation with its principal place of business in Dakota Dunes, South Dakota and that empirical is engaged in the production, storage and distribution of meat products for wholesale in the food industry.  Swisslog also admits that empirical filed a Complaint in this matter which speaks for itself and denies the allegations in paragraph three of the Third-Party Complaint to the extent they are inconsistent with the allegations in the Complaint filed by empirical.

## JURISDICTION AND VENUE

4.     Swisslog admits that the Court has jurisdiction over this matter.

5.     Swisslog admits that the Court has personal jurisdiction over it regarding this matter.

6.     Swisslog admits that venue is proper in this Court.

## FACTS

7.     Swisslog admits this matter involved contracts which speak for themselves and denies the allegations of paragraph 7 of the Third-Party Complaint to the extent they are inconsistent with those contracts.  Swisslog further denies allegations the ASRS System is incomplete or defective and must be ripped out or replaced.  Swisslog admits the ASRS System met Demonstrable Performances and Tests on Completion and was ready for Taking-over and substantially complete.  Swisslog admits the system would be fully functional and operational if further adjustments to the system was allowed after Taking-over.  Swisslog denies the remaining allegations of paragraph 7 of the Third-Party Complaint.

8.     Swisslog admits the ASRS System is an automated, computer controlled, storage and retrieval system which was installed at empirical's facility.  Swisslog further admits that it has an international reputation as a manufacturer and installer of ASRS systems in North America and

2

Europe.  Swisslog admits that the ASRS system was able to process both pallet sized loads and case size loads.  Swisslog also admits that it has successfully installed hundreds of ASRS systems using Swisslog software, controlling automated equipment handling both pallet and case size loads and that Swisslog software was used to operate the Swisslog equipment installed at the ASRS facility.  Swisslog also admits that customization of its software can require testing and debugging as provided for in Swisslog's contracts.  Swisslog denies the remaining allegations in paragraph 8 of the Third-Party Complaint.

9.      Swisslog admits the ASRS System in certain cases involves the transmission of data between Swisslog's SynQ software, as it was customized for the empirical project, and empirical's enterprise resource planning software, Microsoft Dynamics, which was installed and customized by empirical, through a host database related to the ASRS system and an empirical database.  Swisslog further admits that Microsoft Dynamics is involved in identifying the product that was to be stored or retrieved, including the quantity, location, type and date restriction of the product.  Swisslog further admits that the Contract for "Project BPI" between Swisslog and Primus included terms setting out the process for establishing communication between SynQ and Microsoft Dynamics and that Swisslog complied with those contractual requirements, which speak for themselves.  Swisslog admits that be empirical was responsible for ensuring that the empirical Software communicated with SynQ. Swisslog denies the remaining allegations in paragraph 8 of the Third-Party Complaint.

10.      Swisslog is without knowledge of empirical's motivations.  Swisslog admits that from January 2015 to April 2016 it participated in discussions related to the ASRS System and it was not compensated during this period.  Swisslog denies the remaining allegations of paragraph 10 of the Third-Party Complaint.

3

11. Swisslog admits that in April 2016, Swisslog and empirical entered into the Bridge Agreement – Cold Storage/Freezer/Material Handling Design and Build Project, which speaks for itself. Swisslog further admits that empirical and Primus entered into the Guaranteed Maximum Sum Contract, which speaks for itself. Swisslog also admits that Primus and Swisslog entered into the Base Contract for "Project BPI", which speaks for itself. Swisslog denies the remaining allegations of paragraph 11 of the Third-Party Complaint.

12. Swisslog admits that from April 2016 to June 2016 it participated in discussions regarding the ASRS system for empirical and regarding significant reductions in the cost of the system, which included reducing the options available for the system and in which Primus participated. Swisslog denies the remaining allegations of paragraph 12 of Third-Party Complaint.

13. Swisslog admits that many of the functions that were originally discussed as part of the ASRS System were not included in the specifications for the system under the Base Contract after discussions with empirical, including an automated system for transporting product into blast freeze and storage capacity in both the pallet and mini-load sections of the ASRS systems, and that these options were eliminated to reduce costs for the overall project. Swisslog further admits that after the Base Contract was executed, empirical made changes to the required functionality in the ASRS System and that Swisslog was required to perform additional work that was not part of the Base Contract and has not been compensated for the costs and impacts of such extra work, including options which were initially discussed for the system. Swisslog denies the remaining allegations of paragraph 13 of the Third-Party Complaint.

14. Swisslog admits the Swisslog Proposal 4720, Version 5, dated August 30, 2016 (the "Specifications") is incorporated into and part of the Base Contract, and that it speaks for itself. Swisslog also admits that empirical participated in developing the Specifications and

4

adopted them for the project.  Swisslog denies the remainder of the allegations of paragraph 14 of the Third-Party Complaint.

