## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EMPIRICAL FOODS, INC., | ) | |
|     Plaintiff, | ) | Case No. 8:19-cv-00457 |
| v. | ) | |
| PRIMUS BUILDERS, INC., | ) | **BRIEF IN SUPPORT OF PRIMUS** |
|     Defendant, Plaintiff in Counterclaim, | ) | **BUILDERS INC.'S MOTION FOR** |
|     and Third-Party Plaintiff, | ) | **SANCTIONS AGAINST** |
| v. | ) | **EMPIRICAL FOODS INC. BASED** |
| SWISSLOG LOGISTICS, INC., | ) | **UPON VIOLATIONS OF THE** |
|     Third-Party Defendant. | ) | **COURT'S ORDER OF 12/22/20** |

## I.     INTRODUCTION

On January 25, 2021, after a Hearing on a non-party's Motion for Protective Order, the Court found that Plaintiff and Defendant in Counterclaim empirical foods, inc. ("empirical") "is in violation of order [100] and will be sanctioned" and directed Primus and Swisslog to file Motions for Sanctions 21 days after completion of the mediation.  (ECF No. 113).  Since the mediation conducted between January 25-26, 2021 did not lead to a successful resolution of this lawsuit, Primus now details empirical's violations of ECF No. 100, entered by this Court on December 22, 2020 ("12/22/20 Order").  This filing does not address or detail empirical's ongoing violations of Order (ECF No. 65) entered by this Count on August 27, 2020 ("8/27/20 Order"), or its affirmation (ECF No. 81).

## II.     BACKGROUND

**December 8, 2020 Status Conference**.  The Court conducted a status conference on December 8, 2020, to discuss the status of discovery, including the Parties' previously submitted draft Rule 26(f) Report (ECF No. 70), as well as empirical's compliance with the Court's 8/27/20 Order.  [Declaration of Jeffrey J Nix, ("Nix Dec."), ¶4].  Counsel for empirical (David Pope)

represented to the Court that empirical had fully complied with the 8/27/20 Order and requested that Primus and Swisslog provide dates to begin end-to-end testing of the ASRS System. [Nix Dec. ¶5]. Counsel for Primus (Jeff Nix) represented empirical had not complied with the 8/27/20 Order, indicating for example that empirical had still not provided copies of the software it hosted and that controlled the ASRS System (i.e., ERP, iFIX, WMS/SynQ) or the transaction and event logs that would reflect changes, modification or faults recorded by such software. [Nix Dec. ¶6]. Counsel for empirical then represented it was not possible for empirical to produce copies of the software and/or the transaction and event logs as required by the 8/27/20 Order. [Nix Dec. ¶7]. The Court then directed the parties to attempt to settle the case through mediation on or before January 31, 2021 and deferred all pending discovery disputes for a status conference set for February 2, 2021. [Nix Dec. ¶8]

The Court then requested the Parties to explore available mediators (both private or court appointed) and to identify what documents and information each party would require to conduct a successful mediation. [Nix Dec. ¶9]. Counsel for empirical (David Pope) indicated empirical would require: 1.) copies of any insurance policies that might provide coverage for empirical's claims, and 2.) emails exchanged externally between Primus and Swisslog regarding problems with the ASRS system, (i.e., defects, delays, disputes, costs, and "pointing fingers"). [Nix Dec. ¶10]. Counsel for Primus (Jeff Nix) and counsel for Swisslog (Jeremy Fitzpatrick), indicated they would require: 1.) emails exchanged internally within empirical regarding its decision to replace the ASRS System, 2.) emails exchanged externally between empirical and Westfalia (the contractor engaged to replace the ASRS System), and 3.) emails exchanged externally between empirical and Sikich (the vendor engaged to modify the ERP). [Nix Dec. ¶11]. The Court then directed the parties to submit a progression order on or before December 18, 2020, identifying

mediators, mediation dates, and a schedule required for the exchange of information required for a successful mediation.  [Nix Dec. ¶12].

**December 17, 2020 Hearing**.  When counsel for the parties were unable to agree upon the scope and extent of discovery required to conduct the mediation, the Court held a hearing on December 17, 2020.  [Nix Dec. ¶13].  Counsel for empirical (David Pope) argued that empirical would require the production of emails (both internal and external) from 8 custodians of Primus and 13 custodians of Swisslog (originally the number was 18) for the years between 2016 and 2019.  [Nix Dec. ¶14].  Counsel for Primus (Jeff Nix) and counsel for Swisslog (Jeremy Fitzpatrick), indicated it would not be possible to collect, review and produce emails from such a high number of custodians, spanning such a large period of time, prior to the upcoming mediation that was scheduled to be conducted on January 25 and 26, 2021.  [Nix Dec. ¶15].  Primus also noted that empirical had still not provided any information detailing its alleged damages in the case.  [Nix Dec. ¶16].  The Court reminded the parties that mediation would not require the same scope of discovery as litigation, after which the Parties agreed that the production of emails (both internal and external) from a much smaller number of custodians would be sufficient for the purposes of mediation.  [Nix Dec. ¶17].  The Court then extended the deadline from December 18, 2020, until December 21, 2020, for the Parties to submit a proposed progression Order defining the parameters for the mediation.  [Nix Dec. ¶18].

