IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EMPIRICAL FOODS, INC., | |
| Plaintiff, | **8:19CV457** |
| vs. | |
| PRIMUS BUILDERS, INC., | **MEMORANDUM AND ORDER** |
| Defendant and Third-Party Plaintiff | |
| vs. | |
| SWISSLOG LOGISTICS, INC., | |
| Third-Party Defendant. | |

This case is before the court on the motions for sanctions filed by Defendant Primus Builders, Inc. ("Primus") and Third-Party Defendant Swisslog Logistics, Inc. ("Swisslog"). (Filing Nos. 120 and 124).[1] Primus and Swisslog seek sanctions against Plaintiff empirical foods, inc. ("empirical") for the violation of this court's discovery order at Filing No. 100.

For the reasons stated in this order, as well as the reasons contained in the record at Filing No. 114 (audio file), the motions are granted, and sanctions will be imposed as outlined herein.

---

[1] The court addresses both motions together, as Primus and Swisslog cite substantially the same evidence and make congruent arguments. The briefing and evidence in support of both motions was carefully considered and is cited as appropriate.

1

BACKGROUND

empirical operates a meat processing facility in South Sioux City, Nebraska. In the spring of 2016, empirical began implementing plans to expand its facility to include an adjacent freezer warehouse for the primary storage of raw material used by empirical to process beef and finished product for shipment. (Filing No. 1 at CM/ECF p. 2, ¶ 8). empirical hired Primus to design and construct the freezer warehouse, with Swisslog subcontracted to design and install an automated storage and retrieval system ("the ASRS System") housed within the freezer facility and used for receipt, storage, processing, and distribution of empirical's products. (Filing No. 1 at CM/ECF p. 4, ¶ 14).

Throughout 2017 and 2018, the design and performance requirements of the ASRS System were the subject of ongoing modification – as to both the hardware and software components. The changes resulted in purported functionality issues. By early 2019, empirical was claiming that the entire ASRS System was defective and needed to be completely ripped out and replaced. empirical notified Primus that, based on empirical's reading of the parties' agreements, Primus was liable to empirical for Swisslog's purported failure to implement a functional ASRS System. (See, e.g., Filing Nos. 61-1, at CM/ECF p. 4).

On October 18, 2019, empirical sued Primus related to the allegedly defective system. (Filing No. 1). And before Primus had even answered the complaint (and before Swisslog was joined as a party), on November 20, 2019, empirical notified Primus that it had retained a new contractor, Westfalia Technologies, Inc. ("Westfalia"), to begin corrective work on the ASRS System. On November 25, 2019, Primus objected to empirical's plan to begin replacement work, arguing that Primus needed to complete testing on the existing equipment in

order to respond to empirical's allegations in this lawsuit. (See, e.g., Filing No. 49-12 at CM/ECF p. 2).

This dispute – and the requests for testing – set off months of back and forth arguments and court interventions. On January 7, 2020, Primus filed a third-party complaint, formally joining Swisslog as a party to this lawsuit. (Filing No. 20). Thereafter, both Primus and Swisslog together (and repeatedly) requested that full on-site testing be performed prior to corrective work and/or dismantlement of the ASRS System. Both Swisslog and Primus attended two inspections at the facility, and Swisslog apparently performed an end-to-end inspection (to the extent allowed) during a February 2020 site inspection. Primus never completed its requested tests. (Filing No. 65 at CM/ECF pp. 34-35).

After the COVID-19 pandemic created additional delays, and additional disputes arose between the parties as to the scope and timing of the testing, empirical unilaterally began the process of dismantling the ASRS system beginning on April 14, 2020. (Filing No. 65 at CM/ECF p. 35). empirical's decision to take unilateral action was met with staunch resistance from Primus, who continued to ask for access to the site to complete testing on the allegedly defective system.

Ultimately, no compromise could be reached, and the matter was litigated on Primus' motion for an order requiring empirical to halt unilateral disassembly of the ASRS System. (Filing No. 47). After full briefing and two hearings - one before District Judge Robert F. Rossiter and one before the undersigned magistrate judge – the court agreed with Primus and ordered empirical to cease disassembly of the ASRS System until Primus could, to the extent still possible, conduct end-to-end testing. (Filing Nos. 52, 56, 65, and 81).

