## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EMPIRICAL FOODS, INC. | **CASE NO. 8:19-CV-00457** |
|         Plaintiff and Counter-Defendant, | |
|     vs. | |
| PRIMUS BUILDERS, INC., | |
|         Defendant, Counterclaimant, and Third-Party Plaintiff, | |
|     vs. | |
| SWISSLOG LOGISTICS, INC., | |
|         Third-Party Defendant. | |

## BRIEF IN SUPPORT OF EMPIRICAL FOODS, INC.'S OBJECTION
## TO THE MAGISTRATE'S ORDER AWARDING SANCTIONS

## INTRODUCTION

Magistrate Judge Zwart sanctioned empirical for redacting a third party's highly confidential documents until that party could seek an AEO protective order limiting their disclosure to a direct competitor. She faulted empirical for these supposedly "unanticipated redactions" when empirical had informed Primus, Swisslog, and the Magistrate herself that an AEO protective order was a precondition to the production of this information. She also faulted empirical for a "complete lack of a proactive response" to the issue when empirical had tried for months to get Primus and Swisslog to agree to an AEO protective order and empirical specifically told the third party, Westfalia, to seek a protective order. She admonished empirical for not seeking the protective order itself, even though Westfalia had informed empirical that it would file that motion—which it did. And she further admonished empirical for not seeking "judicial intervention" when she had just recently informed the parties that she "wish[ed] you could, among yourselves, resolve something without me." Sanctioning empirical in these circumstances was clearly erroneous.

The amount of the sanction was equally unwarranted. Judge Zwart ordered empirical to pay (1) all of Primus's and Swisslog's attorneys fees, (2) all of their expert fees, (3) two mediators' fees for a two-day mediation, and (4) all other expenses incurred preparing for and participating in the court-ordered mediation, *for a period of 13 days*. Judge Zwart's Order did not connect the amount of the sanction to the expenses actually incurred by Primus and Swisslog because of the alleged discovery violation. As a result, her sanctions order violated both the Federal Rules of Civil Procedure and United States Supreme Court precedent. Rule 37(b)(2)(C), on which Judge Zwart relied, limits the amount of the award to the "reasonable expenses…*caused by the failure*"

1

to obey a discovery order. Judge Zwart did not (and could not) find that all of these expenses were "caused by the failure" of empirical to produce the unredacted Westfalia documents sooner.

Likewise, the Supreme Court has held there is a "need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017). "[I]f an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment" and must be vacated. *Id.* Here, the sanctions order awarded attorneys fees, expert fees, mediators fees, and other expenses that would have been incurred by Primus and Swisslog regardless of empirical's temporary redaction of certain Westfalia documents. In such case, "the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone." *Id.* at 1187. Contrary to this directive, empirical was ordered to pay fees and expenses that it clearly did not cause. Thus, the sanctions order was contrary to law and therefore must be vacated.

## **FACTUAL BACKGROUND**

### A.    **Westfalia Objects To The Production Of Its Highly Confidential Documents Without An AEO Protective Order.**

Westfalia is the contractor that empirical has retained to replace the defective automated storage and retrieval system ("ASRS") that Primus and Swisslog designed and built. empirical has a contract with Westfalia to design and build a portion of the new ASRS (the "Westfalia Contract"). Under the Westfalia Contract, "[a]ll technical information…furnished by [Westfalia] during the performance of the work will be solely for [empirical's] use in operating and maintaining the [ASRS]." (ECF #142-2 at ¶ 12(B).) Further, "[s]uch technical information shall not be disclosed to a third party without [Westfalia's] prior written consent…." (*Id.*) In addition,

2

empirical "agree[d] to maintain all confidential and technical, contractual and business information, including, without limitation the Contract Price and System designs and drawings, and not to disclose such information…without the prior written consent of [Westfalia]." (*Id.* at ¶ 12(C).) Finally, the Westfalia Contract provides that "[s]hould either party be required by law or legal process to disclose any information protected by this Article, the party subject to disclosure shall notify the other party of such event in accordance with this Agreement and with as much advance notice as reasonably possible, to permit the party owning the confidential information to protect its rights." (*Id.* at ¶ 12(H).)

On November 5, CRZ, in response to an informal request by Swisslog that empirical produce the Westfalia Contract, empirical explained as follows:

> empirical acknowledges Swisslog's request for the production of empirical's contract with Westfalia for the replacement system. However, empirical has concerns about producing this contract without certain protections in place. As Primus and Swisslog have acknowledged, Westfalia is a competitor of Primus/Swisslog in the automation space, and a contract with Westfalia will contain confidential and proprietary information.
>
> Accordingly, empirical would like to amend the Protective Order entered by the court on January 10, 2020, to include multiple levels of confidentiality, including "Highly Confidential" and/or "Attorneys' Eyes Only." We would like to know if Primus and Swisslog are agreeable to such an amendment to the Protective Order. If not, empirical will seek leave from the court to amend. Please let us know at your earliest convenience.

(ECF #142-3.) On November 16, 2020, Swisslog served Westfalia with a subpoena for documents. On November 30, 2020, Westfalia objected to the subpoena on the grounds that, among other things, it sought confidential and/or proprietary information. Westfalia cited the lack of a protective order with an AEO provision as one of the reasons for its objection. (ECF #142-4.) Westfalia asked that Swisslog "please update the current confidentiality order to include an AEO

designation and confirm the remainder of the parties are in agreement with the same." (ECF #142-5.)

At the same time, Swisslog was seeking Westfalia documents from empirical in discovery. Because of its non-disclosure obligations under the Westfalia Contract, empirical consulted Westfalia about whether it would object to empirical's production of its confidential documents to Primus and Swisslog, which are Westfalia's direct competitors. (ECF #142-1 at ¶ 21.) Westfalia indicated that it would need at least an AEO provision in the protective order. (*Id.*) Accordingly, on November 16, 2020, counsel for empirical followed up with counsel for Primus and Swisslog and asked whether they would agree to use the District of Nebraska's standard form AEO protective order. (ECF #142-1 at ¶ 22.) On November 24, 2020, counsel for Swisslog agreed to use the District of Nebraska's AEO protective order. (*Id.*) However, counsel for Primus did not respond. empirical's counsel then followed up with counsel for Primus again on December 7, 2020. (*Id.*) Primus's counsel still did not respond.

### B.    Judge Zwart *Sua Sponte* Orders The Parties To Mediate.

On December 8, 2020, the parties appeared before Judge Zwart for a status conference. (ECF #80.) Judge Zwart *sua sponte* ordered the parties to participate in a mediation on or before January 31, 2021. (ECF #93.) Judge Zwart further ordered the parties to submit an order to her outlining the discovery necessary for informed settlement discussions. (*Id.*)

At the December 8, 2020 status conference, counsel for empirical again raised the issue of an AEO protective order, informing Judge Zwart that Swisslog had agreed to the District of Nebraska's form but that counsel for Primus had not yet responded. (ECF #142-1 at ¶ 24.) Counsel for Primus then indicated that Primus was amenable to an AEO provision, but Primus wanted a carve-out for a number of non-attorney "in-house experts" who would be exceptions to AEO

4

protection. (*Id.*) Counsel for Swisslog followed suit, saying that Swisslog also wanted a carve-out for in-house experts. (*Id.*)

Later that same day, December 8, 2020, counsel for empirical followed up with counsel for Primus and Swisslog about who they wanted to identify as in-house experts:

> Following up on our discussion with the judge this morning, would Primus and Swisslog please provide a list of the in-house experts that they would like to be allowed to show AEO documents? Empirical will work on its own list too. If you have other ideas about how to address your concerns about the AEO form, please let us know. Thanks.