15.     Swisslog admits that Primus and empirical entered into the Guaranteed Maximum Sum Contract and that Swisslog and Primus entered into the Base Contract, and Swisslog denies the allegations of paragraph 15 of the Third-Party Complaint to the extent they are inconsistent with the Guaranteed Maximum Sum Contract and the Base Contract.  Swisslog admits it did not participate in the negotiation of contract terms between empirical and Primus.  Swisslog denies the remainder of the allegations of paragraph 15 of the Third-Party Complaint.

16.     Swisslog is unaware of empirical's elections and therefore denies the allegations in paragraph 16 of the Third-Party Complaint regarding them.  Swisslog admits that Primus and empirical entered into the Guaranteed Maximum Sum Contract and that Swisslog and Primus entered into the Base Contract, and Swisslog denies the allegations of paragraph 16 of the Third-Party Complaint to the extent they are inconsistent with the Guaranteed Maximum Sum Contract and the Base Contract, which speak for themselves.

17.     Swisslog admits that Primus and empirical entered into the Guaranteed Maximum Sum Contract and that Swisslog and Primus entered into the Base Contract, which incorporate by reference the Specifications, which speak for themselves.  Swisslog denies the allegations of paragraph 17 of the Third-Party Complaint to the extent they are inconsistent with the Guaranteed Maximum Sum Contract and the Base Contract.  Swisslog further denies the allegations of paragraph 17 of the Third-Party Complaint to the extent they are legal conclusions to which no response is required.

18.     Swisslog admits that Primus and empirical entered into the Guaranteed Maximum Sum Contract, which speaks for itself.  Swisslog denies the allegations of paragraph 18 of the

Third-Party complaint to the extent they are legal conclusions to which no response is required. Swisslog further denies the allegations of paragraph 18 of the Third-Party Complaint to the extent they are inconsistent with the Guaranteed Maximum Sum Contract and the Base Contract.

19.     Swisslog admits that the contract documents in this matter speak for themselves, and denies any allegations in paragraph 19 of the Third-Party Complaint that are inconsistent with the allegations in those contract documents.  Swisslog further denies the allegations of paragraph 19 of the Third-Party complaint to the extent they are legal conclusions to which no response is required.  Swisslog denies the remaining allegations of paragraph 19 of the Third-Party Complaint.

20.     Swisslog admits that empirical met and communicated with Swisslog, with Primus' knowledge and approval, and directed changes to the ASRS and the Specifications after the Base Contract was executed, some of which led to change orders signed between Swisslog and Primus pursuant to the Base Contract and others led to changed work which Swisslog was required to perform and for which it was not compensated.  Swisslog denies the remainder of allegations of paragraph 20 of the Third-Party Complaint.

21.     Swisslog states the terms of the Base Contract and the Specifications as to the development of the ASRS System speak for themselves and deny the allegations of paragraph 21 to the extent they are inconsistent with their terms.  Swisslog further admits that it provided empirical with a software specification (the "Software Specification") for the ASRS System, based upon the Specifications, which empirical agreed to and signed.  After empirical signed the Software Specification, it continued to demand further changes to the functionality of the ASRS System, resulting in additional revisions to the Software Specification.  Swisslog admits the intended sequence of design, development, and deployment the ASRS System was disrupted by empirical's demands for changes to the functionality of the ASRS System, even after the parties

4811-1189-6531.1

as signed the Software Specification.   Swisslog also admits that it offered factory acceptance testing to Primus and empirical and Primus, which was declined by empirical and Primus. Swisslog further admits that changes to the ASRS System and the specifications for the ASRS System by empirical after the execution of the Base Contract resulted in changes to the anticipated project schedule and required additional work to be performed by Swisslog for which it is due compensation.   Swisslog denies the remaining allegations of paragraph 22 of the Third-Party Complaint.

22.     Swisslog admits that it was required to make changes to the ASRS System during the project, including the ones outlined in paragraph 22 of the Third-Party Complaint for which Swisslog is due compensation, and which require an adjustment to the project schedule.  Swisslog denies the remaining allegations of paragraph 22 of the Third-Party Complaint.

23.     Swisslog admits that after the GMS Contract was executed, Swisslog submitted the proposed Software Specifications for input and that the failure to provide necessary and timely input to the same impacted work on the ASRS System.  Swisslog admits it met with representatives of empirical in September and October 2017, at which time modifications to the Software Specifications were discussed.  Swisslog further admits that after the October 17, 2017 site visit, additional changes were made to the Software Specifications and to the functionality of the ASRS System which required modifications to the Software Specifications as a result of empirical-requested changes to the ASRS System.  Swisslog denies the remaining allegations of paragraph 23 of the Third-Party Complaint.