**December 22, 2020 Order**.  On December 21, 2020, counsel for empirical drafted (with minor edits from Primus and Swisslog) and submitted a proposed progression order for the Court.  [Nix Dec. ¶19].  On December 22, 2020, the Court adopted, signed, and entered the Order and required empirical to make the following disclosures to allow for a successful mediation.  [Nix Dec. ¶20]:

"2.    empirical shall produce to Primus and Swisslog:

a.    empirical's contract with Westfalia for repair/replacement of the existing ASRS System.

b.    empirical's consulting contract with Sikich LLP for services relating to iFix, Microsoft Dynamics and the ASRS System.

c.    empirical's schedule with Westfalia for repair/replacement of the existing ASRS System.

d.    Non-privileged internal communications, and external communications between empirical and Westfalia and Sikich, relating to the project, including the design, installation, commissioning, testing and operating performance of the existing ASRS System and related iFix and Microsoft Dynamics ERP systems, as well as the need, cost, scope, plans, and schedule to modify/repair/replace the foregoing systems as they relate to the ASRS, to or from the following custodians, between January 1, 2017 and February 13, 2020 (the date of the Westfalia contract), except that any such communications reflecting damages shall be produced through December 14, 2020.

| Empirical Custodians |
|---|
| 1.  David Berghult |
| 2.  Nick Roth |
| 3.  Spencer Frankl |
| 4.  David Layhee |

e.    Pursuant to FRE 408, by January 6, 2021, empirical shall furnish to the parties and mediators a statement of damages empirical seeks to recover divided into general categories."

(ECF No. 100).  Importantly, none of the parties ever sought to amend or modify the 12/22/20 Order. Primus then prepared for the mediation and reasonably relied upon empirical complying with the disclosures required under the Order, especially in view of the fact that empirical was the principal author of its own disclosure obligations.  [Nix Dec. ¶21].

**December 31, 2020 Document Production.**  Empirical produced documents bearing the bates range EMP_0000891 to EMP_0011343 (10,452 images) on December 31, 2020.  [Nix Dec. ¶22, and the cover letter accompanying such production attached as ***Exhibit 1*** thereto].  In its production letter, empirical claimed that the production included "Westfalia contract documents

and schedules (EMP_0011278 - EMP_0011343) and Sikich contract documents (EMP_0011247 - EMP_0011277)." However, in reality, empirical produced a partial copy of the Westfalia contract document, dated February 13, 2020 ("Westfalia Contract") (EMP_0011278 – EMP_0011343) and a contract between empirical and Sikich, dated February 24, 2017 ("2017 Sikich Contract") relating to modifications of the ERP to support the Swisslog ASRS System, (EMP_0011247 – EMP_0011277), all of which were designated AEO (Attorneys' eyes only). [Nix Dec. ¶23, and the Westfalia Contract and the 2017 Sikich Contract attached as *Exhibits 2 and 3,* respectively, thereto]. Rather than produce the document as an individual PDF, empirical identified the documents by bates number within the overall production, so it was not readily available for review until the entire production could be downloaded and processed. Additionally, the Westfalia contract was not complete. [Nix Dec. ¶24]. Notably, the Westfalia Contract, contained only commercial boilerplate terms, and was missing eight (8) of the nine (9) attachments called out. (EMP_0011321 – EMP_0011343). [Nix Dec. ¶25]. Moreover, the Westfalia documents only addressed work for Phase I (rip out and replacement of the ASRS in the freezer/pallet load section of the Building with 9,000 pallet spaces), and did not address the Phase II work (rip out and replacement of the ASRS in the cold storage/case load section of the Building with 42,000 case spaces). [Nix Dec. ¶26].

**January 6, 2021 Damages Disclosure**. Empirical provided very limited information regarding its alleged damages in Plaintiff's Initial Rule 26(a)(1) Disclosures. Entirely bereft of any detail, empirical calls out a lump sum bucket of $20 million in damages for breach of contract, $5 million for consequential damages, and $2 million for out of pocket damages. [Nix Dec. ¶27 and Plaintiff's Initial Rule 26(a)(1) Disclosures attached as *Exhibit 4*, thereto]. Faced with empirical's practically empty disclosure, it was critical for Primus and Swisslog to better

understand empirical's damage claims in order to conduct a meaningful mediation.  [Nix Dec. ¶28].

On January 6, 2021, in response to Swisslog's Interrogatories, empirical for the first time identified previously un-plead causes of action (Rescission and Restitution) and newly alleged damages against Primus ($6.1 million Phase I, and TBD Phase II), as reproduced in the following table.

| Basis for Damages | Damages Against Primus | Damages Against Swisslog |
|---|---|---|
| Rescission of GMS Contract—all amounts paid to Primus thereunder | $33,342,253 | N/A |
| Restitution for unjust enrichment — amounts unjustly received by Primus and Swisslog | $33,342,253 | $13,887,431 |
| Breach of GMS Contract — cost of repairing facility | $6,161,813.14 (Phase I Westfalia repair), plus cost of Phase II repair (TBD) | N/A |
| Breach of GMS Contract — difference between the value as constructed and the value if built according to contract | $15,743,940 | N/A |
| Breach of GMS Contract — difference between expense incurred to complete the Work and unpaid balance of the Guaranteed Maximum Sum | $6,161,813.14 (Phase I Westfalia repair), plus cost of Phase II repair (TBD), minus $2,192,571 | N/A |
| Breach of GMS Contract — storage costs caused by failure to deliver functional System | $564,000 per month from date of termination | N/A |
| Breach of GMS Contract — liquidated damages for failing to meet substantial completion date | $1,000,000 | N/A |

| Basis for Damages | Damages Against Primus | Damages Against Swisslog |
|---|---|---|
| Loss incurred in reliance on promises — amount paid for the System, plus amounts paid as a result of not terminating | N/A | $13,887,431, plus $6,768,000 ($564,000 per month from substantial completion date to date of termination) |
| Loss incurred in reliance on negligent misrepresentations — difference between the value of the System received and the value given for it, plus the pecuniary loss suffered otherwise as a consequence of reliance on misrepresentations | N/A | $13,887,431, plus $6,768,000 ($564,000 per month from substantial completion date to date of termination) |