The court set progression deadlines on October 7, 2020, with a status conference set for December 8, 2020 to check in on the testing dispute and to discuss other scheduling and discovery matters as necessary. (Filing No. 80). During the conference, it became clear that the parties had not resolved their previous conflict and that they disagreed as to whether empirical was in continued violation of the court's order requiring early discovery and testing on the ASRS System. Having invested significant time and effort into the previous resolution of this discovery issue, the undersigned was unwilling to relitigate it at that point. I deferred resolution of all disputes related to my previous expedited ASRS testing and discovery order and instead directed the parties to attempt to resolve this matter in mediation.

Following the conference, the court entered an order requiring that the parties "jointly submit to the court a proposed order outlining the discovery necessary for informed settlement discussions, the deadlines for providing that information, and the name of the selected neutral for participation in alternative dispute resolution." (Filing No. 93 at CM/ECF p. 1). That order required submission of the foregoing information on or before December 18, 2020, with a mediation to occur no later than January 31, 2021.

However, the parties again (almost immediately) hit a roadblock: they were unable to agree upon the scope and extent of discovery required to conduct the mediation. The undersigned conducted an additional hearing on December 17, 2020 to moderate the dispute and marshal the case toward mediation. (Filing No. 98) (audio file). After conferring with counsel, the deadline for submission of a mediation discovery order was extended to December 21, 2020.

On December 22, 2020, the Court adopted, signed, and entered the discovery order submitted jointly by the parties, ("the December 22, 2020 Order").

(Filing No. 100). None of the parties ever sought to amend or modify the December 22, 2020 Order.

The December 22, 2020 Order contemplated rolling discovery – with discovery set to occur on four dates prior to mediation: December 31, 2020, and January 7, 14, and 20, 2021. (Filing No. 100 at CM/ECF p. 3). The Order also contemplated that confidential records might be produced ahead of mediation, indicating that "[a]ll documents will be deemed Confidential pursuant to the court's protective [order] until 60 days after the mediation concludes, at which point parties must designate individual documents as Confidential to retain that status." (Filing No. 100 at CM/ECF p. 4). The Order did not otherwise specifically note any type of protection for any category of documents.

The Order set forth certain categories of documents to be produced by each party. Relevant here, empirical was ordered to produce its "contract with Westfalia for repair/replacement of the existing ASRS System." (Filing No. 100 at CM/ECF p. 2). No provision was made for redaction or withholding of any part or portion of the Westfalia agreement. The Order required its wholesale production.

On December 31, 2020, empirical produced a copy of its contract with Westfalia. However, the Westfalia documents produced on December 31, 2020 did not comprise the full agreement between empirical and Westfalia. (See Filing No. 125 at CM/ECF pp. 4-5). Specifically, empirical failed to produce the "Proposal #: QUO-01137-L3P9L3 dated Rev 7 January 31, 2020" (the "Phase I Proposal") incorporated by reference in the contract, which describes the scope of work to be performed by Westfalia with respect to the ASRS System. On January 13, 2020, counsel for Swisslog inquired about the location of the Phase I Proposal. (Filing No. 127-3). On January 14, 2020, empirical made another document production, which included a <u>redacted</u> version of the Phase I Proposal. (Filing No. 127-4).

5

Up to and including the January 14, 2021 production, Westfalia documents produced by empirical addressed only Westfalia's work for "Phase I" of the ASRS corrective/replacement process and did not address the work to be completed in "Phase II." (Filing No. 121 at CM/ECF p. 5). After an additional inquiry from opposing counsel, empirical included the Phase II Proposal documents in its January 20, 2021 production. As with the Phase I Proposal, the Phase II Proposal documents were redacted, including "virtually the entire scope of work" section. (Filing No. 121 at CM/ECF p. 9).

Swisslog and Primus balked at the unanticipated redactions included in the Westfalia documents. After the January 20, 2021 production – the last anticipated production ahead of the mediation – they asked empirical to immediately provide unredacted copies. empirical did not do so, claiming that Westfalia had objected to production of unredacted copies of those documents and that empirical would not produce those documents over Westfalia's objection. (Filing No. 122-7 at CM/ECF p. 2).

The night before the scheduled mediation, Westfalia filed a third-party motion for protective order, asking this court to protect the unredacted Phase I and II Proposal documents from disclosure. (Filing No. 109). Westfalia claims the disputed documents contain proprietary and confidential information and that unredacted disclosure would be highly prejudicial. (Filing No. 110 at CM/ECF p. 1-2). empirical joined Westfalia's motion, (Filing No. 111).