(ECF #142-3.) Counsel for Primus and Swisslog did not respond. On December 14, 2020, counsel for empirical followed up again with counsel for Primus and Swisslog about their proposed in-house experts. (ECF #142-1 at ¶ 26.) Finally, they responded. Swisslog said it wanted to designate "initially" five in-house non-lawyers as exceptions to AEO protection. (*Id.*) Primus wanted to designate four in-house non-lawyers as exceptions to AEO protection. (*Id.*) Counsel for empirical said that he thought designating so many in-house non-attorneys would defeat the purpose of an "Attorneys Eyes Only" designation. (*Id.*) Nevertheless, empirical ultimately said it was willing to agree. (*Id.*)

### C.    Primus And Swisslog Renege On Their Agreement To Enter An AEO Protective Order.

On December 22, 2020, Judge Zwart entered the Order jointly drafted by the parties, setting forth the discovery that would be exchanged in connection with the mediation. (ECF #100.) empirical believed that the parties were in substantial agreement as to the form of the AEO protective order—which they had been discussing since the December 8, 2020 status conference—and thus it did not object to including Westfalia documents in the December 22, 2020 Order. (ECF #142-1 at ¶ 27.) Nor did empirical insist on putting anything in the Order about AEO protection because empirical had no reason to doubt that an agreed AEO protective order was about to be

entered. (*Id*.) The following day, December 23, 2020, counsel for empirical emailed counsel for Primus and Swisslog asking for their approval of the final draft of the AEO protective order, so the parties could file a joint motion for its entry prior to the production of mediation documents (which evidences the discussion, negotiation, and agreement regarding the AEO protective order). (ECF #142-1 at ¶ 28.) Counsel for Primus and Swisslog never responded. As a result, no AEO protective order was entered before the parties' pre-mediation productions commenced.

**D.    Westfalia Informs Empirical That It Will Seek An AEO Protective Order.**

On December 31, 2020, empirical began producing documents to Primus and Swisslog in connection with the mediation. Over the next three weeks, empirical produced over 87,000 pages of documents pursuant to the December 22 Order. (ECF #142-1 at ¶ 31.) These documents included:

- The Westfalia Contract, including all contract documents that exist at this time;

- Any schedules empirical received from Westfalia regarding the replacement of the System;

- Internal and external communications regarding the project or replacement of the System, including communications with Westfalia; and

- A statement of damages with damages divided into general categories by claim.

(ECF #142-1 at ¶ 31.)

empirical's production included Westfalia documents, such as the Westfalia Contract for Phase I of the repair work. (ECF #142-1 at ¶ 33.) However, because no AEO protective order had been entered, and because Westfalia's objections to Swisslog's subpoena had not been resolved, Westfalia objected to empirical's production of certain confidential information contained in these documents. (*Id*.) At Westfalia's request, and consistent with its obligations under the Westfalia

Contract, empirical allowed Westfalia to review the Westfalia documents that empirical would be producing in connection with the mediation. (*Id.*) On December 28, 2020, shortly before empirical's first production, Westfalia's counsel explained:

> My client has had the opportunity to review the documents in empirical's intended production. There are two documents, attached hereto, that we object to being produced by empirical due to the highly confidential nature of these documents. Westfalia is concerned that there is too much proprietary information in these two documents that, even with the AEO designation in the current [draft] confidentiality order, it would fall into the hands of one of Westfalia's largest competitors. These documents specifically showcase designs and new technology that Westfalia's competitors are not otherwise aware of.

(ECF #142-7.)

empirical found itself between a rock and a hard place: the December 22 Order required the production of certain Westfalia documents, but empirical's contract with Westfalia required it to "maintain all confidential and technical, contractual and business information, including, without limitation the Contract Price and System designs and drawings, and not to disclose such information…without the prior written consent of [Westfalia]." (ECF #142-2 at ¶ 12(C).) On December 28, 2020, counsel for empirical explained the situation to counsel for Westfalia and suggested that Westfalia seek a protective order:

> We certainly understand Westfalia's reservations about the two documents you identified being produced. However, we've been ordered to produce these types of documents in advance of the mediation as they speak to empirical's damages in the case. So, I don't think we can just put them in a privilege log and punt on their production until your objections to Swisslog's subpoena are addressed. To be clear, we will not be producing these two documents on 12/31.
>
> We're wondering if you would be available for a call tomorrow to discuss some alternative options for handling these two documents in particular. For instance, we envision that Westfalia could file for a protective order as to these two documents that would allow for production of these documents in a redacted manner and potentially

7

> could limit those at Primus and Swisslog who could receive these redacted documents. empirical would, of course, support such a protective order. We may also be able to work with some sort of affidavit that covers some of the information in these two documents not being produced. (ECF #142-7.)

On December 29, 2020, counsel for Westfalia told counsel for empirical that Westfalia planned to file a motion for a protective order shortly after the New Year's holiday. (ECF #142-1 at ¶ 30.) Satisfied that Westfalia would be addressing the issue with Judge Zwart well in advance of the mediation, empirical, consistent with its contractual obligations, allowed Westfalia to review and redact certain Westfalia documents that empirical would be producing to Primus and Swisslog in connection with the mediation. (*Id.*) However, for reasons that were not explained to empirical, Westfalia did not timely follow through with its plan to seek a protective order in early January 2021. (*Id.*)

### E.   The Parties And Westfalia Are Unable To Resolve The AEO Dispute Amongst Themselves.

On December 31, 2020, empirical produced an unredacted version of its contract with Westfalia. (ECF #142-1 at ¶ 33.) empirical continued producing Westfalia documents in January 2021. (*Id.*) On January 14, 2021, empirical produced its first redacted Westfalia document. Of the 87,000 pages of documents that ultimately empirical produced pursuant to the December 22 Order, only 26 pages contained redactions. (ECF #142-1 at ¶ 31, #131-3, #131-4.)

Primus and Swisslog did not object these redactions until January 19, 2021—five days after empirical produced them and six days before the mediation. (ECF #142-1 at ¶ 33.) And Primus and Swisslog did not file a motion seeking to have the documents unredacted at that (or any other) time. Instead, Swisslog complained about the redactions in emails to empirical (*Id.*) On January 20, 2021, empirical explained to counsel for Primus and Swisslog why certain Westfalia documents had been redacted:

> Westfalia objected to the production of this document, and prior versions of it, in unredacted form--even when treated as [in-house expert] AEO. The document has been redacted due to the confidential and proprietary information of Westfalia contained in the redacted portions of the proposal. empirical has an active contract with Westfalia for the replacement system, to which this proposal document relates. Under that contract, empirical has non-disclosure obligations it must abide by.