24.     Swisslog admits that Swisslog and Primus agreed to a Change Order dated April 20, 2018, which changed the contractual Taking-over date to August 16, 2018.  Swisslog further admits that it submitted a revised Software Specification to empirical and Primus in February 2018,

which included changes from the initial version of the Software Specifications. Swisslog further admits that in February 2018 it informed empirical (who did not object) that "Phase I Go Live" would be finished by August 30, 2018. Swisslog lacks knowledge or information sufficient to form a belief regarding whether empirical presented Primus with a change order on May 4, 2018. Swisslog further admits that on November 21, 2018, Swisslog provided empirical an Integration Testing Schedule which identified December 10, 2018 as the end of final regression testing and the beginning of SynQ training, to which empirical did not object. Swisslog also admits that the cumulative effect of the changes to the ASRS system required an adjustment of the contractual Taking-over date until at least the Winter of 2020. Swisslog denies the remaining allegations of paragraph 24 of the Third-Party Complaint.

25.     Swisslog admits that empirical met and communicated with Swisslog, with knowledge and approval of Primus, and directed changes to scope of the Base Contract in 2019, some of which led to change orders signed between Swisslog and Primus pursuant to the Base Contract, and others led to changed work which Swisslog was required to perform and for which it was not compensated, and which impacted the completion of the ASRS system, which communications speak for themselves. Swisslog lacks knowledge or information sufficient to form a belief regarding any "changes to the GMS Contract" between Primus and empirical. Swisslog admits that in March 2019 it advised empirical that the new Taking-over date would be April 15, 2019. Swisslog further admits that it advised the ASRS System passed the Provisional Acceptance Completion (PAC) test pursuant to the Specifications as of March 27, 2019 while noting that certain open items would be completed before final acceptance. Swisslog further admits that on April 11, 2019 empirical notified Swisslog it disputed whether PAC testing had been achieved. Swisslog admits that on April 18, 2019 Swisslog provided a schedule, which

schedule speaks for itself and Swisslog denies the allegations in paragraph 25 to the extent they misstate or misconstrue the same.   Swisslog denies the remaining allegations in paragraph 25 of the Third-Party Complaint.

26.      Swisslog admits that the ASRS System installed by Swisslog met the Demonstrable Performances as defined by the Tests on Completion under the Base Contract and was ready for Taking-over and substantially complete, subject to final testing, punch-list and software adjustments (including adjustments caused by changes to the scope of the works agreed to in the Base Contract) which Swisslog was ready, willing and able to perform but was not allowed to perform.   Swisslog further admits the ASRS System installed by Swisslog met "provisional acceptance" (PAC) requirements under the Base Contract, including  as of July 29, 2019, and that Swisslog was not allowed to conduct further testing, punch-list and software adjustments which Swisslog was ready, willing and able to perform but was not allowed to perform on the system. Swisslog denies it was required to complete "trial operational testing" requested by empirical as part of PAC.

27.      Swisslog states the requirements of the Base Contract and the Specifications regarding the completion of the ASRS System speak for themselves and deny the allegations of paragraph 27 of the Third-Party Complaint to the extent they are inconsistent with the terms of those agreements.  Swisslog further admits that the ASRS System installed by Swisslog met the Demonstrable Performances as defined by the Tests on Completion under the Base Contract and was ready for Taking-over and substantially complete, subject to final testing, punch-list and software adjustments (including adjustments caused by changes to the scope of the works agreed to in the Base Contract) which Swisslog was ready, willing and able to perform but was not allowed to perform.  Swisslog admits that empirical's position in this lawsuit is that the ASRS System is

9

not substantially complete. Swisslog admits that it was prevented access to the facility to complete final testing, debugging and adjustments which Swisslog was ready, willing and able to perform. Swisslog denies the remainder of the allegations of paragraph 27 of the Third-Party Complaint.

28.     Swisslog states the August 8, 2019 correspondence from empirical speaks for itself and denies the allegations of paragraph 28 of the Third-Party Complaint to the extent they are inconsistent with the August 8, 2019 correspondence or the subsequent correspondence from Primus to Swisslog dated August 9, 2019. Swisslog further admits there have been communications between empirical and Swisslog since August 8, 2019 related to the ASRS System and allowing Swisslog to perform final testing, debugging and adjustments which Swisslog was ready, willing and able to perform but was not allowed to perform, as well as discussions and communications about the palletizer for the ASRS System. Swisslog states that any written communications speak for themselves and deny any allegations in in paragraph 28 to the extent they are inconsistent with or misconstrue the same. Swisslog further admits that these discussions included incorrect claims by empirical that the ASRS System was defective. Swisslog denies the remainder of the allegations of paragraph 28 of the Third Party Complaint.