[Nix Dec. ¶29, and empirical's Objections and Responses to Swisslog's Interrogatories, pages 20 – 22, Response #27, attached as *Exhibit 5* thereto]. Because the alleged damages under Phase I were based upon a lump sum of $6.1 million and the damages under Phase II were simply called out as TBD, it became critical for Primus to gain full access to all communications between empirical and Westfalia (the replacement contractor performing the work on Phase I and Phase II work). [Nix Dec. ¶30].

**January 7, 2021 Document Production**. Empirical produced documents bearing the bates range EMP_0011344 to EMP_0019476 (8,132 images[1]) on January 7, 2021. [Nix Dec. ¶31, and the cover letter accompanying such production attached as *Exhibit 6* thereto]. There were no additional Westfalia contract documents, Sikich contract documents, or damages documents included within the January 7, 2021 production. [Nix Dec. ¶32].

**January 14, 2021 Document Production.** Empirical produced documents bearing the bates range EMP_0019477 to EMP_0055297 (35,820 images) on January 14, 2021. [Nix Dec.

---

[1]     One image generally (not always) equates to one page of documents produced. [Nix Dec. ¶31].

¶33, and the cover letter accompanying such production attached as ***Exhibit 7*** thereto]. Included within the production, empirical produced Exhibit 1 to the Westfalia Contract, "Westfalia Proposal dated January 30, 2020, Version 7" (EMP_0055223), designated as AEO. [Nix Dec. ¶34]. In its production letter, empirical claimed that it was "producing a Westfalia proposal dated January 30, 2020 (EMP_0055223)." Again, the proposal was produced as part of the overall production and could not be accessed until the entire production could be downloaded and processed. When Primus was finally able to access the document, it discovered that, unbeknownst to Primus and Swisslog, empirical had redacted the proposal, despite the Court's 12/22/20 Order requiring its unqualified production. [Nix Dec. ¶35]. The January 30, 2020 proposal ("Phase I Proposal") detailed the scope of work under Phase I, and was Exhibit 1 to the Westfalia Contract that had been made available by empirical two weeks earlier, within the December 31, 2020 production. [Nix Dec. ¶36]. Although the Phase I Proposal was designated AEO, empirical redacted approximately eight (8) pages of material information from the seventy-four (74) page document, including the price breakdown and the "throughput requirements"[2] of the new system, both of which were critical to understanding empirical's claims, allegations, and damages. [Nix Dec. ¶37, and the redacted Phase I Proposal attached as ***Exhibit 8*** thereto].

**January 20, 2021 Document Production**. Empirical produced documents bearing the bates range EMP_0055298 to EMP_0087811 (32,513 images) on January 20, 2021. [Nix Dec. ¶39, and the cover letter accompanying such production attached as ***Exhibit 9*** thereto]. Included within the production, empirical identified five (5) earlier versions of the Phase I Proposal (EMP_0087334 – EMP0087699) along with the previously undisclosed Phase II Proposal

---

[2] "Throughput" is a technical term which defines the speed at which materials pass to and fro through the ASRS System (i.e., pallets/hour; cases/minute, etc.). "Throughput" is one of the alleged material defects that have been identified by empirical as a basis to rip out and destroy the $14 million ASRS System, so the "throughput" of the replacement system is obviously critical to this lawsuit. [Nix Dec. ¶38].

(EMP_0087781).  [Nix Dec. ¶40].  Once again, the earlier versions of the Phase I proposals and Phase II proposal were embedded within the overall production, not readily available for review until the entire production could be downloaded and processed.   Again, despite the Court's 12/22/20 Order requiring the unqualified production of the Wesfalia contract documents, and without providing any notice of its intention to withhold portions of the proposals, empirical produced the proposals with substantial redactions.  [Nix Dec. ¶41].   Although the Phase II Proposal was designated AEO, empirical redacted fourteen plus (14+) pages of material information from the thirty (30) page document, including the price, "throughput requirements" of the new system, and virtually the entire scope of work.  [Nix Dec. ¶42, and the redacted version of the Phase II Proposal is attached as *Exhibit 10* thereto].  When counsel for Primus and Swisslog asked for unredacted copies of the Phase I and Phase II proposals, counsel for empirical (Kathryn Clausing) sent an email to Swisslog on January 20, 2020 stating, "Westfalia objected to the production of this document, and prior versions of this, in un-redacted form, even when treated as AEO."  [Nix Dec. ¶43, and a copy of the Clausing email is attached as *Exhibit 11* thereto].

**Westfalia Protective Order.**  On the evening of January 24, 2021, mere hours before the scheduled start of mediation in this action, Westfalia filed a Motion for Protective Order (ECF No. 109) seeking protection under a Rule 45 Subpoena ("Westfalia Motion") previously served by Swisslog claiming empirical should not be required to disclose the redacted portions of the Phase I and Phase II proposals.  [Nix Dec. ¶44].  The Westfalia Motion made no mention of, or even acknowledged, the 12/22/20 Order requiring that empirical produce copies of its contract and correspondence with Westfalia.  [Nix Dec. ¶45].  Instead, Westfalia claimed that the redacted contents contained proprietary, confidential, or technical information that was prohibited from disclosure under the Westfalia Phase I Contract.  [Nix Dec. ¶46].  Empirical joined in the Motion

that same evening (ECF No. 111) further refusing to produce copies of the redacted portions of the Phase I and Phase II Proposals within its possession, custody and control.  [Nix Dec. ¶47].