The court convened an emergency hearing (on the morning of the mediation) to address the redaction dispute and Westfalia's request for relief. (Filing No. 112) (text order); (Filing No. 114) (audio file). At the hearing, empirical argued that it could not produce the documents over Westfalia's objection because

the contract between empirical and Westfalia contained a confidentiality agreement that barred disclosure of Westfalia's proprietary information without Westfalia's consent. empirical argues that it agreed to the production requirements of the December 22, 2020 Order solely because it anticipated that the parties would later agree to an enhanced protective order that allowed for a more restrictive attorneys' eyes only designation for those documents. empirical claims that it believed that the parties had agreed to such an order in principal and argues that it would have produced the documents in unredacted form if an enhanced protective order (that was acceptable to Westfalia) had been entered prior to production.

Primus and Swisslog argued that even though empirical knew of its obligations to Westfalia long before the court entered the December 22, 2020 Order, empirical made no attempt to include any protections in the order based upon compliance with the Westfalia contract. At the hearing, Primus and Swisslog stated, without dispute from empirical's counsel, that empirical itself drafted the December 22, 2020 proposed order for the court's review. But the draft prepared by empirical did not include any reference to Westfalia's opportunity to object to release (and any resulting and purported right by empirical to withhold) all or a portion of the documents described in the Order. Primus and Swisslog assert that empirical has consistently attempted to circumvent discovery in this matter, and that its failure to comply with the mediation order is just the latest example of empirical's repeated failure to play fair.

After hearing argument from all parties, and from non-party Westfalia, the undersigned ruled during the hearing that empirical violated the December 22, 2020 Order. ([Filing No. 114](#)) (audio file). The court, however, declined to levy sanctions during the hearing. Rather, the court instructed Primus and Swisslog to move for sanctions based on empirical's noncompliance, as they deemed

appropriate, and that the court would determine the appropriate scope of sanctions on a full record and briefing.

Now being fully advised, empirical will be sanctioned as discussed below.

## DISCUSSION

Federal Rule of Civil Procedure 37(b)(2)[2] allows the court to sanction a party that fails to comply with the court's discovery orders. Specifically, subsection (A) provides that

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Fed. R. Civ. P. 37(b)(2)(A). The available sanctions include staying further proceedings until the order is obeyed; dismissing the action or proceeding in whole or in part; treating as contempt of court the failure to obey the order; and striking pleadings in whole or in part. Id. And either "instead of or in addition to" the sanctions outlined above, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

---

[2] Primus and Swisslog both argue that, in addition to Rule 37, the court could also impose sanctions pursuant either to Rule 16 or through its inherent authority. While both are valid additional sources of sanction authority, the court finds that the facts here fit squarely within the type of conduct covered Rule 37(b) and will therefore discuss and levy sanctions pursuant to that rule.

The court has already determined that empirical is in violation of this court's December 22, 2020 discovery order, (Filing No. 100). It must now determine the scope of sanctions warranted by that noncompliance.

"A district court has wide latitude in imposing sanctions for failure to comply with discovery[.]" Aziz v. Wright, 34 F.3d 587, 589 (8th Cir.1994). But "Rule 37 sanctions are to be applied diligently" and equitably. Kilpatrick v. King, 2005 WL 2180097, at *2 (D. Neb. Sept. 7, 2005) (quoting In re Stauffer Seeds, Inc., 817 F.2d 47, 49 (8th Cir.1987))

I. Substantial Justification

As noted above, and as is explicit in the Federal Rules, empirical may be excused from sanctions, even in the face of its clear noncompliance with a discovery order, if its noncompliance is "substantially justified." Fed. R. Civ. P. 37(b)(2)(C).

"Substantial justification exists where there is an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." Smith v. City of Omaha, 2014 WL 4161105, at *2 (D. Neb. Aug. 19, 2014) (citing Charles A. Wright, et al., Federal Practice and Procedure § 2288 (2d ed.1994)); see also Pierce v. Underwood, 487 U.S. 552, 565–66 (1988) (referring to Rule 37 Advisory Committee Notes to arrive at definition of "substantially justified" as where there exists genuine dispute or where reasonable people could differ as to appropriateness of particular conduct). "[C]ourts have generally focused on 'the quality of the justification and the genuineness of the dispute [and whether] an impartial observer would agree that a party had good reason to withhold discovery'" when evaluating substantial justification. Kilpatrick,