(ECF #142-8.) This email merely reiterated what both empirical and Westfalia had been telling Swisslog since November 2020—that Westfalia required AEO protection for certain confidential information because Swisslog was a major competitor. (ECF #142-1 at ¶ 21.)

On January 22, 2021, rather than seeking a ruling from Judge Zwart, Primus and Swisslog insisted that the mediators intervene in the matter of Westfalia's redactions. (ECF #142-1 at ¶ 34.) In an effort to find an out-of-court solution, empirical's counsel put the mediators directly in touch with Westfalia's counsel. (*Id.*) On Saturday, January 23, 2021, after speaking with the mediators, Westfalia's counsel agreed to produce unredacted documents if Primus and Swisslog would agree to treat them as AEO materials, sharing them only with their outside counsel and outside experts, which would be consistent with the District of Nebraska's form AEO protective order. (*Id.*) But the agreement obtained by the mediators was not acceptable to Primus and Swisslog. Rather than accepting Westfalia's unredacted documents and using them in the mediation, Swisslog told the mediators, empirical, and Westfalia that it would be seeking an order from this Court. (*Id.*).

On Sunday, January 24, 2021, Westfalia's counsel reached out directly to Swisslog's counsel and offered to show Swisslog's outside attorneys and experts unredacted copies of the documents in order to allow Swisslog to determine whether any of the redacted portions were even relevant and worth arguing about. (ECF #142-9.) Swisslog's counsel rejected this offer and refused Westfalia's counsel's invitation to discuss the matter further. (*Id.*) Westfalia then filed its motion for a protective order that evening. (ECF #109.) empirical filed a joinder in that motion in order to

explain the history leading up to Westfalia's motion, but empirical made clear that it had no dog in the Westfalia fight and that "[r]egardless of how the Court rules, empirical looks forward to complying and getting on with the mediation." (ECF #110 at p. 6.)

      **F.**    **Judge Zwart Sanctions Empirical For Temporarily Redacting Westfalia's Highly Confidential Information.**

On January 25, 2021, Judge Zwart called the parties and Westfalia in for a virtual hearing on Westfalia's motion for a protective order. Primus and Swisslog argued that empirical violated her December 22 Order by complying with Westfalia's request that empirical maintain the confidentiality of certain documents until the Court addressed the AEO protective order issue. (ECF #114; ECF #142-10 at p. 11-12.) In response, empirical explained to the Court that "the redactions were done at Westfalia's direction." (*Id.* at 21:4-6.) empirical further explained that "we [empirical] don't take a position on whether or not the information should be redacted or not redacted, only that that information is Westfalia's trade secrets, according to Westfalia, and we cannot give that information over to their competitors without Westfalia's consent." (*Id.* at 21:20-22:1.)

Westfalia's counsel expressed its concern about the production of its confidential documents to a direct competitor without a true AEO protective order in place. Westfalia's counsel explained that Swisslog's counsel's "understanding of an AEO is that his clients, who are direct competitors of Westfalia, would get access to review those AEO documents, and that's where my client [Westfalia] says we -- you know, we can't do that." (*Id.* at 36:4-8.) Counsel for Westfalia further explained that Westfalia had been willing since November 2020 to "provide these documents, [subject to] AEO -- true AEO, to [counsel for Swisslog] and to his outside experts, who should be able to analyze them," but Swisslog was not interested in receiving Westfalia's documents subject to that restriction. (*Id.* at 36:12-16.)

14517659 v1

Judge Zwart denied Westfalia's motion for a protective order. But before doing so, she held as follows:

> Number 1, Empirical, you are in violation of my court order. You had every right at the time we were discussing this to say everything was subject to what Westfalia was going to say. You never mentioned that before. You didn't put it in the order that you drafted, or at least contributed to in drafting, and jointly submitted to have me sign. I signed that order on December 22nd. Nothing in here allows you to at -- allowed you at this point to redact or to look to Westfalia for its permission to comply with my order. Nothing. You're in violation of that order. For that, you will be sanctioned.

(*Id.* at 40:11-22.)

Counsel for Swisslog asked Judge Zwart whether the parties should proceed with the mediation, which was to begin that morning. (*Id.* at 42:17-20.) She gave Primus and Swisslog the option to forego the mediation because of the Westfalia issue, but they chose to proceed anyway. (*Id.* at 42:21-43:1.) Later that same morning, pursuant to the Court's order denying Westfalia's motion for a protective order, empirical produced unredacted copies of the Westfalia documents at issue to Primus and Swisslog. (ECF #142-1 at ¶ 48.)

### G.   The Parties Mediate For Two Days But Do Not Reach A Settlement.[1]

The parties devoted an extraordinary amount of time and resources to the mediation, including extensive pre-mediation discovery. Throughout December and January, the parties reviewed and produced tens of thousands of documents, submitted extensive briefs, and had numerous meetings with the mediators, even before the two-day mediation. (ECF #142-1 at ¶¶ 31, 54.) empirical devoted three litigation partners, two associates, an entire team of contract attorneys,

---

[1]   Statements by the parties made only in mediation are not admissible in evidence in the trial of the case, but this "does not preclude admissibility in other contexts…such as pertaining to a motion for sanctions regarding the mediation." Mediation Plan of the United States District Court for the District of Nebraska, at ¶ 4(d).

and a paralegal to preparing for the mediation. (*Id.*) empirical had two experts analyzing testing and software issues throughout December and January. (*Id.*) empirical drafted and submitted three briefs to the mediators and Primus and Swisslog, totaling over 50 pages. (*Id.*) empirical spoke with the mediators (together and separately) on numerous occasions in December and January, even before the mediation commenced. (*Id.*)

On January 25 and 26, 2021, the parties mediated the dispute using two experienced mediators. (ECF #142-1 at ¶ 50.) In attendance for empirical were its President, its General Counsel, its Project Manager, two outside experts (ASRS and software), and four outside attorneys. (*Id.*) empirical's legal team at the mediation consisted of three partners and an associate. (*Id.*) Primus and Swisslog negotiated jointly. (ECF #142-1 at ¶ 51.) On their side were four outside attorneys, several outside experts, several business executives, and several insurance representatives—at least a dozen people in total. (*Id.*) All parties were engaged and worked extremely hard for two long days of mediation, both of which extended well beyond regular business hours. (*Id.*)

Day 1 of the mediation consisted mainly of discussions about liability issues and testing. (ECF #142-1 at ¶ 52.) Westfalia's work was not a part of those discussions. (*Id.*) Day 2 focused mainly on damages. (*Id.*) However, Defendants' offers to empirical were not based on Westfalia's work. (*Id.*) In fact, Primus and Swisslog did not offer empirical any money in settlement of empirical's claims. (*Id.*) Instead, Primus and Swisslog demanded that empirical pay them several million dollars. (*Id.*) empirical's settlement demands also were not based on the cost of Westfalia's work, but rather on other evidence and metrics. (*Id.*) The parties did not reach a settlement and were still quite far apart at the end of the second day, regarding both liability and which way any

"damage" dollars would flow. (ECF #142-1 at ¶ 53.) Nevertheless, the parties left open the possibility of continuing settlement discussions after the conclusion of the mediation. (*Id*.)