29.     Swisslog admits the parties discussed a resolution to the disputes between the parties related to the empirical facility and that those discussions included an in-person meeting on October 18, 2019 at empirical's offices and discussed the terms of a settlement as of that date. Swisslog denies the terms of the settlement as described in paragraph 29 of the Third-Party Complaint.

30.     Swisslog admits empirical filed the Complaint in this matter on October 18, 2019. Swisslog further admits that it prepared and submitted documents to Primus as part of settlement discussions in October 2019, including a revised Project Completion Schedule and draft testing

specification on which to base acceptance of the ASRS System prior to "Go-Live," which Swisslog submitted to Primus on October 23, 2019. Swisslog lacks knowledge or information sufficient to form a belief regarding the meaning of the term "road map" as that term is used by Primus. Swisslog admits that empirical did not comply with the terms of the proposed settlement that was discussed in October 2019. Swisslog also admits that it understands that empirical intends to abandon the ASRS System installed by Swisslog that Swisslog was not allowed to finally test, debug and adjust, despite being ready, willing and able to do so. Swisslog denies the remaining allegations of paragraph 30 of the Third-Party Complaint.

31.    Swisslog states that the Complaint speaks for itself and denies the allegations of paragraph 30 of the Third-Party Complaint to the extent they are inconsistent with the allegations in the complaint. Swisslog further admits that events for which it is not responsible require an adjustment of the project schedule. Swisslog denies the remaining allegations of paragraph 31 of the Third-Party Complaint.

## CLAIMS

### COUNT I
### Breach of the Settlement Agreement

32.    Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

33.    Swisslog states Count I of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

34.    Swisslog states Count I of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

35.    Swisslog states Count I of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

36.     Swisslog states Count I of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

37.     Swisslog states Count I of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

## COUNT II
## Breach of Contract

38.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

39.     Swisslog states the requirements of the Base Contract and the Specifications speak for themselves and deny the allegations of paragraph 27 of the Third-Party Complaint to the extent they are inconsistent with the terms of those agreements.

40.     Swisslog denies the allegations in paragraph 40 of the Third-Party Complaint.

41.     Swisslog denies the allegations in paragraph 41 of the Third-Party Complaint.

42.     Swisslog denies the allegations in paragraph 42 of the Third-Party Complaint.

43.     Paragraph 43 states a legal conclusion to which no response is required.  To the extent a response is required, Swisslog denies the allegations in paragraph 43 of the Third-Party Complaint.

## COUNT III
## Breach of Duty of Good Faith & Fair Dealing

44.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

45.     Paragraph 45 states a legal conclusion to which no response is required.  To the extent a response is required, Swisslog admits the implied duty of good faith and fair dealing is inherent in every contract, including the Base Contract.  Answering affirmatively, Swisslog denies it breached the implied duty of good faith and fair dealing.

46.     Swisslog denies the allegations in paragraph 46 of the Third-Party Complaint.

4811-1189-6531.1

47.     Swisslog denies the allegations in paragraph 47 of the Third-Party Complaint.

48.     Swisslog denies the allegations in paragraph 48 of the Third-Party Complaint.

## COUNT IV
## Unjust Enrichment

49.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

50.     Paragraphs 50 states a legal conclusion to which no response is required.  To the extent a response is required, Swisslog denies the allegations in paragraph 50 of the Third-Party Complaint.

51.     Swisslog denies the allegations in paragraph 51 of the Third-Party Complaint.

52.     Swisslog denies the allegations in paragraph 52 of the Third-Party Complaint.

## COUNT V
## Breach of Warranty

53.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

54.     Swisslog states the Base Contract speaks for itself and denies the allegations of paragraph 54 to the extent they misstate or misconstrue the same.

55.     Swisslog denies the allegations in paragraph 55 of the Third-Party Complaint.

56.     Swisslog denies the allegations in paragraph 56 of the Third-Party Complaint.

57.     Swisslog denies the allegations in paragraph 57 of the Third-Party Complaint.

## COUNT VI
## Fraud – Pre-Contract

58.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

59.     Swisslog states Count VI of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

60.     Swisslog states Count VI of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

4811-1189-6531.1

61.     Swisslog states Count VI of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

62.     Swisslog states Count VI of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

63.     Swisslog states Count VI of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

## COUNT VII
### Fraud – Post Substantial Completion

64.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

65.     Swisslog states Count VII of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

66.     Swisslog states Count VII of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

67.     Swisslog states Count VII of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

68.     Swisslog states Count VII of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

69.     Swisslog states Count VII of the Third-Party Complaint was dismissed by the Court (ECF No. 82) and no further response is necessary.