**January 25 Hearing.**   The Court conducted an emergency hearing upon Westfalia's Motion on the morning of January 25, 2020, the first day of mediation, just minutes before the scheduled sessions were to begin.  [Nix Dec. ¶48].  Counsel for Primus (Jeff Nix) and counsel for Swisslog (Jeremy Fitzpatrick) argued that empirical was required to produce full and complete copies of the Westfalia contracts under the 12/22/20 Order.  [Nix Dec. ¶49].  Counsel for empirical (Eric Connolly) argued that empirical was excused from compliance with the 12/22/20 Order because the Westfalia Contract contained a "Confidentiality Provision" prohibiting the disclosure of propriety, confidential and technical information within the Phase I and Phase II Proposals absent consent from Westfalia.  [Nix Dec. ¶50].  Counsel for Primus and Swisslog countered that: 1.) empirical was the principal author of the 12/22/20 Order, 2.) empirical had never sought to modify or amend the 12/22/20 Order before it became final and binding, 3.) the Westfalia Contract did not justify empirical's non-compliance with the 12/22/20 Order, and 4.) the Westfalia Contract was executed on February 13, 2020, almost one year before the 12/22/20 Order, yet empirical failed to provide in those portions of the Order it drafted any protections based upon compliance with the Westfalia Contract.  [Nix Dec. ¶51].

The Court considered the circumstances and argument and then ruled "I truly believe, based upon the totality of how this case has progressed, that empirical is attempting to avoid my orders."  [Nix Dec. ¶52].  The Court further found that empirical was in violation of the Court's 12/22/20 Order to produce the Westfalia contract, and for that violation, it would be sanctioned. [Nix Dec. ¶52].  In response to a question from counsel as to whether the mediation should proceed, the Court stated: "If you can.  If you cannot, you may include in your Motion for Sanctions the

sanctions that are appropriate for being unable to mediate as scheduled, because this should have been brought up a long time ago to me.  It should have been discussed with me before that Westfalia was going to have a vote, and it never was.  We are in recess."  [Nix Dec. ¶53].  The Court then confirmed its Ruling in a written order entered later that same morning.  (ECF No. 113).

Since the January 25, 2021 Hearing, Primus and Swisslog have identified even more violations of this Court's 12/22/20 Order.  Given that empirical had produced 86,917 images, and that 68,333 or 79% of the total images produced by empirical had been produced on or after January 14, 2021, (less than six (6) business days prior to the 1/25/21 hearing and start of the mediation) Primus and Swisslog had not yet identified all of the violations of the 12/22/20 Order committed by empirical and therefore could not present all such violations to the Court during the hearing on January 25, 2021.  [Nix Dec. ¶54].  Those additional violations, to the extent that they have now been identified, will also be addressed in this Brief.

## III.   ARGUMENT

**The Scope of Sanctions**.  Federal Rule of Civil Procedure 16(f)(1)(C) authorizes this Court to impose sanctions against empirical, for among other things, the failure to obey a scheduling or other pretrial order.  Likewise, Federal Rule of Civil Procedure 37(b)(2) authorizes sanctions for a party's failure to obey an order to provide discovery.  Under these Rules, this Court has very broad discretion in fashioning sanctions to remedy empirical's failure to comply with the 12/22/20 Order.  *See* Fed. R. Civ. P. 16(f)(1) & (2); Fed. R. Civ. P. 37(b)(2)(A); *Rice v. NBC Universal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *2 (S.D.N.Y. July 10, 2019), report and recommendation adopted, No. 19-CV-447 (JMF), 2019 WL 3752491 (S.D.N.Y. Aug. 8, 2019) ("The decision whether to impose sanctions [under Rule 16] is left to the Court's discretion."); *Applied Underwriters, Inc. v. Top's Pers.*, Inc., No. 8:15CV90, 2017 WL 3396453, at *10 (D. Neb.

Aug. 7, 2017) ("The court has broad discretion to sanction the disobedient party under Rule 37(b)(2)).

Moreover, "A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). Of course, the nature and extent of such sanctions turn upon the scope of the violations committed by empirical, and it appears those violations extend beyond those raised and discussed during the hearing on January 25, 2021.

**The Westfalia Contracts**. Here, empirical attempted to argue that the terms of the Westfalia Contract excused its intentional non-compliance with the 12/22/20 Order of which empirical was the principal author. As was discussed during the hearing, empirical cannot openly defy the 12/22/20 Order based upon objections made by Westfalia under the terms of the Westfalia Contract. Westfalia is not a party to the 12/22/20 Order, Westfalia is not a party to this action, and Westfalia does not have standing to direct discovery required by the 12/22/20 Order.

It may surprise and possibly trouble the Court that even as of this date, <u>empirical has still not provided</u> Primus and Swisslog with full and complete copies of all the exhibits that comprise the Westfalia Contract as required by the 12/22/20 Order, namely Exhibits 3, 4, 7, 8, and 9. [Nix Dec. ¶55].