2005 WL 2180097, at *2 (quoting Brown v. State of Iowa, 152 F.R.D. 168, 173 (S.D.Iowa 1993)).

empirical argues, in essence, that its actions were justified for two reasons. First, empirical claims that it believed in good faith that the parties would agree to an enhanced protective order after entry of the December 22, 2020 Order. (Filing No. 141 at CM/ECF p. 2). Thus, at the time it agreed to the terms of the order, it believed it would (subject to the additional protections sought) fully comply with the discovery plan as drafted. And second, empirical claims that Westfalia's ardent objection to unredacted disclosure of its confidential information justifies empirical's noncompliance with the discovery plan. (Filing No. 141 at CM/ECF p. 3).

The court does not find empirical's argument regarding the anticipated protective order persuasive. The discovery order in question was not drafted by the court. Here, empirical was, by its own admission, a key drafter of the December 22, 2020 Order. If full compliance with the order was subject to additional conditions, those could, and should, have been included in the draft submitted to the court for consideration.

empirical, Primus, Swisslog, and Westfalia have been in discussions related to the Westfalia documents since November 2020. On November 16, 2020, Swisslog served Westfalia with a subpoena for the documents. On November 30, 2020, Westfalia objected to the subpoena on the grounds that, among other things, it sought confidential and/or proprietary information. Westfalia cited the lack of a protective order with a sufficient AEO provision as one of the reasons for its objection. (Filing No. 141 at CM/ECF p. 5). Swisslog also requested the documents through written discovery propounded upon empirical. empirical reiterated the

need for an additional protective order prior to full disclosure of the Westfalia documents. (Filing No. 141 at CM/ECF p. 6).

It does not appear that an agreement was reached between November 2020 and submission of the December 22, 2020 Order. Given the context of the discussions, including the weeks of fruitless negotiation, empirical was on notice that the protective order was anything but a certainty. Still, it agreed to full production of the Westfalia documents, without any caveat, based on a supposed expectation that the parties would come to an agreement at some point after entry of the Order. While that course of conduct has now put empirical into a tough position, it is a position entirely of its own making.

Even if the court accepts empirical's explanation that it truly "believed that the parties were in substantial agreement as to the form of the AEO protective order," and that it did not anticipate that there would be subsequent breakdown in that agreement, empirical should have alerted the court to that dispute. (Filing No. 141 at CM/ECF p. 7). For example, when it became clear that the parties were not actually in substantial agreement as to the form of an additional protective order, empirical could have raised the issue before the court. If empirical believed that it needed an additional court order in place in order to comply with the December 22, 2020 discovery plan, it should have moved for a protective order. It never did.

empirical's argument that it was contractually obligated to protect Westfalia's confidential information is likewise unavailing. empirical argues that "[e]ven where the party "fail[s] to seek a protective order, there is authority that a party is substantially justified…in withholding documents covered by a confidentiality agreement until the court rules on the matter." (Filing No. 141 at CM/ECF p. 19) (quoting Transp. Alliance Bank, Inc. v. Arrow Trucking Co., 2011 WL 4964034, at *3 (N.D. Okla. Oct. 19, 2011)). empirical thus implies that it was simply waiting for

11

the court to rule on the issue prior to disclosure of the contested information. The problem with that argument, however, is that empirical did not ask the court to weigh in, even as January 25, 2021 mediation became imminent. empirical knew of its obligations to Westfalia long before empirical drafted and submitted the Order. And it knew of Westfalia's specific concerns related to production as early as November 2020.

empirical attempts to cast blame for its failure to seek a protective order, or to ask for judicial determination of the issue, onto Westfalia. empirical indicates that

> On December 29, 2020, counsel for Westfalia told counsel for empirical that Westfalia planned to file a motion for a protective order shortly after the New Year's holiday. (Pope Decl. ¶ 30.) Satisfied that Westfalia would be addressing the issue with the Court well in advance of the mediation, empirical allowed Westfalia to review and redact certain Westfalia documents that empirical would be producing to Primus and Swisslog in connection with the mediation. (Id.) However, for reasons that were not explained to empirical, Westfalia did not follow through with its plan to seek a protective order in early January 2021.

(Filing No. 141 at CM/ECF p. 10). Rather than bolster empirical's position, this anecdote simply demonstrates that empirical was aware, as early as December 29, 2020, that a litigated protective order was likely necessary. And rather than take any action to obtain judicial intervention, it sat on its hands waiting for a Westfalia to do it for them. That complete lack of proactive response to this impending issue does not create any justification, let alone a substantial justification, for failure to comply with the December 22, 2020 Order.