## H.    **Judge Zwart Decides The Scope Of The Sanctions.**

In accordance with Judge Zwart's instructions at the January 25, 2021 hearing at which she held that empirical "will be sanctioned," Primus and Swisslog filed motions seeking a sanctions award on February 16, 2021. (ECF #120 - 132.) Primus and Swisslog asked Judge Zwart to award them all attorneys fees, expert fees, mediator fees, and all other costs associated with the mediation, between at least December 22, 2020 and January 26, 2021. (ECF #121, p. 21; #125, p. 10.) Judge Zwart held that "[i]t is more appropriate to measure the sanctionable period beginning on January 14, 2021" because "the court has not identified any prejudice experienced by Primus or Swisslog prior to that first, improper redaction" on that date. (ECF #154, p. 15.) She therefore awarded the following sanction:

> Primus and Swisslog are entitled to reimbursement for attorney's fees, expert fees and mediators' fees and expenses incurred preparing for and participating in mediation. empirical will be liable for all mediation related expenses incurred between January 14, 2021 and the conclusion of the January 25, 2021 mediation.

(*Id.*, p. 17.) Judge Zwart further provided for the submission of a fee stipulation or fee application by no later than June 17, 2021. (ECF #154, pp. 17-18.)

## STANDARD OF REVIEW

A magistrate's authority, and the district court's standard of review, is governed by statute. *See* 28 U.S.C. § 636. Under Section 636(b)(1)(A), "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief…" However, "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous

or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a). "A decision is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Commissioner of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996). "A decision is 'contrary to the law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Klein v. TD Ameritrade Holding Corporation*, 2017 WL 1316944, at *2 (D. Neb. Apr. 7, 2017).

## ARGUMENT

I. **Judge Zwart Erred By Sanctioning Empirical For Allowing A Third Party To Seek A Protective Order Before Producing Its Highly Confidential Documents To A Direct Competitor.**

Rule 37(b) of the Federal Rules of Civil Procedure provides for the award of sanctions for failing to obey a discovery order. However, the Rule further provides that an award of reasonable expenses caused by the failure is *not* appropriate where the failure was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "In determining whether a party's refusal or failure to timely provide discovery responses is 'substantially justified,' . . . the court looks to whether or not there was a good reason to withhold the discovery." *Mensah v. Rent-A-Center, Inc.*, 2005 WL 8176032, at *2 (D. Neb. Oct. 28, 2005). "There is no bright line standard for 'substantial justification,'" but courts have focused on whether "an impartial observer would agree that a party had good reason to withhold discovery." *Id.* (internal quotation omitted). Here, as shown below, Judge Zwart erred in finding that empirical's redaction of certain Westfalia documents violated the December 22 Order and that empirical was not substantially justified under the circumstances.

**A.    Empirical Did Not Violate The December 22 Order By Producing A Redacted Version Of The Westfalia Contract.**

Judge Zwart initially erred in finding a "clear noncompliance with a discovery order." (ECF #154, p. 9.) The December 22 Order required empirical to produce "empirical's contract with Westfalia for repair/replacement of the existing ASRS System." (ECF #100, p. 2.) empirical complied with that Order by producing the Westfalia contract documents. The fact that those documents were partially redacted does not change the fact that empirical produced them. Parties redact documents all the time to protect against the disclosure of privileged information, personal information, and confidential information. Moreover, sometimes because of the urgency of the production, redactions are made prior to a court's ruling on whether the information in question is entitled to protection. Redacting a document pending a ruling by the court is not uncommon or usually even controversial.[2] Primus and Swisslog just seized on the opportunity to incense Judge Zwart, telling her that empirical actually "enjoys defying your orders" and "disrespecting this Court." (ECF #114; ECF #142-10 at 12:11-13; ECF #121, at p. 21.) Judge Zwart was swayed and speculated at the January 25, 2021 hearing that empirical was "attempt[ing] to hoodwink the Court" and was "planning on having an escape hatch so that [empirical] really didn't need to provide" the Westfalia documents it was ordered to produce. (ECF #142-10 at 23:18-20; 26:3.) But empirical was not trying to avoid discovery at all, nor does the record support such an insinuation. Indeed, it was simply preserving the confidentiality of certain information (while producing the remainder of the document) until the Court could address that issue. empirical made clear that "[r]egardless of how the Court rule[d], empirical look[ed] forward to complying." (ECF #111, p. 6.) This is not sanctionable conduct. empirical complied with the December 22 Order by

---

[2]    For example, Nebraska Civil Rule 7.5(a)(2) allows potentially protected documents filed with the court to be "provisionally sealed until the court rules on the motion to seal."

producing the Westfalia contract, despite the fact that it was partially redacted pending a ruling on the AEO protective order issue.

**B.      Empirical Was Substantially Justified In Allowing Westfalia To Seek A Protective Order Before Unredacting The Westfalia Documents.**

Judge Zwart further erred in finding that "[t]here is no substantial justification" for empirical's redaction of certain Westfalia documents until Westfalia could seek an AEO protective order. (ECF #154, p. 13.). As shown below, there are numerous substantial justifications for how empirical handled this sensitive issue.

**1.      Protecting The Confidentiality Rights Of Third Parties Is A Substantial Justification.**

Federal courts applying Rule 37 have found that a party is "substantially justified in withholding disclosure of sensitive…information and documents until a confidentiality order [has been] entered." *Stiffler v. Frontline Asset Strategies, LLC*, 2019 WL 2612726, at *5 (M.D. Pa. June 26, 2019). In spite of this authority, Judge Zwart took issue with the fact that empirical itself did not file the motion for a protective order (Westfalia did). (ECF #154, p. 11.) But even where the party "fail[s] to seek a protective order, there is authority that a party is substantially justified…in withholding documents covered by a confidentiality agreement until the court rules on the matter." *Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*, 2011 WL 4964034, at *3 (N.D. Okla. Oct. 19, 2011). Moreover, empirical did not "s[i]t on its hands waiting for Westfalia" to file a motion for a protective order. (ECF #154, p. 12.) Instead, empirical specifically told Westfalia that it needed to file a motion to protect its rights, and Westfalia did file that motion within 10 days of the production of the first redacted document. (ECF #109.) empirical also put the mediators, who were trying to help resolve the issue out of court, directly in touch with counsel for Westfalia. (ECF #142-9.) And empirical did not fail to "take any action to obtain judicial intervention." (ECF

16

#154, at p. 12.) Rather, empirical joined in Westfalia's motion seeking judicial intervention, and it welcomed Judge Zwart's resolution of the issue, stating that "[r]egardless of how the Court rules, empirical looks forward to complying and getting on with the mediation." (ECF #111, p. 6.)