## COUNT VIII
### Indemnity

70.     Swisslog incorporates by reference the paragraphs above as if fully set forth herein.

71.     Paragraph 71 states a legal conclusion to which no response is required.  To the extent a response is required, Swisslog denies the allegations in paragraph 71.

72.     Swisslog denies the allegations in paragraph 72 of the Third-Party Complaint.

73.     Swisslog denies the allegations in paragraph 73 of the Third-Party Complaint.

## **GENERAL DENIAL**

Swisslog denies all allegations contained in the Third-Party Complaint not specifically admitted herein, including the allegations and relief sought in WHEREFORE paragraph of Primus' Third-Party Complaint.

## **AFFIRMATIVE DEFENSES**

1.     Primus' Third-Party Complaint fails to state a claim upon which relief may be granted.

2.     Primus' claims and/or recovery are barred, in whole or in part, by Primus' prior material breach.

3.     Primus' claims and/or recovery are barred, in whole or in part, by Primus' acceptance of Swisslog's performance.

4.     Primus's claims and/or recovery are barred, in whole or in part, by Swisslog's substantial performance under the Base Contract.

5.     Primus' claims and/or recovery are barred, in whole or in part, by the doctrine of waiver.

6.     Primus' claims and/or recovery are barred, in whole or in party, by the economic loss doctrine.

7.     Primus' claims and/or recovery are barred, in whole or in part, by the doctrine of estoppel.

8.     Primus' claims and/or recovery are barred, in whole or in part, by the doctrine of unclean hands.

4811-1189-6531.1

9.      Primus' claims and/or recovery are barred, in whole or in part, by Primus' failure to mitigate its damages, to the extent such damages exist.

10.     Primus' claims and/or recovery are barred, in whole or in part, by the cardinal change doctrine and/or abandonment of contract.

11.     Primus' claims and/or recovery are barred, in whole or in part, by Primus' failure to exhaust contractual remedies.

12.     Primus' claims and/or recovery are barred, in whole or in part, because Primus and/or empirical prevented and/or substantially interfered with Swisslog's performance of its claimed contractual obligations.

13.     Primus' claims and/or recovery are barred, in whole or in part, under the doctrine of recoupment.

14.     Primus' claims and/or recovery are barred, in whole or in part, by limitations or waivers contained in the Base Contract.

15.     Primus' claims and/or recovery are barred, in whole or in part, by the actions and/or omissions of others, including empirical.

16.     Primus' claims and/or recovery are barred, in whole or in part, under the doctrine of setoff.

WHEREFORE, Swisslog prays for dismissal of the Third-Party Complaint with prejudice and requests that the Court enter judgment in its favor and against Primus, for an award of attorney's fees and costs as permitted by law, and an award of all other relief that the Court deems just and equitable.

4811-1189-6531.1

## COUNTERCLAIM

Third-Party Defendant and Counterclaim-Plaintiff Swisslog Logistics, Inc. ("Swisslog"), pursuant to Fed. R. Civ. P. 13, and for its counterclaim against Third-Party Plaintiff Primus Builders, Inc. ("Primus"), states and alleges as follows:

## PARTIES

1.      Swisslog is a Virginia corporation with its principal place of business at 161 Enterprise Drive, Newport News, Virginia 23603.

2.      Primus is a Georgia corporation with its principal place of business at 8294 Highway 92, Suite 210, Woodstock, Georgia 30189.

3.      empirical foods, inc. f/k/a Beef Products, Inc. ("empirical") is a Nebraska corporation with its principal place of business at 891 Two Rivers Drive, Dakota Dunes, South Dakota 57049.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Parties, and the amount in controversy exceeds $75,000.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the actions complained of herein are alleged to have occurred within this judicial district.

## STATEMENT OF FACTS

**A.      The GMS Contract and the Base Contract**

6.      On September 2, 2016, Primus and empirical entered into a Guaranteed Maximum Sum Contract (the "GMS Agreement") whereby Primus agreed to construct a new facility (the

"New Facility") for empirical located at 360 164th Street, South Sioux City, Nebraska 68776 (the "Property").

7.      On September 2, 2016, Primus and Swisslog entered into the Base Contract for "Project BPI" (hereinafter, the "Base Contract"), that provided  Swisslog was to "design, manufacture, and install" an automated storage and retrieval system (the "ASRS System") at the Facility in accordance with the Project Specifications, 4720 BPI V5 dated August 30, 2016" (the "Specifications").