Although empirical finally provided Primus and Swisslog with un-redacted copies of the Phase I and Phase II proposals at 11:30 a.m. on January 25, 2020, such disclosure did not come until *after* the mediation had already begun which deprived Primus (and its experts) sufficient time to fully digest the contents thereof. [Nix Dec. ¶56 and un-redacted copies of the Phase I Proposal and Phase II Proposal attached as ***Exhibits 12 and 13***, respectively, thereto].

-12-

Some aspects of the un-redacted proposals, finally produced on January 25, 2021, suggest reasons for empirical's decision to allow the redactions to stand until this Court directed otherwise. By way of example, the un-redacted portions of the Westfalia Contract documents reveal that 1.) empirical is removing and replacing portions of the ASRS System under the Phase I Contract that have never been identified as being defective as required by the 8/27/20 Order, 2.) the "throughput" requirements under the Westfalia Contract do not materially differ from the "throughput" standards established by Swisslog, 3.) the Phase II Contract involves replacing the 42,000 position case system that Swisslog installed with a 2,200 position pallet system to be installed by Westfalia—a drastically different system (a change that allows empirical to handle pallets holding 20+ cases at a time, as opposed to single cases) than empirical had previously designed, purchased and continually modified, and 4.) empirical has no grasp upon the amount of alleged damages it seeks to recover from Primus and Swisslog.  [Nix Dec. ¶57].  Primus cannot say with absolute certainty that the redacted Phase I and Phase II proposals (and other documents not produced) constituted the sole cause of the failure of the mediation on January 25-26, 2021.  What Primus can say with reasonable certainty, is that empirical's violations of the 12/22/20 Order were a major contributing factor in causing the mediation to fail, and that such violations resulted in further deterioration of trust in empirical and its counsel.

The un-redacted Phase I and Phase II proposals, produced at 11:30 am after the start of the mediation on the morning of June 25, 2021, have since revealed that empirical not only redacted portions of the Phase I and Phase II Proposals, but also *withheld* critical information from Primus and Swisslog that was not only required for a successful mediation, but was  also required to have been produced under the 12/22/20 Order.  [Nix Dec. ¶58].  The redacted portions of the Phase I and Phase II proposals reveal that empirical, despite its continual denials to the contrary, is

essentially ripping out and replacing the entire $14 million ASRS System installed by Swisslog. [Nix Dec. ¶59].

The scope of work under the Phase I contract includes: 1.) ripping out all (2) of the pallet load cranes, 2.) ripping out all of the pallet load conveyors, 3.) ripping out the horizontal members of the 9,200 pallet load racking system, never before identified as defective, and 4.) replacing all of the Swisslog equipment with two (2) Westfalia pallet cranes, Westfalia pallet conveyors, and new horizontal members for the existing pallet racking system at a contract cost of $5.6 million. [Nix Dec. ¶60].

The scope of work under the Phase II Proposal is far more severe and includes: 1.) ripping out all (4) case load cranes, 2.) ripping out all case load conveyors, 3.) ripping out the entire 42,000 case load racking system, 4.) adding a new mezzanine to the existing building, 5.) replacing all of the Swisslog case load equipment with two (2) Westfalia pallet cranes, Westfalia pallet conveyors, and an entirely new 2,300 pallet position racking system, and 6.) adding new and additional equipment not within the Swisslog scope of work at a budgeted cost of cost of $9.7 million. [Nix Dec. ¶61].

**Sikich Contracts**.  Empirical produced the 2017 Sikich Contract, under which it appears the ERP subsystem furnished by empirical would be modified to integrate and communicate with the WMS/SynQ provided by Swisslog.  [Nix Dec. ¶62].  Based upon disclosures from empirical, there were three (3) changes/modifications to the ERP subsystem relative to ASRS System installed by Swisslog between March 2019 and the date Primus and Swisslog were terminated from the Project on August 8, 2019.  [Nix Dec. ¶63, and page 11 of Plaintiff's Second Supplemental Responses to Primus Expedited Discovery Requests" dated December 2, 2020 attached as *Exhibit 14* thereto].  These changes would presumably have been made under or at

-14-

least in relation to the 2017 Sikich Contract.  [*Id.*]

Empirical also disclosed there have been seventy-nine (79) changes/modifications to the ERP subsystem between August 8, 2019 (the date the Primus and Swisslog Contracts were terminated) and October 23, 2020 (almost 2 months after the 8/27/20 Order was issued) which it summarily yet without support states did not impact the ASRS System.  These changes would presumably not have been made under the 2017 Sikich Contract.  [Nix Dec. ¶64 and "Plaintiff's Second Supplemental Responses to Primus Expedited Discovery Requests" dated December 2, 2020, *Exhibit 14* attached thereto, and pages 11 through 16 therein.][3]

Consequently, empirical should have produced the modified and/or updated contract(s) with Sikich that provides for continuing work and modifications to the ERP software which empirical claims do not impact the Swisslog-installed ASRS System.  [Nix Dec. ¶65].  Indeed, the 12/22/20 Order expressly required empirical to produce "empirical's consulting contract with Sikich LLP for services relating to iFix, Microsoft Dynamics and the ASRS System."  [Nix Dec. ¶66].  Yet empirical failed to produce the consulting contract it issued to Sikich for the changes made to the ERP to support the Phase I work provided by Westfalia under the Westfalia Contract, as well as other contracts issued to Sikich for changes to the ERP. [*Id.*].