Moreover, the cases cited by empirical related to the protection of confidential information are distinguishable. (Filing No. 141 at CM/ECF p. 20). In

those cases, the court sustained a party's objection to discovery, either in whole or in part, because the information sought was confidential. Here, empirical made no timely objection, and empirical cannot now rely upon that post hoc assertion.

empirical assigns blame for its predicament to everyone but itself: Primus and Swisslog are to blame because they did not agree to a protective order. Westfalia is to blame because it did not timely seek protection from the court. However, empirical was the primary author of the Order and joined in submitting it to the court. As a party to the litigation, it was fully able to protect its own rights and having failed to timely do so, it has no one to blame but itself. There is no substantial justification for empirical's failure to comply with the December 22, 2020 order.[3]

II.   Other Unjust Circumstances

The court may also consider other circumstances that would make an imposition of sanctions unjust. Fed. R. Civ. P. 37(b)(2)(C).

empirical argues that Primus' request for sanctions is "hypocritical" because Primus objected to certain requests for production of documents based on confidentiality agreements with third parties. (Filing No. 141 at CM/ECF p. 19). empirical claims that Primus cannot have it both ways and that imposing sanctions here would be unjust. The court is not persuaded that that type of finger-pointing argument has any merit under the law. But more importantly, the situation highlighted by empirical is completely distinguishable from the situation at bar.

---

[3] empirical argues that its actions were substantially justified because it "substantially complied" with the December 22, 2020 order. (Filing No. 141 at CM/ECF p. 16). empirical claims that because it produced thousands of other documents, the redactions included on the Westfalia documents should be excused. The doctrine of substantial performance does not apply to compliance with court orders. Full compliance is expected, and this argument is without merit.

13

Primus interposed an objection to discovery based on a confidentiality concern. In contrast, empirical failed to so do. empirical agreed, in drafting the December 22, 2020 Order, to fully produce the disputed documents – with no objection or limitation noted in any respect. The situations are incongruent and do not render a sanctions award unjust.

empirical also argues that sanctions would be unjust because empirical disclosed the disputed documents to Primus and Swisslog after the court overruled Westfalia's objection at the January 25, 2021 conference.

empirical's after-the-fact compliance with this court's prior order does not cure or erase its prior noncompliance. "[A] party may not avoid sanctions merely by producing the documents after a motion has been filed." Williamson v. Unifund CCR Partners, 2009 WL 196254, at *1 (D. Neb. Jan. 27, 2009) (citing Illinois Tool Works, Inc. v. Metro Mark Prods., Ltd., 43 F.Supp.2d 951, 960 (N.D.Ill.1999). "To allow a party to avoid sanctions by such a contrivance would defeat the purpose of the rules, which is to promote voluntary discovery without the need for motion practice." Id. Furthermore, "[u]ltimate production of the material in question does not absolve a party where it has failed to produce the material in a timely fashion." Id.

empirical further argues that its conduct did not cause the mediation to fail and that it would therefore be unjust to sanction empirical for the cost of mediation. (Filing No. 141 at CM/ECF pp. 33-34). Primus and Swisslog argue that empirical's inclusion of details related to the outcome of mediation in its briefing is highly improper and violates the federal rules of evidence related to the confidentiality of settlement discussions. The court has not considered empirical's arguments related to the outcome of the mediation: It is empirical's conduct leading up to the mediation that is relevant to the sanctions determination here.

14

In sum, empirical has not articulated any relevant circumstances that would render the imposition of sanctions unjust under Rule 37.

III.   Scope

Having determined that empirical's failure to comply was not substantially justified, and that the imposition of sanctions is not otherwise unjust, the court must now consider the appropriate scope of the sanctions to be levied. The court has broad discretion in fashioning Rule 37 sanctions. Wright, 34 F.3d at 589.

Primus and Swisslog ask for all of costs, including expert and mediator fees, associated with preparing for the January 25, 2021 mediation. (Filing Nos. 120 and 124). They ask that the court order that the reimbursement period run from the date of entry of the December 22, 2020 Order through the date of the January 25-26 mediation.