Judge Zwart further erred in holding that the "cases cited by empirical related to the protection of confidential information are distinguishable" because "[i]n those cases, the court sustained a party's objection to discovery…because the information sought was confidential," whereas "[h]ere empirical made no timely objection." (ECF #154, pp. 12-13.) Judge Zwart did not identify anything in the record to support her conclusion that "empirical made no timely objection" to the production of Westfalia's highly confidential information. To the contrary, as she stated elsewhere in her order, when "Swisslog…requested the documents through written discovery propounded on empirical[,] empirical reiterated the need for an [AEO] protective order prior to full disclosure of the Westfalia documents." (ECF #154, pp. 10-11.) In fact, empirical formally objected to the production of Westfalia's confidential documents in its responses to discovery requests, which it served on January 6, 2021, more than a week before it produced the first redacted document:

> empirical objects to the [requests] to the extent that they seek information that is confidential or proprietary to . . . third parties. If empirical provides confidential or proprietary information . . . such production will be subject to the final terms of a protective order entered by the Court. Production of documents containing confidential information will be contingent on entry of an appropriate protective order by the Court.

(ECF #122-3, pp. 2-3.) empirical was substantially justified in standing on these objections and redacting the Westfalia documents until such time as the Court had ruled on the issue. *Stiffler*, 2019 WL 2612726, at *5; *Transp. Alliance*, 2011 WL 4964034, at *3.

17

### 2. Honoring Contractual Obligations To Third Parties Is A Substantial Justification.

Judge Zwart also erred in holding that "empirical's argument that it was contractually obligated to protect Westfalia's confidential information is likewise unavailing." (ECF #154, p. 11.) Judge Zwart recognized that a party is justified in withholding information that is covered by a confidentiality agreement. *See*, *e.g.*, *Grupo Petromex, S.A. De C.V. v. Polymetrix AG*, 2019 WL 2241862, at *4, 7 (D. Minn. May 24, 2019) (party could redact a third-party's confidential "technical, engineering, and manufacturing drawings and specifications" if it could "show an express written obligation of confidentiality applicable to that information"); *Cook v. Med. Savs. Ins. Co.*, 2006 WL 687126, at *2 (W.D. Okla. Mar. 17, 2006) (denying sanctions because a party's "confidential settlement [agreement]…substantially justified its nondisclosure of…information"). Nor could Judge Zwart deny that, where (as here) the confidential information belongs to a third party rather than a litigant, courts have been even more mindful of protecting confidentiality rights in discovery. *See*, *e.g.*, *Gulf S. Lithotripsy, LLC v. N. River Ins. Co.*, 2008 WL 11353646, at *2 (E.D. La. Feb. 6, 2008) ("Because the requested materials involve third parties…and contain a confidentiality provision, plaintiff was substantially justified in objecting to the request for production and opposing this motion"); *Texarkana Behavioral Assocs., L.C. v. Universal Health Servs., Inc.*, 2009 WL 10707954, at *1 (W.D. Ark. May 12, 2009) ("Defendants are not required to produce documents containing confidential information of third parties subject to confidentiality agreements").

Rather than applying the law about protecting the contractual confidentiality rights of third parties, the sanctions order instead relied on the untrue allegation that empirical sat on its hands and did nothing. (ECF #154, pp. 11-12.) As shown above, however, empirical did not do nothing but instead had taken numerous affirmative steps to try to resolve the matter. empirical told the

18

interested third party Westfalia that it needed to file a motion for a protective order, and empirical then joined in that motion as soon as Westfalia filed it. That is exactly what was prescribed by empirical's contract with Westfalia. The contract provides that "[s]hould either party be required by law or legal process to disclose any information protected by this Article, the party subject to disclosure shall notify the other party of such event in accordance with this Agreement and with as much advance notice as reasonably possible, to permit the party owning the confidential information to protect its rights." (ECF #142-2 at ¶ 12(H).) empirical was substantially justified in honoring its contract by initially redacting certain highly confidential information to give Westfalia a chance to protect its rights. The disregard for the contractual confidentiality rights of a third party contained within the sanctions order was clearly erroneous and contrary to law.

### 3.   Primus And Swisslog Reneging On Their Agreement To Enter An AEO Protective Order Is A Substantial Justification.

Judge Zwart erred in finding that Primus and Swisslog reneging on their agreement to enter an AEO protective order was not a substantial justification for redacting the Westfalia document until the issue had been resolved. (ECF #154, p. 11.) At the hearing on December 8, 2020, at which Judge Zwart ordered the parties to mediate, empirical stated that it needed an AEO protective order in order to produce Westfalia's highly confidential documents. (ECF #142-1 at ¶ 24.) Primus and Swisslog indicated they were amenable to such an order, provided there was an exception for in-house experts. (*Id.*) However, as soon as the Court entered the Order requiring production of Westfalia documents on December 22, 2020, Primus and Swisslog reneged and disregarded empirical's request on December 23, 2020 that the parties file a joint motion for entry of an agreed AEO protective order. (ECF #142-1 at ¶ 28.) This amounted to a "bait and switch." Primus and Swisslog committed to entering an AEO protective order at the December 8 hearing, yet once empirical agreed to the joint submission of the December 22 Order in reliance on that commitment,

Primus and Swisslog welched and demanded that empirical produce the documents with no such AEO protection. Judge Zwart faults empirical because (as the plaintiff) it was "a key drafter of the December 22, 2020 Order." (ECF #154, p. 10.) But that is like blaming the party who drafted an agreement that was fraudulently induced by the counterparty.

Judge Zwart reasoned that empirical should have *anticipated* that Primus and Swisslog might renege because "[g]iven the context of the discussions, including weeks of fruitless negotiation [of a draft AEO order], empirical was on notice that the protective order was anything but a certainty." (ECF #154, p. 11.) Sanctioning empirical for not anticipating that Primus and Swisslog would renege on an agreement to enter an AEO protective order clearly illustrates the injustice of the sanctions order. Judge Zwart said nothing about Primus and Swisslog reneging on the AEO protective order; instead, she blamed empirical and attributed the "anger and mistrust" in this case to its initial redaction of Westfalia's confidential documents after defendants reneged. (ECF #154, p. 16.) Certainly empirical was acting reasonably under the then-existing circumstances. empirical was substantially justified in relying on defendants' agreement to enter an AEO protective order, and when they reneged, empirical was substantially justified in temporarily redacting the highly confidential information until the Court had resolved the AEO issue.[3]

Judge Zwart also erroneously found that these were "unanticipated redactions." (ECF #154, p. 6.) This finding is materially wrong. empirical had been asking Primus and Swisslog to agree to an AEO protective order for the Westfalia documents since November 5, 2020. (ECF #142-3.)

---

[3]    The unclean hands of Primus and Swisslog in reneging on their agreement to an AEO protective order also make the sanctions order contrary to law. "Courts have refused to invoke their inherent authority to impose sanctions where the party requesting the sanctions has unclean hands." *Thomas v. Schwab*, 2012 WL 6553773, at *1 (E.D. Mich. Dec, 14, 2012).

Westfalia had likewise objected in writing to the production of its highly confidential documents without an AEO order. (ECF #142-4.) Judge Zwart reasoned that defendants' unresponsiveness on the AEO issue should have put empirical "on notice that the protective order was anything but a certainty." (ECF #154, p. 11.) But by the same token, Primus and Swisslog were on notice that, absent an AEO protective order, empirical's production of Westfalia's highly confidential information was also anything but a certainty. They too should have anticipated the potential for redaction of Westfalia's highly confidential documents until the AEO protective order issue had been resolved. The redactions could not have been "unanticipated" when both empirical and Westfalia had been telling the defendants (and Judge Zwart) for two months that an AEO protective order was necessary before the information could be produced. (ECF #142-3; 142-4.) Under these circumstances, empirical's initial redaction of the Westfalia documents pending a ruling on the AEO issue was substantially justified.

### 4.      Standing On The Same Objection That Primus And Swisslog Interposed Is A Substantial Justification.

Finally, Judge Zwart erred in rejecting empirical's argument that its objection to the production of Westfalia's confidential information was no different than Primus's and Swisslog's own confidentiality objections. empirical showed that where, as here, the party seeking sanctions "took the position that a confidentiality clause prevented discovery of [information] in a similar situation," sanctions are even less appropriate. *Transp. Alliance*, 2011 WL 4964034, at *3. Here, in its responses to empirical's Requests for Production, Primus itself objected that it "has various documents and information in its possession, custody, or control that are subject to third-party confidentiality restrictions." (ECF #142-15 at p. 2.) Primus further stated that "[i]f any information is withheld from disclosure on the basis of third-party confidentiality restrictions, Primus will identify the third party, begin discussions with the third party regarding disclosure of the

21

information, and advise Plaintiff of its efforts relating to same." (*Id.*) Similarly, Swisslog included in its contract with Primus that "[d]rawings, technical documents or other technical information" would not be disclosed outside the project "without the consent of the submitting Party." (ECF #142-16 at General Terms and Conditions ¶ 6.) In light of these objections, neither defendant can seriously claim that discoverable information may not be temporarily "withheld from disclosure on the basis of third-party confidentiality restrictions" until the Court can rule on the objection.

But Judge Zwart sided with Primus and Swisslog again. She reasoned that "the situation highlighted by empirical is completely distinguishable from the situation at bar. Primus interposed an objection to discovery based on a confidentiality concern. In contrast, empirical failed to do so." (ECF #154, pp. 13-14.) That is simply wrong. And indeed Judge Zwart cited nothing in the record to support it. In reality, as shown above, in response to the defendants' discovery requests on January 6, 2021, empirical "object[ed] to the [requests] to the extent that they seek information that is confidential or proprietary to . . . third parties" and stated that "[p]roduction of documents containing confidential information will be contingent on entry of an appropriate protective order by the Court." (ECF #122-3 at pp. 2-3.) empirical was substantially justified in standing on this objection and expecting that it would be held to the same standard to which Primus and Swisslog have held themselves. But Judge Zwart held empirical to a different standard than Primus and Swisslog. That was unjust and clearly erroneous.

## II.    Judge Zwart Erred By Ordering Empirical To Pay Fees And Expenses That Primus And Swisslog Would Have Incurred Regardless Of The Alleged Misconduct.

"A court must exercise its inherent powers [to order sanctions] with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction." *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (citing *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993)). As Judge Zwart herself acknowledged, "[a]ny award should

be 'remedial' in nature; that is, it should compensate the opposing parties for the fees they incurred *as a result of the…misconduct*." *Vallejo v. Amgen, Inc.*, 2017 WL 3037391, at \*5 (D. Neb. May 30, 2017) (Zwart, M.J.) (emphasis added). Indeed, the plain language of Rule 37 of the Federal Rules of Civil Procedure expressly requires a causal connection between the misconduct and the amount of the sanction. Rule 37(b)(2)(C) limits the amount of the sanctions award to the "reasonable expenses…*caused by the failure*" to obey a discovery order.

In a unanimous opinion, the United States Supreme Court recently explained how causation works in the context of sanctions awards. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017). In *Goodyear*, the Supreme Court "made clear that such a sanction [of an opponent's attorneys fees], when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Id.* As the Court explained, this means that "the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (internal quotation omitted). "To level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Id.* "When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim." *Id.* "That means, pretty much by definition, that the court can shift only those attorney's fees incurred *because of the misconduct at issue*." *Id.* (emphasis added). In other words, "a court, when using its inherent sanctioning authority (and civil procedures), [must] establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* "That kind of causal connection…is appropriately framed as a but-for test." *Id.* at 1187. "The complaining party…may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.*, quoting *Fox v. Vice,* 563 U.S. 826, 836, (2011). "[W]hen the cost

would have been incurred in the absence of the discovery violation, then the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone." *Id.* (internal quotation omitted).

This Court has recognized and applied *Goodyear* on more than one occasion. *See United Food & Comm. Workers. Union, Local No. 293 v. Noah's Ark Processors, LLC*, 2020 WL 1663584, at * 3 (D. Neb. April 4, 2020) (Rossiter, J.) ("[T]he court can shift only those attorney's fees incurred because of the misconduct at issue") (internal quotation omitted); *Mehner Family Trust v. U.S. Bank Nat'l Ass'n*, 2017 WL 11552952, at *2 (D. Neb. Aug. 3, 2017) (Rossiter, J.) ("sanctions can only be levied after finding a causal connection showing the damages are specifically attributable to the misconduct"). Here, as shown below, Judge Zwart established no causal connection between empirical's redactions and all of the fees and expenses that she awarded to Primus and Swisslog—fees and expenses that they would have incurred regardless of the alleged misconduct.

A.      **Judge Zwart Ordered Mediation Prior To The December 22 Order.**

empirical's temporary redaction of certain Westfalia documents could not have caused Primus and Swisslog to incur almost two weeks of "fees and expenses preparing for and participating in mediation" when Judge Zwart had ordered the parties to mediate before the December 22 Order was even entered. On December 8, 2020, Judge Zwart ordered the parties to participate in a mediation on or before January 31, 2021. (ECF #93.) Once she entered that order, Primus and Swisslog were going to incur fees and expenses preparing for and participating in the mediation no matter what. Irrespective of the December 22 Order entered two weeks later, Primus and Swisslog were required to mediate, and they necessarily would have incurred mediation-related fees and expenses as a result. It was the order requiring mediation—and not the Westfalia

redactions—that caused Primus and Swisslog to incur fees and expenses preparing for and participating in the mediation. To use the Supreme Court's words, the Westfalia redactions could not have been the but-for cause of the costs incurred preparing for and participating in the mediation because those costs "would have been incurred in the absence of the [Westfalia redactions]." *Goodyear*, 137 S.Ct. at 1187. Accordingly, it was clearly erroneous and contrary to law for Judge Zwart to award those fees and expenses as a sanction. *Id.*

### B. Only A Fraction Of Primus's And Swisslog's Fees And Expenses Could Have Been Related To The Temporary Redaction Of The Westfalia Documents.

The sanctions award did not even attempt to establish causation. Primus and Swisslog asked for an entire month of fees and expenses, but Judge Zwart held that it was "more appropriate to measure the sanctionable period beginning on January 14, 2021," which "was the date on which empirical first produced redacted documents, in blatant contravention of the December 22, 2020 Order." (ECF #154, p. 15.) Judge Zwart said she had "not identified any prejudice experienced by Primus or Swisslog prior to that first, improper redaction," and thus she "impose[d] sanctions for only the fees incurred after empirical became noncompliant." (*Id.* at pp. 15-16.) But empirical's alleged noncompliance did not *cause* all the fees that Primus and Swisslog incurred thereafter. It is not as though Primus and Swisslog would have stopped preparing for the mediation, or would not have attended, if empirical had produced unredacted versions of the Westfalia documents on January 14. They *still* would have incurred 13 more days of fees and expenses preparing for and participating in the mediation.

Indeed, Judge Zwart also did not identify how (if at all) Primus's and Swisslog's fees supposedly increased as a result of the Westfalia redactions. At most, only a small fraction of Primus's and Swisslog's mediation-related fees and expenses could have had anything to do with empirical's redaction of the Westfalia documents. Primus and Swisslog never even filed a motion

25

or a brief regarding the redactions. Instead, they exchanged a few emails and phone calls with the mediators and counsel for Westfalia and empirical, they likely reviewed Westfalia's motion for a protective order and empirical's joinder, and they appeared for about an hour at the virtual hearing on January 25, 2021. These are the only fees and expenses that are arguably causally connected to the Westfalia redactions. And even these fees and expenses probably *still* would have been incurred if empirical had done what Judge Zwart suggested it should have, which is file a motion for an AEO protective order earlier in January. Simply put, this is a case where "the cost would have been incurred in the absence of the discovery violation," and thus "the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone." *Goodyear*, 137 S.Ct. at 1187 (internal quotation omitted). Awarding Primus and Swisslog almost two weeks of fees and expenses incurred "preparing for and participating in mediation"—fees and expenses that they would have incurred anyway—was punitive, clearly erroneous, and contrary to law. *Id.*

C.    **The Temporary Redaction Of The Westfalia Documents Did Not Cause The Mediation To Fail.**

Judge Zwart did not find that empirical's initial redaction of certain Westfalia documents caused the mediation to fail, and thus her sanctions award could not have been based on the outcome of the mediation. Instead, she found that empirical's alleged noncompliance with the December 22 Order "disrupted and delayed preparation for the mediation and necessitated a hostile confrontation with opposing counsel minutes before those same individuals were scheduled to attempt a fruitful mediation." (ECF #154, p. 16.) She further surmised that "[n]o doubt, the spirit of compromise necessary for settlement was derailed by the anger and mistrust arising from empirical's noncompliance." (*Id.*) Judge Zwart cites nothing in the record for these conclusions, but even assuming it were true that the Westfalia redactions made the mediation more contentious or acrimonious, no "but for" causal connection to the outcome of the mediation has been

established. Indeed, it would have been totally unfair for Judge Zwart to base her ruling on the outcome of the mediation when she admittedly had "not considered empirical's arguments related to the outcome." (*Id.* at 14.)

Neither Primus nor Swisslog can honestly argue that the temporary redaction of Westfalia documents caused the mediation to fail. In fact, Primus itself has already conceded that it "cannot say with absolute certainty that the redacted [Westfalia] proposals….constituted the sole cause of the failure of the mediation." (ECF #121, at p. 13.) Indeed, of the 87,000 pages of documents that empirical produced in accordance with the December 22 Order, only 26 pages contained redactions. (ECF #142-1 at ¶ 31, #131-3, #131-4.) Even before producing the unredacted pages on the morning of the first day of the mediation, empirical had already produced the amount of the Westfalia contract for Phase I, the amount of the Westfalia proposal for Phase II, schedules empirical received from Westfalia regarding the replacement of the System, and internal and external emails about the replacement of the System, including communications with Westfalia. (*Id.*)

Furthermore, defendants' legal theories and defenses did not even depend on the Westfalia documents. Both Primus and Swisslog have alleged that *empirical* is liable to *them*, rather than the other way around, because, according to Primus and Swisslog, the ASRS functions as intended. (ECF #18; ECF #89.) Primus and Swisslog did not move off that position in the mediation, even for the sake of negotiation. (ECF #142-1 at ¶ 52.) The parties spent Day 1 of the mediation discussing liability issues, which had nothing to do with Westfalia (*Id.*) The parties spent Day 2 discussing damages, but Primus's and Swisslog's joint offers to empirical were not based on the Westfalia work. (*Id.* ) In fact, defendants offered empirical no money, and instead asserted that empirical should actually pay them several million dollars. (*Id.*) empirical's offers to Primus and

Swisslog were not based on Westfalia work either. (*Id.*) Westfalia was simply a non-issue at the mediation.

As a result, any argument that empirical should pay for the mediation because the initial Westfalia redactions caused it to fail should be rejected. While the Westfalia redactions may have upset counsel for Primus and Swisslog, the redactions did not cause Primus and Swisslog to incur any additional fees or expenses that they would not have incurred anyway. Judge Zwart's sanctions award of 13 days of fees and expenses incurred preparing for and participating in the mediation was therefore clearly erroneous and contrary to law. *Goodyear*, 137 S.Ct. at 1187.

## III.  Judge Zwart's Sanctions Order Was Otherwise Unjust.

Rule 37 provides that an award of reasonable expenses for a discovery violation is not appropriate where "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, in addition to the circumstances described above, several other circumstances make Judge Zwart's sanctions award unjust and therefore erroneous.

### A.   Judge Zwart Ordered Sanctions Without First Giving Empirical An Opportunity To Be Heard.

Judge Zwart's *sua sponte* award of sanctions was unjust because she effectively ruled without first giving empirical a reasonable opportunity to be heard on the issue. "[I]n invoking its inherent power [to order sanctions], a court must comply with the mandates of due process." *Baycol*, 419 F.3d at 802 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Thus, before a district court may impose sanctions, the individual must receive notice that sanctions against her *are being considered* and an opportunity to be heard." *Id.* (emphasis added) (citing *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000)). "An opportunity to be heard" requires at least "the opportunity to fully brief the issue." *Neb. Data Ctrs., LLC v. Khayet*, 2018 WL 10757614, at *1 (D. Neb. July 6, 2018) (Zwart, M.J.). "Case-specific consideration is required

when deciding a motion for sanctions, and any sanctions awarded under the court's inherent power must be based on careful scrutiny and specific factual findings." *Id*.

In this case, without any prior motion or briefing, Judge Zwart held at the January 25, 2021 hearing: "You're in violation of that [December 22] order. For that, you will be sanctioned." (ECF #142-10 at 40:21-22.) Judge Zwart then told the parties that she "would determine the appropriate scope of sanctions on a full record and briefing." (ECF #154, p. 8.) In other words, whether sanctions would be granted had already been decided—they would—only the scope of the sanctions was yet to be determined. Thus, Judge Zwart sanctioned empirical without any advance notice that sanctions were being considered, without any briefing on that issue, and without any factual record. Then after the parties briefed the "scope of the sanctions," she ordered empirical to pay Primus and Swisslog fees and expenses that clearly were not caused by the allegedly sanctionable conduct. None of this comports with due process. Sanctioning empirical *sua sponte*, with no advance notice, before even giving it an opportunity to brief the issue, was unjust, clearly erroneous, and contrary to law. *Baycol*, 419 F.3d at 802; *Khayet*, 2018 WL 10757614, at *1.

### B. Empirical Participated In The Mediation In Good Faith.

Judge Zwart's sanctions order was also unjust because empirical participated in the mediation in good faith. empirical is not aware of any case in which a court has ordered a party to pay the costs of mediation when it participated in the mediation in good faith. To the contrary, courts have denied sanctions in such cases. *See*, *e.g.*, *Factory Mut. Ins. Co., Inc. v. Rasmussen Mech., Inc.*, 2014 WL 12577026, at *2 (D. Neb. May 6, 2014) (the court was "unable to conclude that an assessment of costs is warranted" where a party "prepared a mediation statement, sent an individual with settlement authority to the mediation, and incurred costs in connection with the mediation"). Where, as here, "the reason for the unsuccessful mediation was not in fact bad faith,

but rather was a culmination of factors, such as a vast divergence of the estimate of the value of the claims," sanctions should be denied. *Bauerlein v. Equity Residential Prop. Mgmt. Corp.*, 2007 WL 1521606, at *1 (D. Ariz. May 22, 2007).

In this case, empirical agreed to a two-day mediation with two mediators, as suggested by Primus. (Pope Decl. ¶ 54.) empirical devoted three litigation partners, two associates, an entire team of contract attorneys, and a paralegal to preparing for the mediation. (*Id*.) empirical had two experts analyzing testing and software issues throughout December and January. (*Id*.) empirical drafted and submitted three briefs to the mediators and Primus and Swisslog, totaling over 50 pages. (*Id*.) empirical spoke with the mediators (together and separately) on numerous occasions in December and January, even before the mediation commenced. (*Id*.) empirical made its ASRS expert available to discuss the case directly with the mediators without counsel present. (*Id*.) empirical sent three executives (including both its President and its General Counsel), four outside attorneys, and two expert witnesses to the mediation itself. (*Id*.) empirical was obviously serious about mediating, and it sincerely wanted the mediation to succeed so that it can get on with its business. In light of its good faith in mediating the case, ordering empirical to pay all the fees and expenses incurred by both defendants and the mediators for the 13 days leading up to and through the mediation was unjust, clearly erroneous, and contrary to law. *See Factory Mut.*, 2014 WL 12577026, at *2; *Bauerlein*, 2007 WL 1521606, at *1.

## C. Primus And Swisslog Had More Than Enough Information To Mediate.

Finally, Judge Zwart's award of sanctions for a mediation-related discovery violation was unjust because Primus and Swisslog had more than enough information to mediate effectively. Pursuant to the December 22 Order, empirical produced over 87,000 pages of documents to Primus and Swisslog, and only 26 pages contained redactions. (ECF #142-1 at ¶ 31, #131-3, #131-4.)

30

Moreover, even before producing the unredacted pages on the morning of the mediation, empirical had already produced the amount of the Westfalia contract for Phase I, the amount of the Westfalia proposal for Phase II, schedules empirical received from Westfalia regarding the replacement of the System, and internal and external emails about the replacement of the system, including communications with Westfalia. (*Id*.) In light of all this information and the relatively narrow scope of the redactions, it is not surprising that Primus and Swisslog never filed a motion to unredact the Westfalia documents prior to the mediation. The issue only reached Judge Zwart after *Westfalia* filed a motion for a protective order.

At the January 25, 2021 hearing, after the Court ordered the Westfalia documents to be unredacted, counsel for Swisslog asked the Court whether the parties should still proceed with mediation. (ECF #114; ECF 142-10 at 42:17-20.) The Court responded: "If you can. If you cannot, you may include, in your motion for sanctions, the sanctions are appropriate for being unable to mediate as scheduled." (*Id.* at 42:21-43:1) Primus and Swisslog decided, based on the information they already had, that they could still proceed with the mediation. Having agreed to proceed with the mediation with all that information, Primus and Swisslog cannot honestly say that empirical should have to pay for everything because the redactions on 26 pages of Westfalia documents were removed later that morning. With or without the unredacted documents, defendants had sufficient information with which to mediate, or else they would not have gone forward with the mediation that day.

Furthermore, once empirical provided Primus and Swisslog with the unredacted versions on the morning of January 25, 2021, all of their in-house and outside experts and attorneys—a total of over a dozen people—had a day and a half to review the 26 unredacted pages during the mediation. The mediators were also available to convey any questions that Primus and Swisslog

might have about the documents to empirical in real time. In addition, empirical indicated that it was willing to continue discussing settlement even after the conclusion of the mediation. Over three months have passed since Primus and Swisslog received the unredacted Westfalia documents, and neither of them has indicated that their in-depth analysis of the documents has changed their settlement analysis or position in any way. Because having the unredacted Westfalia documents earlier would not have made a difference in the outcome of the mediation, ordering empirical to pay for the entire mediation, plus almost two weeks of mediation preparation, was unjust, clearly erroneous, and contrary to law.

## **<u>CONCLUSION</u>**

For all these reasons, the sanctions order (ECF #154) should be vacated, and no sanctions should be ordered against empirical. Alternatively, if sanctions against empirical are ordered, then the amount of the sanction should be limited to the fees and expenses incurred by Primus and Swisslog in seeking to have the Westfalia documents unredacted.

14517659 v1

Dated:  May 5, 2021                      EMPIRICAL FOODS, INC.,
                                         *Plaintiff/Counter-Defendant*

                                         By: *s/ Michael C. Cox*
                                         _____
                                             Michael C. Cox, #17588
                                             J. Daniel Weidner, #23738
                                             John V. Matson, #25278
                                             KOLEY JESSEN P.C., L.L.O.
                                             One Pacific Place, Suite 800
                                             1125 South 103rd Street
                                             Omaha, NE 68124-1079
                                             (402) 390-9500;
                                             (402) 390-9005 (facsimile)
                                             Daniel.Weidner@koleyjessen.com
                                             John.Matson@koleyjessen.com

                                             J. Erik Connolly (*pro hac vice*)
                                             Nicole E. Wrigley (*pro hac vice*)
                                             David D. Pope (*pro hac vice*)
                                             Kathryn E. Clausing (*pro hac vice*)
                                             BENESCH, FRIEDLANDER,
                                                COPLAN & ARONOFF, LLP
                                             71 S. Wacker Drive, Suite 1600
                                             Chicago, IL 60606
                                             (312) 212-4949
                                             (312) 767-9192 (facsimile)
                                             econnolly@beneschlaw.com
                                             nwrigley@beneschlaw.com
                                             dpope@beneschlaw.com
                                             kclausing@beneschlaw.com

                                             *Attorneys for empirical foods, inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is less than 13,000 words as contemplated by NECivR 7.1(d)(3). I further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2016 and contains 10,579 words.

*s/ Michael C. Cox*
_____
Michael C. Cox

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 5th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

_s/ Michael C. Cox_
Michael C. Cox