8.      Pursuant to the General Terms and Conditions, the "sole and exclusive performances to be achieved by [Swisslog]" under the Base Contract were "[t]he construction of the System in accordance with the Specifications, as measured by the Demonstrable Performances", and as defined in the Tests on Completion, to be defined by Swisslog and in the Specifications.

9.       Pursuant to the General Terms and Conditions, if "the Works fail[ed] to pass any Test on Completion, such test shall be repeated as soon as practical thereafter, provided that [Swisslog] shall be entitled to a reasonable time to conduct any condition requiring remedy in [Swisslog's] sole judgment."

10.     The General Terms and Conditions also provide that during the Project, Swisslog was "entitled to an equitable adjustment to the Contract Price and schedule to reflect any additional costs, time or both required due to [Primus'] or [empirical's] delays."   Swisslog also was entitled to an "extension of the time for completion if delay occur[ed] . . . as a result of variation of work . . . or . . . by an act or omission that is not legally attributable to [Swisslog]."

11.     The General Conditions further provide that Taking-over of the works takes place when the Tests on Completion have been satisfactorily completed or are regarded as having been satisfactorily completed.

12.     Pursuant to the Base Contract, Primus agreed to pay Swisslog $14,213,200 for its work on the ASRS system in a series of payments, including the final 10% payment upon Provision Acceptance.  Agreed written change orders increased the amount to be paid to Swisslog under the Base Contract to $15,743,940.16.

**B.      Interference with Swisslog's Work and Changes to the Project Caused Delay and Additional Costs in the Performance of Completing the ASRS**

13.     During the course of the Project empirical, acting with the knowledge of Primus, significantly interfered with Swisslog's performing its work pursuant to the Base Contract, including by dictating  various functionalities of the system,  and unreasonably requiring re-work of portions of completion portions of the ASRS System (including sometimes requiring re-work and then requiring the system to be changed back to its original configuration).

14.     Primus frequently advised Swisslog during the project that Swisslog should take direction from empirical regarding Swisslog's performance of the Base Contract, including as to changes to the work under the Base Contract.  Primus was aware of subsequent directions to Swisslog from empirical regarding Swisslog's performance of the Base Contract with Primus, some of which resulted in signed change orders between Swisslog and Primus pursuant to the Base Contract.

15.     empirical's interference and changes, of which Primus was aware and authorized, caused Swisslog to perform additional work that was over and above and in addition to what was required under the Base Contract, delayed the project, and caused Swisslog to incur additional costs in completing the ASRS.

4811-1189-6531.1

16.     By way of example, empirical:

    a.  demanded the use of specific vendor-supplied items not in the Specifications, such as Toshiba variable frequency drives (VFDs) for the pallet conveyors;

    b.  demanded that both the raw goods inbound conveyor and finished goods outbound conveyor go through a hole in the wall separating empirical's production facility from the New Facility;

    c.  demanded that the functionality of the ASRS include the ability to bring raw materials (raw goods cases) from the fresh mini-load to the production area;

    d.  demanded several customizations to Swisslog's Warehouse Management System software (SynQ), including, for example, the ability to prioritize lines of all customer orders and then allocate each line instead of each order and its line;

    e.  demanded changes to the functionality of the ASRS System and SynQ from what was identified in the Swisslog Specifications including, for example: (i) adding functionality for the storage and retrieval of pallet stacks, egg crates, and tray stacks; (ii) creating a SynQ Intelligence Touch screen to display information to operators regarding which production line a case emerging from the box cutter needs to have its contents dumped; (iii) creating SynQ Intelligence Touch screens to support the operation of Case Picking, Blast Freezer Palletization and Consolidation at the Goods-

20

to-Person workstation; (iv) creating SynQ Intelligence Portal screens to add additional functionality to Staging, Loading, and Shipping;

f.  demanded periodic software demonstrations not required by the Contract. The demonstrations then resulted in additional changes which further delayed the project and increased its costs.

17.     By way of further example, on March 3, 2017, empirical signed a Software Specification which describes the functional requirements for the warehouse management software (SynQ) to be provided by Swisslog.  The purpose of the document was to provide detailed instructions for Swisslog's software architects to extend SynQ to the ASRS System.

18.     Despite signing this Software Specification in March 2017, empirical demanded additional changes to the functionality of SynQ including above and beyond that required in the Software Specification. By way of example, empirical required that SynQ direct all production cases to the mini-load for storage to facilitate "better" case picks when pallets are needed at the goods-to-man and that SynQ be able to pause a production order at the request of the user.

19.     Still further changes to the system were required through and continuing to the summer of 2019, including an agreement as to the requirements for receiving Non-BPI Finished Goods pallets to the freezer on a purchase order and changes to the palletizer.

20.     These delays and interferences, and other issues that were not within Swisslog's responsibility or control, materially delayed the project and increased Swisslog's cost in completing its work under the Base Contract and added work above and beyond that required to be performed pursuant to the Specifications.  For example, per the Time Schedule incorporated into the Base Contract, Code Development for the ASRS System was scheduled to begin on

November 16, 2016.  However, the numerous changes to the ASRS System demanded by empirical caused this deadline to be extended.

21.     Primus was aware of the interference and changes demanded by empirical, was aware of the subsequent work performed by Swisslog, and received benefit from the extra work performed by Swisslog pursuant to the Base Contract as a result of the interference and changes directed by empirical.

**C.     The PAC/Contractual Taking-over Date**

22.     In April of 2018, Primus and Swisslog negotiated a Change Order (No. 59) which changed the contractual Taking-over date to August 16, 2018.

23.     Even after the execution of Change Order No. 59, empirical made additional demands to change the functionality and specifications for the ASRS system, such as changes to the host interface between SynQ and empirical's own internal software (Dynamics and iFix) which required an extension of the contractual Taking-over date and additional work beyond the requirements of the Base Contract and the Specifications, including as the result of continued interference and direction from empirical of which Primus was aware.

24.     empirical (with Primus' knowledge) further failed to reasonably cooperate with Swisslog in the development and integration of the Host Database.

25.     The additional changes and interference with Swisslog's work caused the date for Taking-over and PAC to be significantly extended. Such changes and interferences were continuing through August 2019.

**D.     Tests on Completion/PAC**

26.     The Base Contract provides that the Demonstrable Performances to be achieved by Swisslog were to be specified in the Tests on Completion, which were to be defined by Swisslog.

The Specifications state the Tests on Completion were also to be termed as the Provisional Acceptance Test.

27.     The Specifications outline the technical requirements of the Tests on Completion/Provisional Acceptance Test.

28.      On March 2, 2019, Swisslog delivered to Primus and empirical a System Acceptance Testing Package which outlined the Tests on Completion/PAC tests.

29.     The System Specifications provide that "Swisslog shall provide the test plans: methods, procedures and data record forms etc. for various tests to customer 15 days before the respective tests, Customer shall confirm the test plan within 7 days after receiving it from Swisslog. If Customer is not able provide comments for the same within 7 days of receipt, such procedure shall be deemed approved."

30.     Primus and empirical did not provide any additional comments to the System Acceptance Testing Package within 7 days as provided in the System Specification.

31.     On March 12, 2019, Swisslog notified empirical and Primus of its intent to start PAC the following week.

32.     Swisslog performed the Tests on Completion/PAC tests in on or about March 27, 2019 and satisfied those tests to the extent possible based on issues that were not the responsibility of Swisslog, including continuing changes and adjustments to the project such as regarding the palletizer.

33.     On or about March 27, 2019, Swisslog informed empirical and Primus that it had completed all Tests on Completion leading to PAC and Takeover and provided a PAC (Takeover) Certificate to empirical.

4811-1189-6531.1

34.     empirical, however, refused to proceed to Taking-over and a trial operation of the ASRS System.

**E.     July Testing**

35.     On April 11, 2019, empirical demanded additional tests which were not required under the Base Contract.  empirical indicated that it would not sign off on PAC unless Swisslog performed certain additional tests set forth in a "Trial Operations Document."

36.     Although not contractually specified to achieve PAC, Swisslog performed certain of the tests at empirical's request in July 2019 as part of user acceptance testing (UAT).  The tests performed by Swisslog in July 2019 confirmed that the Tests on Completion/PAC had been achieved to the extent possible based on issues that were not the responsibility of Swisslog.

37.     empirical again refused Taking-over of the Project and a trial operation in July 2019.

**F.     Termination**

38.     On August 9, 2019, counsel for Primus sent a letter to Markus Schmidt, President of Swisslog (the "Swisslog Termination Letter").  In the Swisslog Termination Letter, Primus gave "notice of its intent to terminate and rescind its contract with Swisslog . . . . [on] Friday, August 19, 2016" unless specified conditions outlined in the letter were met which were not part of the requirements of the Base Contract.

39.     Primus' termination of Swisslog was wrongful and was made despite the fact that the ASRS System met the Tests on Completion/PAC and therefore was ready for Taking-over. Following Takeover, Swisslog would have made final testing, punch-list and software adjustments (including adjustments caused by changes to the scope of the works agreed to in the Base Contract) which Swisslog was ready, willing and able to perform but was not allowed to perform.

40.     Primus has not paid Swisslog the balance of the Base Contract price, including the 10 percent due at PAC, the amount of signed change orders, as well as additional scope changes, and has been damaged in the amount of these unpaid amounts, which amount is due and owing to Swisslog.

## COUNT I
## Breach of Contract

41.     Swisslog repeats and realleges the allegations set forth in paragraphs 1 through 40 of its counterclaim.

42.     The Base Contract is a valid and enforceable contract.

43.     Pursuant to the Base Contract, Swisslog and Primus agreed to a "Payment Schedule" whereby Swisslog would invoice Primus upon reaching certain "milestones toward the completion of the System to be paid on a net 30 basis . . . ."

44.     The original Contract Price for the Work performed by Swisslog was $14,213,200. As a result of agreed Change Orders, agreed adjusted contract amount for the services and materials provided by Swisslog is not less than $15,984,849, and as a result of additional scope changes, the total contract price for the reasonable value of the services and materials provided by Swisslog pursuant to the Base Contract is not less than $17,157,430.

45.     Swisslog has provided services and materials for which it has not been paid under the Base Contract in an amount to be proven at trial but no less than $3,071,492.

46.     Primus materially breached the Base Contract by improperly terminating Swisslog when Swisslog had substantially performed its obligations under the Base Contract, had not materially breached the Base Contract or, to the extent any alleged breach of the Based Contract

by Swisslog was material, Primus has waived by material breach by its continued acceptance of performance by Swisslog.

47.     Primus also breached the Base Contract by failing to pay Swisslog as required by the Base Contract, including for changes under the contract.

48.     Swisslog has suffered damages in an amount to be determined at trial as a result of Primus' breach including, but not limited to, the unpaid amount due and owing to Swisslog.

## COUNT II
### Breach of Implied Duty of Good Faith and Fair Dealing

49.     Swisslog repeats and realleges the allegations set forth in paragraphs 1 through 48 of its counterclaim.

50.     Primus at all times owed a duty to use good faith and fair dealing in execution, performance and enforcement of the Base Contract.

51.     Primus breached the duty of good faith and fair dealing by, among other things, improperly terminating the Base Contract and failing to pay Swisslog amounts due and owing to Swisslog under the Base Contract.

52.     Swisslog was deprived of the benefit of bargained for consideration due to Primus' improper termination of the Base Contract and failure to pay Swisslog amounts due and owing to Swisslog under the Base Contract.

53.     Swisslog has suffered damages in an amount to be determined at trial as a result of Primus' breach including, but not limited to, the unpaid amount due and owing to Swisslog.

## COUNT III
### Unjust Enrichment/Quantum Meruit

54.     Swisslog repeats and realleges the allegations set forth in paragraphs 1 through 53 of its counterclaim.

4811-1189-6531.1

55.     In the alternative, Swisslog provided labor and materials in connection with the ASRS system which were above and beyond the work required by the Specifications.

56.     Primus received a benefit from the labor and materials provided by Swisslog in connection with the ASRS system which were above and beyond the work required by the Specifications.

57.     Primus has retained the benefit Swisslog conferred.

58.     Primus, in justice and fairness, ought to pay Swisslog for the benefit provided by Swisslog for the services and materials provided.

59.     Swisslog has been harmed, and Primus unjustly enriched, in an amount to be proven at trial.

WHEREFORE, Third-Party Defendant Swisslog Logistics, Inc. respectfully requests that the Court enter a judgment in its favor and against Defendant and Counterclaimant Primus Builders, Inc. in the amount to be proved at trial, plus interest and its costs and fees incurred pursuant to the Nebraska Construction Prompt Pay Act, and such other and further and additional relief to which it may be entitled.

## DEMAND FOR JURY TRIAL

Swisslog respectfully requests a trial by jury on all claims so triable.

4811-1189-6531.1

Dated this 4th day of December 2020.

SWISSLOG LOGISTICS, INC., Third-Party
Defendant

By: */s/ Jeremy Fitzpatrick*
     Jeremy Fitzpatrick, Bar No. 21943
     Joshua S. Weiner, Bar No. 25565
     Kutak Rock LLP
     The Omaha Building
     1650 Farnam Street
     Omaha, NE  68102-2103
     (402) 346-6000
     jeremy.fitzpatrick@kutakrock.com
     joshua.weiner@kutakrock.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certified that on December 4, 2020 he electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which sent notification of filing to all CM/ECF participants of record.

/s/ *Jeremy Fitzpatrick*
Jeremy Fitzpatrick

28