Importantly, Primus has since learned that Sikich – not empirical – produced one of the multiple contracts under which empirical directed changes to the ERP between August 8, 2019 and December 21, 2020.  [Nix Dec. ¶67].  In response to a Rule 45 Subpoena, Sikich (not empirical) produced Purchase Order #00319380-1 issued by empirical on February 27, 2020 ("PO 9380").  [Nix Dec. ¶68 and the PO 9380 attached as *Exhibit 15*, thereto].  PO 9380 defines the

---

[3]      Plaintiff's "Second Supplemental Responses to Primus Expedited Discovery Requests" dated December 2, 2020 attached as Exhibit 14 hereto, only reflects Sikich invoices through October 23, 2020.  Exhibit 14 does not reflect all of the invoices Sikich produced in response to the Rule 45 Subpoena Primus served.  [Nix Dec. ¶64].

services to be performed as "Automated cold Storage – TRD/DCS WESTFALIA/DYNAMICS HOST DEVELOPMENT FOR THE DCS CONVERSION AND TRD PHASE I INSTALL." [Nix Dec. ¶69].  The term TRD refers to the Facility that Primus constructed and the Swisslog-installed ASRS System at issue in this case.[4]  [Nix Dec. ¶70].  The term DCS refers to another empirical owned facility on the same property, which contains a separate ASRS System that Westfalia installed.[5]  [Nix Dec. ¶71].  Most of the invoices Sikich submitted for the ongoing changes to the ERP, made between April 15, 2020 and December 22, 2020, refer to PO 9380 "Westfalia Integration", - the invoice referencing Phase I that empirical failed to produce.  [Nix Dec. ¶72].

However, invoices Sikich produced, in response to Primus's Rule 45 Subpoena, indicate there were even more purchase orders empirical issued, which directed changes to the ERP, that were likewise not produced by empirical.  [Nix Dec. ¶73].  These other purchase orders issued by empirical, referenced within the Sikich Invoices, include.

> PO# 292915 "SSRS Server Rebuild";
> PO# 4641 "Sales Order Batch Sorting";
> PO# 4780 "DB Logging;
> PO# 4855 "GL Reporting";
> PO# 302299 "Manual Autograde Journal Blocking";
> PO# 299014 "Invoice Branding";
> PO# 5397-2 "Maintenance Issue With Dynamics on OPEN Projects Keeping Demand Open Projects Keeping Demand Open On Parts and or Parts Showing up on Auto Purchasing With No Demand Created";
> PO# 2999014 "Invoice Branding";
> PO#5397 "Dynamics Issue";

---

[4]     The Phase I Proposal incorporated into the Westfalia Contract empirical executed defines TRD as the "Two Rivers Distribution" Facility at dispute in this litigation.  More specifically, the Phase I Proposal provides, "Westfalia Technologies, Inc. (Westfalia) is pleased to submit this proposal to retrofit the unit load Automated Storage / Retrieval System (AS/RS) built by others for Empirical Foods – Two Rivers Distribution (TRD), in Dakota City, NE. This facility is dedicated to the storage of finished goods and is designed to support a goods to man order picking operation. The retrofit project scope is based on removing the existing Storage/Retrieval Machines and associated conveying system and replacing it with all new Westfalia equipment."  [Nix Dec. ¶70].

[5]     Empirical defines the Dakota Cold Storage ("DCS") Facility as a warehouse built by Westfalia, completed in 2003, built to store empirical's ground beef product, currently used as an alternative storage location for some of the raw material and finished product that would otherwise be stored in the ASRS provided by Swisslog.  [Nix Dec. ¶71].

PO# 5576 "Certificate of Analysis Branding";
PO# 307726 "Recall Report Name Change";
PO# 282743 "FDD Dynamics AX 2009 Swisslog Integration;
PO# 6105 "SQL Tuning";
PO# 6071 "Pick/Pack Modifications";
PO# 6178 "SQL Tuning/Master Schedule";
PO# 282749 "FDD Dynamics AX2009 Swisslog Integration.

[Nix Dec. ¶74]. All of these sixteen (16) additional purchase orders relate to changes empirical made to the ERP between January 5, 2018 and December 21, 2020. Several of the purchase orders expressly identify systems involving Swisslog, while others reference activities that could impact the operation and functionality of the ASRS System. [Nix Dec. ¶75]. Yet, none of these other purchase orders have been produced by empirical. [*Id.*].

**Empirical's Damages**. Empirical has never quantified its damages into general categories as required by the 12/22/20 Order. [Nix Dec. ¶76]. Instead, empirical has simply listed causes of action/theories of recovery (including brand new theories not in pleadings) and provided a corresponding lump sum, without furnishing any accounting or analysis of actual costs incurred. [Nix Dec. ¶77]. Needless to say, a sophisticated company like empirical, would not (or at least should not) have executed the Westfalia contract in the lump sum amount of $5.5 million or considered/approved the Phase II Proposal in the lump sum amount of $7.1 million, absent a breakdown of the categories of alleged costs included within the lump sum amounts provided by Westfalia. [*Id.*]. Nor should empirical ever expected (much less requested) Primus and Swisslog to reimburse empirical for such lump sum amounts, absent a similar breakdown of the categories supporting such lump sum amounts. [*Id.*].

With respect to the Phase I replacement work, empirical's Interrogatory responses [*See* Exhibit #5, pages 20 – 22, Response #27, attached to Nix Declaration] identified a lump sum of $6.1 million of alleged total costs (not categories) based upon the Westfalia contract value of just $5.5 million. [Nix Dec. ¶78]. With respect to Phase II, empirical produced the un-redacted copy

of the Phase II Proposal after the mediation started, which identified the budgeted lump sum amount of $7.1 million. [*Id.*]. Empirical complains that it is being prevented from ripping out and replacing the existing ASRS System, yet it still has not identified what the replacement ASRS System will look like, how it will perform, how much it will cost or how much it seeks to recover from Primus and Swisslog. [Nix Dec. ¶79]. If empirical had disclosed with any reasonable specificity these still virtually unknown and certainly opaquely stated aspects of its claim at the time required by the 12/22/20 Order, a failed mediation could have been avoided, along with, the wasted time and effort of both Primus and Swisslog. [Nix Dec. ¶80].

**Empirical Internal Emails**. Primus further believes that empirical has wrongfully withheld and failed to produce the internal emails it was obligated to produce in the 12/22/20 Order. [Nix Dec. ¶81]. Specifically, empirical produced 86,917 images from its four (4) designated custodians, yet only 259 internal emails[6] exchanged between or among empirical employees. [Nix Dec. ¶82]. Of these 259 internal emails empirical produced, only 2[7] internal emails involved Richard Jochum, empirical's Corporate Administrator, principal fact witness, and General Counsel. [Nix Dec. ¶83]. In contrast, Primus (who does not have internal counsel) produced 626 internal emails exchanged between its employees, while Swisslog produced 15,593 internal emails exchanged between its employees.[8] [Nix Dec. ¶84].

---

[6]     These 259 emails were included within 407 internal e-communications empirical produced, including emails, calendar invites and undeliverable notices ("e-Communications"). Once duplicate e-Communications are accounted for and removed, empirical produced 276 e-Communications (i.e., 131 duplicate e-Communications were excluded from this count). When the remaining calendar invites (14) and remaining undeliverable notices (3) are removed from the final count, empirical produced a total of 259 emails (i.e., 17 additional e-Communications were excluded from the final count because they were not e-Mails). [Nix Dec. ¶82].

[7]     These 2 internal emails were included within 4 e-Communications produced by empirical involving Richard Jochum, 2 of which have been removed because they were calendar invites. [Nix Dec. ¶83]

[8]     Counsel for empirical (David Pope) expressed concern during the December 17, 2020 hearing that Primus and Swisslog would "dump" large amounts of ESI upon empirical at the last minute and also withhold internal emails that might be beneficial to empirical's claims and allegations. In stark contrast to what Mr. Pope said, it is now clear that it is empirical (not Primus or Swisslog) who dumped large volumes of data upon Primus and Swisslog at the last minute and withheld internal emails that might be detrimental to empirical's claims and defenses. [Nix Dec. ¶85].

It appears that empirical may be claiming a blanket privilege over nearly every internal email that was sent to, sent by, or copied to Richard Jochum, empirical's "Corporate Administrator and General Counsel." [Nix Dec. ¶86]. If this is the case, such emails are not deserving of a blanket claim of privilege, because Mr. Jochum: 1.) is identified as a fact witness in empirical's Initial 26(a)(1) Disclosures, 2.) is identified in empirical's Initial 26(a)(1) Disclosures to have extensive knowledge of virtually all aspects of the Swisslog and Westfalia Systems, 3.) provided factual affidavits, filed with this Court, relating to the termination of the contracts forming the subject of this lawsuit, 4.) verified Plaintiff's Responses the Interrogatories served by Primus and Swisslog, and 5.) executed the Westfalia Contract on behalf of empirical. [Nix Dec. ¶87].

A review of empirical's Initial 26(a)(1) disclosures suggests that Mr. Jochum will likely be the principal fact witness in support of empirical claims, defenses and allegations, and has a broader scope of testimony than most any other fact witness identified by empirical. [Nix Dec. ¶88]. For example, empirical has identified the scope of Mr. Jochum's knowledge as follows:

> "He is likely to have knowledge and/or discoverable information concerning the matters alleged in the Complaint, including his work at empirical related to the freezer facility and the ASRS; the negotiation obligations, execution and performance pursuant to the GMS Contract; the negotiation obligations, execution and performance pursuant to the Base Contract; the selection and supervision of subcontractors by Primus, including Swisslog; the design, construction, components, functionality, testing, and evaluation of the ASRS; facts and circumstances surrounding interactions between the parties; damages resulting from breach of GMS Contract and/or failures of the ASRS; and replacement of the ASRS."

[Nix Dec. ¶89 and page 4 of *Exhibit 4*, thereto]. Despite his alleged knowledge of virtually every facet of this litigation, Mr. Jochum makes hardly any appearance at all within the internal emails produced by empirical. [Nix Dec. ¶90].

There is no other apparent explanation for the utter paucity of internal emails among empirical personnel in connection with a large, $34 million expansion of a major empirical

-19-

production facility that stretched over several years.  The lack of emails defies credulity.  We therefore believe that empirical has further violated the 12/22/20 Order by failing to produce all internal communications exchanged between the designated employees of empirical between January 1, 2017 and February 13, 2020.  [Nix Dec. ¶91].

**Bad Faith on the Part of Empirical**.  Empirical and/or its counsel have repeatedly exhibited bad faith with respect to not only the adoption of the 12/22/20 Order (of which empirical was the principal author) but also empirical's compliance therewith up to and including the first day of the mediation.  Key indicia of empirical's bad faith include:

1.) Agreeing to produce the Westfalia contract in the 12/22/20 Order, when it knew or should have known that it was subject to a confidentiality clause in the Westfalia Contract dated February 13, 2020, ten (10) months before the Order was entered. Empirical should have communicated this to the Court, or at the very least sought a modification of the Order from the Court.

2.) Producing the Westfalia contract in bits and pieces on December 31, 2020, January 14, 2021, and January 20, 2021.

3.) Producing redacted copies of Proposal I and Proposal II based upon alleged objections from Westfalia in open defiance of the 12/22/20 Order of which empirical was the original author.

4.) Failing to produce all Exhibits to the Westfalia Contract even as of this date.

5.) Concealing the scope and price of the Phase II work – work that not only materially changes the scope and nature of the ASRS System empirical purchased from Swisslog but also the building purchased from Primus – until the morning of the mediation.  This information could have, and certainly should have been disclosed to Primus and Swisslog, even if production of the un-redacted version of the Phase II Proposal was not required by the 12/22/20 Order.

6.) Failing to produce the PO 9380 "Westfalia Integration" as required by the 12/22/20 Order under which modifications/changes are being made to the ERP System to accommodate the Westfalia Phase I Proposal and Contract;

7.) Failing to produce the other sixteen (16) purchase orders that relate to changes empirical directed to the ERP between January 5, 2018 and December 21, 2020, several of which expressly identify systems involving Swisslog, many of which do not mention Swisslog, but expressly reference activities that very likely impact the operation and functionality of the ASRS System.

8.) Failing to provide a breakdown of its damages for Phase I and Phase II into categories as required by the 12/22/20 Order.

9.)    Failing to provide an unredacted copy of the Phase II Proposal, which reflected empirical's alleged lump sum damages relative to Phase II, until after the mediation had begun.

10.)   Agreeing to produce internal emails in the 12/22/20 Order, when it knew or should have known that empirical would withhold the vast majority of internal emails based apparently upon a claim of privilege for Richard Jochum, empirical's "Corporate Administrator and General Counsel," who it certainly appears will be empirical's principal fact witness in this lawsuit.

11.)   Joining in the Westfalia Motion that sought a protective order to resist production of the Westfalia Contract Documents and then claiming the Westfalia Motion somehow entitled empirical to defy the 12/22/20 Order.

12.)   Failing to "cooperatively interpret and conduct" … "all discovery and proceedings conducted in this case in a manner that secures the just, speedy and inexpensive determination of the merits" with the "failure to do so" … resulting "in sanctions, either upon motion or *sua sponte*" as provided in the 8/27/20 Order.

13.)   Causing the mediation conducted on January 25-26 to fail.

Empirical's non-compliance with the Orders of this Court has, unfortunately, become common place, not only causing a failed mediation, but also leaving Primus with the very real concern that such actions will continue throughout this litigation, causing Primus to incur unnecessary costs, fees, and expenses absent immediate intervention by the Court.

## IV.    CONCLUSION

Collectively, empirical's conduct reflects a history of disrespecting this Court and its Orders, and a complete lack of seriousness in entering into the mediation with Primus and Swisslog.  For these reasons, Primus requests that the Court impose sanctions that would strongly inhibit any further non-compliance by empirical with this Court's Orders, including all fees and costs incurred in the drafting of this motion; all attorney's fees, expert fees, mediator fees, and all other costs, associated with the failed mediation and preparations therefor; that empirical (and its counsel) be further admonished to cooperatively interpret and conduct discovery and proceedings in this case in a manner that secures the just, speedy, and inexpensive determination of the merits, as expressly required by the 8/27/20 Order; and any and all other relief that this Court deems just,

proper and appropriate.

Dated this 16th day of February, 2021.

/s/ Jeffrey J. Nix
STEPHEN L. WRIGHT
Georgia Bar No. 778747, *admitted pro hac vice*
JEFFREY J. NIX
Georgia Bar No. 544776, *admitted pro hac vice*
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone:     (770) 434-6868
Facsimile:     (770) 434-7376
swright@taylorenglish.com
jnix@taylorenglish.com

JOEL D. HEUSINGER, Neb. No. 18326
KARI A.F. SCHEER, Neb. No. 24870
WOODS AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, NE 68508-2578
Telephone:     (402) 437-8500
Facsimile:     (402) 437-8558
jheusinger@woodsaitken.com
kscheer@woodsaitken.com

*Counsel for Defendant Primus Builders, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with NECivR 7.1(d)(3).  I further certify that my word processing program, Microsoft Word, counted 6,507 words, and was applied to include the caption, and all headings, footnotes, and quotations.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to the following counsel of record:

J. Daniel Weidner, Esq.
John V. Matson, Esq.
Koley Jessen PC, LLO
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, Nebraska 68124-1079
daniel.weidner@koleyjessen.com
john.matson@koleyjessen.com
*Counsel for Plaintiff*

David D. Pope, Esq.
J. Erik Connolly, Esq.
Nicole E. Weigley, Esq.
Kathryn E. Clausing, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
dpope@ beneschlaw.com
econnolly@beneschlaw.com
mwrigley@beneschlaw.com
kclausing@beneschlaw.com
*Counsel for Plaintiff*

Jeremy T. Fitzpatrick, Esq.
Joshua S. Weiner, Esq.
Kutak Rock LLP
1650 Farnam Street
Omaha, Nebraska 68102
jeremy.fitzpatrick@kutakrock.com
Joshua.weiner@kutakrock.com
*Counsel for Third-Party Defendant*

*/s/ Jeffrey J. Nix*
Jeffrey J. Nix

01970404