The court has considered the available sanctions, as well as the timeline of relevant events, and will decline to levy sanctions for the entire month of preparatory work conducted ahead of the mediation. It is more appropriate to measure the sanctionable period beginning on January 14, 2021. That was the date on which empirical first produced redacted documents, in blatant contravention of the December 22, 2020 Order. (Filing No. 121 at CM/ECF pp. 7-8). Based upon a review of the available record, the court has not identified any prejudice experienced by Primus or Swisslog prior to that first, improper redaction.[4]

---

[4] Primus and Swisslog argue in their briefing that in addition to the Westfalia redactions, empirical also failed to comply with the December 22, 2020 Order in several other respects. The court has not considered those additional allegations of noncompliance. It appears that Primus and Swisslog only identified that noncompliance after the mediation had occurred and sanctioning empirical based any of those complaints strikes the court as both unnecessary and potentially unfair.

"Any [sanction] award should be 'remedial' in nature; that is, it should compensate the opposing parties for the fees they incurred as a result of the…misconduct." (Filing No. 141 at CM/ECF p. 14). (quoting Vallejo v. Amgen, Inc., 2017 WL 3037391, at *5 (D. Neb. May 30, 2017)). The court will therefore impose sanctions for only the fees incurred after empirical became noncompliant.

empirical has failed to accept any responsibility for its course of conduct, and it has engaged in similar conduct before. When faced with the hard choice – disassembly v. preservation of the ASRS System – it began disassembly with no notice to the court. When faced with a choice of complying with my order (with or without a post-order ruling on the protective order dispute), or complying with a contractual confidentiality clause, empirical chose to comply with the confidentiality agreement. In both cases, empirical acted unilaterally, choosing to ask for the court's forgiveness rather than its permission. In this district, that is not the type of litigation tactic that the court expects or condones.

empirical drafted the order in question, and then did not comply with it. That disrupted and delayed preparation for the mediation and necessitated a hostile confrontation with opposing counsel minutes before those same individuals were scheduled to attempt a fruitful mediation of this multi-million-dollar dispute. No doubt, the spirit of compromise necessary for settlement was derailed by the anger and mistrust arising from empirical's noncompliance, and by the fact that due to empirical's unilateral decision to withhold court-ordered discovery, Primus and Swisslog were not afforded an opportunity to read and consider information necessary for case evaluation before the mediation began. Under the circumstances presented, the court finds that empirical should be sanctioned for all costs of preparation for the mediation, including expert and mediators' fees, from January 14, 2021 through the conclusion of the January 25-26 mediation.

A final note: When a problem arises, the undersigned magistrate judge expects cooperation, transparency, and compliance in the spirit of Fed. R. Civ. P. 1. Contrary to my expectations, this lawsuit has been caustic from the outset. The court is hopeful that the parties can turn a corner and engage with each other in the absence of some of the sharper practices that have become a defining feature of this lawsuit.

That said, the court will, going forward, require each party's local counsel to appear at all hearings and telephonic conferences and to sign all court filings. Local counsel should also be involved in the discovery process, including any remaining testing to be conducted on the ASRS System. The court is hopeful that the prospective involvement of attorneys more familiar with the customs, expectations, and practices in this district will improve some of these tensions and alleviate the need for quite as much judicial involvement.

Accordingly, IT IS ORDERED:

1) Primus and Swisslog's Motions for Sanctions (Filing Nos. 120 and 124) are granted.

2) Primus and Swisslog are entitled reimbursement for attorney's fees, expert fees and mediators' fees and expenses incurred preparing for and participating in mediation. empirical will be liable for all mediation related expenses incurred between January 14, 2021 and the conclusion of the January 25, 2021 mediation.

3) On or before May 20, 2021, Primus and Swisslog shall submit an itemized billing statement of their fees to empirical.

4) empirical's counsel shall respond to this itemization within ten days thereafter.

5) If the parties agree as to the amount to be awarded, on or before June 10, 2021, they shall file a joint stipulation for entry of an order awarding costs and fees to Primus and Swisslog.

6) If the parties do not agree on the attorney fees and costs to be awarded, Primus and Swisslog shall file a motion for assessment of attorney fees and costs by no later than June 17, 2020. This motion shall be submitted in accordance with the court's fee application guidelines outlined in Nebraska Civil Rules 54.3 and 54.4, but a supporting brief is not required.

7) If an application for fees is required, the court may award both Primus and Swisslog up to an additional $1500.00 to recover the cost of preparing application(s) for assessment of fees.

Dated this 21st day of April, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge