## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EMPIRICAL FOODS, INC., | ) | |
|     Plaintiff, | ) ) | Case No. 8:19-cv-00457 |
| v. | ) ) | |
| PRIMUS BUILDERS, INC., | ) ) | **PRIMUS BUILDERS, INC.'S** |
|     Defendant, Plaintiff in Counterclaim, and Third-Party Plaintiff, | ) ) ) ) | **BRIEF IN RESPONSE TO EMPIRICAL'S STATEMENT OF OBJECTIONS TO ECF NO. 100 AND ECF NO. 154** |
| v. | ) ) | |
| SWISSLOG LOGISTICS, INC., | ) ) | |
|     Third-Party Defendant. | ) ) | |

## OVERVIEW

On the morning of January 25, 2021, Magistrate Judge Zwart conducted an emergency hearing involving a Motion for Protective Order filed by non-party Westfalia Technologies, Inc. ("Westfalia") on the evening of Sunday, January 24, 2021 [ECF # 110], which was joined by Plaintiff empirical foods, inc. ("empirical") that same evening [ECF # 111]. Westfalia sought to shield the disclosure of certain documents and information requested in a Rule 45 Subpoena previously served by Third-Party Defendant Swisslog Logistics, Inc. ("Swisslog") more than two (2) months earlier on November 16, 2020.

empirical sought to "piggy back" on the Motion to justify its redactions to certain Westfalia documents that empirical had previously agreed to produce under an order empirical authored and presented to Judge Zwart on December 21, 2020. The Order entered by Judge Zwart on December 22, 2020 [ECF # 100] required empirical to produce certain documents and information all parties agreed were critical to prepare for, and participate in, a mediation scheduled to occur between January 25-26, 2021. The redacted information related to the scope of repairs and repair costs arising from empirical's

claimed defects in the $14 million ASRS System at the heart of this lawsuit, which are the same claims that were supposed to be mediated immediately following the emergency hearing.

After allowing ample opportunity for all counsel to be heard, including counsel for the parties, empirical, Swisslog, and Defendant Primus Builders, Inc. ("Primus"), as well as counsel for Westfalia, Judge Zwart issued a ruling as follows:

> Alright, here's my ruling, and then I want you to figure out how you're going to deal with this mediation, but here's my ruling, Number one, empirical, you are in violation of my court order. You had every right at the time when we were discussing this to say everything was subject to Westfalia was going to say. You never mentioned that before. You didn't put it in the order that you drafted, or at least contributed to in drafting and jointly submitted, to have me sign. I signed that order on December 22nd. Nothing in there allows you, at this point, to redact or to look to Westfalia for its permission to comply with my order—nothing. You're in violation of that order. For that, you will be sanctioned. I will be setting a deadline for you to – for the party to do their sanction motion, sanctioning is required any more. I do not know how we're going to get through this law suit if everything that has to come up has to come through me, and it has to be vetted several ways. **I truly believe, based upon the totality of how this case has progressed, that Empirical is attempting to avoid my orders.** (emphasis supplied).

[ECF # 114, audio file]. The Court instructed Primus and Swisslog to move for sanctions based on empirical's violations of the 12/22/20 Order so sanctions could be imposed based upon a full record and briefing. [Doc # 154, pg. 8].

The ensuing sanctions order issued by Judge Zwart on April 21, 2021 [ECF # 154], ("4/21/21 Order"), mandated far more active participation by local counsel for empirical, in all future hearings, pleadings, and discovery. [Id. pg. 17]. Judge Zwart expressed hope the active involvement of local counsel might help the parties "turn a corner and engage with each other in the absence of some of the sharper practices that have become a defining feature of this lawsuit." [Id.]. Unbeknownst to Judge Zwart, local counsel for empirical (the Koley Jensen Firm) had previously announced on March 10, 2021 – after briefing was completed on the sanctions motions – it would be taking a far more active role in the litigation in an attempt to "right the ship". However, the Koley Jensen firm cannot undo empirical's prior transgressions and violations of Judge Zwart's orders. Nor can the Koley Jensen firm

force empirical into future compliance with the orders of this Court.  empirical alone bears that responsibility.

Based upon the record before the Court, Judge Zwart was substantially justified in sanctioning empirical under Fed. R. Civ. P. 37 for its blatant violations of the 12/22/20 Order as fully explained in the 18 pages of her 4/21/21 Order. [ECF # 154].   Likewise, Judge Zwart's assessment of fees and expenses incurred by Primus and Swisslog between January 14, 2021 and January 26, 2021 under the 4/21/21 Order was just, proper, and commensurate with empirical's blatant violations of the 12/22/20 Order.

## **STANDARD OF REVIEW**

### A.    Review of Judge Zwart's 4/21/20 Order

"The magistrate judge's order concerns a non-dispositive pretrial matter within the ambit of 28 U.S.C. § 636(b)(1)(A)." *Koning v. Baisden*, No. 4:08CV3087, 2008 WL 4482839, at *3 (D. Neb. Oct. 1, 2008).  Consequently, the District Court may not modify, set aside, or remand the order to the magistrate judge unless it is clearly erroneous or contrary to law.  Id.  "Clearly erroneous is a high standard to meet; the challenger must convince the reviewing court that a mistake has been made." *Napolitano v. Omaha Airport Auth.*, No. 8:08CV299, 2009 WL 1740826, at *3 (D. Neb. June 15, 2009) (quotation omitted).  "As long as there are two permissible views of the evidence, a magistrate judge's particular view of the evidence and conclusions or determinations supported by the evidence are not clearly erroneous." *Circle R, Inc. v. Trail King Indus.*, No. 8:98CV281, 1999 WL 33963992, at *1 (D. Neb. Dec. 29, 1999), aff'd sub nom. *Circle R, Inc. v. Trail King Indus., Inc.*, 21 F. App'x 894 (Fed. Cir. 2001).  "A decision is contrary to the law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Klein v. TD Ameritrade Holding Corp.*, No. 8:14CV396, 2017 WL 1316944, at *2 (D. Neb. Apr. 7, 2017) (quotation omitted).  "A magistrate judge is afforded broad discretion in the resolution of non-dispositive discovery disputes." Id.

**B.      Judge Zwart Sanctioned empirical Under Rule 37**

Judge Zwart based the sanctions assessed against empirical in the 4/21/20 Order upon Fed. R.

Civ. P. 37.  Rule 37 provides, in pertinent part, when a party "fails to obey an order to provide or permit

discovery, . . . the court where the action is pending may issue further just orders."  Fed. R. Civ. P.

37(b)(2)(A).  In addition to, or instead of, those discretionary sanctions, "the court must order the

disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including

attorney's fees, caused by the failure, unless the failure was substantially justified or other

circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Judge Zwart acknowledged that empirical may be excused from sanctions, even in the face of

clear non-compliance with the 12/22/20 Order, if its non-compliance was "substantially justified" or

"other circumstances make an award of expenses unjust".  [ECF # 154, pg. 8].  "Substantial justification

exists where there is an issue about which reasonable people could genuinely differ on whether a party

was bound to comply with a discovery rule."  *Smith v. City of Omaha*, 2014 WL 4161105, at *2 (D.

Neb. Aug. 19. 2014) (citing Charles A Wright, et. al. Federal Practice and Procedure § 2288 (2d ed.

1994).

Judge Zwart first addressed whether empirical was substantially justified when violating her

4/21/21 Order under Rule 37.  [ECF # 154, pgs. 9 – 13].  Judge Zwart rejected empirical's argument it

believed the parties would agree to an enhanced protective order after entry of the 12/22/20 Order

ruling that:

> "The court does not find empirical's argument regarding the anticipated protective order
> persuasive.  The discovery order in question was not drafted by the court.  Here,
> empirical was, by its own admission, a key drafter of the December 22, 2020 Order.  If
> full compliance with the order was subject to additional conditions, these could, and
> should, have been included in the draft submitted to the court for consideration."

[Id. pg. 10].  Judge Zwart found "equally unavailing" empirical's argument that it was contractually

obligated to protect Westfalia's alleged confidential information within the Westfalia contracts ruling

-4-

that:

> "The problem with that argument, however, is that empirical did not ask the court to weigh in, even as the January 25, 2021 mediation became imminent. Empirical knew of its obligations to Westfalia long before empirical drafted and submitted the Order. And it knew of Westfalia's specific concerns related to production as early as November 2020.

[Id. pgs. 11 – 12]. In conclusion, Judge Zwart ruled there was no "substantial justification" for empirical's failure to comply with the 12/22/20 Order finding that:

> "empirical assigns blame for its predicament to everyone but itself: Primus and Swisslog are to blame because they did not agree to a protective order. Westfalia is to blame because it did not timely seek protection from the court. However, empirical was the primary author of the Order and joined in submitting it to the court. As a party to the litigation, it was fully able to protect its own rights and having failed to timely do so, it has no one to blame but itself.

[Id. pg. 13]. Clearly, Judge Zwart gave due consideration to empirical's "substantial justification" arguments, and exercising sound discretion found then unconvincing.

Judge Zwart next turned attention to whether "other unjust circumstances" justified empirical's violations of her 4/21/21 Order under Rule 37. [ECF # 154, pgs. 13 – 15]. She rejected empirical's "hypocrisy" argument, ruling that comparing Primus's objections to discovery requests based upon confidentiality concerns was "incongruent" with empirical's redactions of the Westfalia documents in the face of the 12/22/20 Order. [Id. pgs. 13 – 14]. Judge Zwart likewise rejected empirical's argument that after-the-fact compliance with the 12/22/20 Order would excuse or erase empirical's non-compliance. [Id. pg. 14]. Finally, Judge Zwart refused to consider empirical's arguments related to the outcome of the mediation since it was empirical's conduct leading up to the mediation that is relevant to the sanctions imposed. [Id.]. In conclusion, Judge Zwart ruled "empirical has not articulated any relevant circumstances that would render the imposition of sanctions unjust under Rule 37." [Id. pg. 15].

## C.   Judge Zwart Assessed Fees and Expenses Against empirical Under Rule 37

empirical argues that Judge Zwart erred with respect to her causation findings. In doing so,

empirical seeks to muddy the analysis by repeatedly referring to a court's "inherent powers" to order sanctions.  [ECF # 157 at 22-24].  However, Judge Zwart declined to award sanctions pursuant to her "inherent authority" because "the court [found] that the facts here fit squarely within the type of conduct covered [under] Rule 37(b)," and as a result, she entered "sanctions pursuant to that rule."  [ECF # 154 at 8 n.2].

Attorney fees awarded pursuant to Rule 37(b)(2)(C) for a blatant violation of a court order are vastly different from the sanctions awarded pursuant to a court's "inherent authority".

> Reliance on "inherent authority" to sanction parties for litigation misconduct should always be a last resort. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991); *see id.* at 50, 111 S. Ct. 2123 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."). It is, after all, just another name for an "undelegated power[ ]"— one that should be exercised with "especial 'restraint and discretion.'" *Goodyear Tire & Rubber Co. v. Haeger*, ––– U.S. –––, 137 S. Ct. 1178, 1186–87 n.5, 197 L.Ed.2d 585 (2017) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)).

*Schlafly v. Eagle Forum*, 970 F.3d 924, 939 (8th Cir. 2020) (J. Stras, dissenting) (emphasis added).

**D.     empirical's Reliance Upon *Goodyear* is Misplaced.**

empirical argues that the fees and expenses Judge Zwart awarded are prohibited by the decision of the Supreme Court in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1185 (2017).  [ECF # 157 at 3, 23-29].  In *Goodyear*, the Supreme Court considered an attorney fee sanction that the district court entered based upon its "inherent authority" to issue sanctions.  The district court found that the defendant committed discovery fraud and entered a sanctions order that resulted in the wholesale shifting of all legal fees incurred throughout the entirety of the case, regardless of whether the fees were tied to the misconduct alleged.  [Id.].  The Supreme Court reversed, holding that district courts must only order sanctions under their inherent authority that are "'calibrated to the damages caused by' the bad-faith acts on which it is based."  [Id. at 1186 (quoting

*Mine Workers v. Bagwell*, 512 U.S. 821, 834 (1994))].

Here, Judge Zwart did not enter a fee award pursuant to any "undelegated power" based upon a finding of "bad faith." Instead, she expressly entered a fee award, as required under Rule 37, after finding that empirical had violated an Order of the Court. Accordingly, *Goodyear*, and the other "inherent authority" cases empirical cites, have little application. *See, e.g.*, *Equal Employment Opportunity Commission v. CRST Van Expedited, Inc*., Case No. 07-CV-95-LRR, 2017 WL 11453368 (N.D. Iowa Dec. 27, 2017) (explaining that *Goodyear*, which "consider[ed] a federal court's inherent authority to sanction a litigant for bad-faith conduct," was inapposite to the imposition of attorney fees pursuant to statutory authority).

In fact, "[a]n award of reasonable expenses, including attorney's fees, 'to reimburse the opposing party for expenses caused by the failure to cooperate' is the least severe of all the sanctions authorized by Rule 37(b)." *Management Registry, Inc. v. A.W. Companies, Inc*., Case No. 0:17-cv-5009-JRT-KMM, 2020 WL 1910589, at *12 (D. Minn. April 20, 2020) (quoting *Ofoedu v. St. Francis Hosp*., 234 F.R.D. 26, 33 (D. Conn. 2006)). Thus, the sanction that Judge Zwart entered here, pursuant to Rule 37(b)(2)(C), is hardly draconian.

However, as Judge Zwart recognized in her Memorandum and Order, "Any [sanction] award should be 'remedial' in nature; that is, it should compensate the opposing parties for the fees they incurred as a result of the…misconduct." [ECF # 154 at 16]. While Rule 37(b)(2)(C) directs an award of attorney fees related to the violation of a discovery order, a party violating such an order must only be required "pay to reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). "Rule 37, interpreted consistent with its purposes, authorizes an award encompassing 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *Jenkins v. Pech*, Case No. No. 17 C 216, 2020 WL 757890 (D. Neb. 2015) (quoting *In re Stauffer Seeds, Inc*., 817 F.2d 47, 50 (8th Cir. 1987)). "Such sanctions

are appropriate where the offending parties' conduct required their opponents to spend their time 'hounding' [them] for discovery instead of preparing the case." *Management Registry, Inc*., 2020 WL 1910589, at \*12 (quoting *A.O.A. v. Rennert*, Case No. 4:11 CV 44 CDP, 2018 WL 1251827, at \*3 (E.D. Mo. Mar. 12, 2018)).

Here, Judge Zwart found that the outcome of the mediation was largely irrelevant, so she focused her analysis on empirical's discovery violations "leading up to the mediation." [ECF # 154 at 14]. Judge Zwart declined to award all costs associated with preparing for the mediation, as Primus and Swisslog requested. [Id. at 15]. Instead, she found that the sanctionable period would commence on January 14, 2021, "the date on which empirical first produced redacted documents, in blatant contravention of the December 22, 2020 Order." [Id.]. Judge Zwart then went on to explain the basis for her conclusion. She explained that "empirical drafted the order in question, and then did not comply with it." [Id. at 16]. She further found that empirical's discovery violation "disrupted and delayed preparation for the mediation and necessitated a hostile confrontation with opposing counsel minutes before those same individuals were scheduled to attempt a fruitful mediation of this multi-million-dollar dispute." [Id.] (emphasis added). Indeed, as Judge Zwart recognized, this led to an emergency hearing on the morning of the first day of the mediation—a time by which the parties should have been fully apprised of the claims and damages in the case, and should have been focused upon resolution. [Id. at 6]. Instead, Primus and Swisslog were still largely in the dark regarding empirical's purported damages arising from the so-called "Phase II" ASRS corrective/replacement process. [Id. at 5-7].

For these reasons, Judge Zwart noted that "the spirit of compromise necessary for settlement was derailed by the anger and mistrust arising from empirical's non-compliance, and by the fact that due to empirical's unilateral decision to withhold court-ordered discovery, Primus and Swisslog were not afforded an opportunity to read and consider information necessary for case evaluation before

-8-

the mediation began." [Id. at 16].  Accordingly, Judge Zwart concluded that "empirical should be sanctioned for all costs of preparation for the mediation, including expert and mediators' fees, from January 14, 2021 through the conclusion of the January 25-26 mediation." [Id.].

Judge Zwart's analysis is more than sufficient to satisfy the requirements of Rule 37(b)(2)(C). She specifically found that empirical's violation of the Court's Order resulted in empirical hiding vital information regarding damages, forced Primus and Swisslog to spend time hounding empirical for the discovery, caused Primus and Swisslog to be insufficiently prepared for the mediation, led to an emergency hearing on the morning mediation was supposed to begin, and caused the parties to walk into a mediation, immediately after a hostile confrontation, without sufficient time for the parties or their experts to fully digest the information they had just been provided. [ECF # 154, pg. 16].  Judge Zwart's sanctions Order was clearly tailored to the impact of empirical's discovery violation.  Accordingly, the Court should decline to overturn Judge Zwart's sanctions Order, because empirical has failed to show that Judge Zwart "fail[ed] to apply or misappl[ied] relevant statutes, case law or rules of procedure." *Klein v. TD Ameritrade Holding Corp.*, No. 8:14CV396, 2017 WL 1316944, at *2 (D. Neb. Apr. 7, 2017) (quotation omitted).

## ARGUMENT

empirical once again seeks to challenge a thoughtful, well-reasoned "Memorandum and Order" opinion comprising the 4/21/21 Order issued by Judge Zwart, the drafting of which she obviously devoted very significant time, effort, and attention.  By failing to acknowledge its prior transgressions, much less failing to cure its ongoing violations of Judge Zwart's orders, empirical continues to cause needless delay and expense to this lawsuit.

**A.**     **Magistrate Judge Zwart Properly Ruled that empirical Is Attempting to Avoid Her Orders.**

Judge Zwart correctly found that, given the totality of this lawsuit, empirical is attempting to

avoid her Orders, including both her prior order issued on August 27, 2020 ("8/27/20 Order") and the 12/22/20 Order for which empirical has just been sanctioned.  [ECF # 114, audio file].

**1.  The December 8, 2020 Hearing and empirical's Violations of the 8/27/20 Order.**

On December 8, 2020, Judge Zwart conducted a conference to review the status of discovery, including empirical's compliance (or lack thereof) with the 8/27/20 Order [ECF # 65; ECF # 132, ¶ 4], as affirmed by this Court on October 21, 2020.  [ECF # 81].  The 8/27/20 Order required empirical to produce eight (8) categories of materials and information required to support end-to-end testing prior to empirical's further destruction of the ASRS System, central to the heart of the dispute in this lawsuit. [ECF No. 65, pgs. 48 -50].  One focus of the Order was production of copies of the software hosted and customized by empirical that controlled the operation and functionality of the ASRS System ("empirical Software"), as well as documents and information identifying changes empirical made to the empirical Software.  [Id. pgs. 48 – 49, §§ 3 d, e, g, h, and i].  The Order also prohibited empirical's further destruction of the ASRS System and further changes and modifications to the empirical Software until empirical produced all 8 categories of information and materials required and Primus and Swisslog completed end-to-end testing.  [Id. pg. 48 § 2].

During the conference, counsel for empirical claimed empirical had fully complied with the 8/27/20 Order and requested that Primus and empirical provide dates to begin end-to-end testing.  [ECF # 132, ¶ 5].  Counsel for Primus disputed empirical's claim of compliance, providing examples of several specific areas where empirical continued to defy the 8/27/20 Order, to which empirical then claimed compliance was impossible.  [Id. ¶¶ 6 - 7].  More specifically, empirical claimed it was impossible to produce copies of the empirical Software, it hosted and customized, and/or copies of the documents and information detailing changes empirical had made to its empirical Software.  [Id.].  Having already invested significant time and effort into litigating the 8/27/20 Order, Judge Zwart

directed the Parties to attempt resolution of this lawsuit through mediation.  [ ECF No. 154, pg. 4; ECF # 132, ¶ 8].  The issue as to whether empirical was defying the 8/27/20 Order as claimed by Primus versus empirical's claims that compliance with the 8/27/20 Order was impossible, was expressly reserved for future resolution.  [Id.].

### 2.    The December 17, 2020 Hearing

When counsel for the parties were unable to agree upon the scope and extent of discovery required to conduct the mediation, Judge Zwart conducted a second hearing on December 17, 2020. [ECF #121, pg. 3].  Counsel for empirical claimed it required the production of e-mails (both internal and external) from 8 custodians of Primus and 13 custodians of Swisslog (originally the number was 18) for the years 2016 through 2019.  [ECF # 132, ¶ 14; Id.].  Counsel for Primus and counsel for Swisslog responded it was not possible to collect, review, and produce emails from so many custodians, over so many years, in time for the start of mediation on January 25, 2021.  [Id. ¶ 15]. Primus also noted that empirical had still not provided any information detailing its alleged damages that were being sought against Primus and empirical resulting from alleged defects in the ASRS System.  [Id. ¶ 16]  After prompting from Judge Zwart, the parties reached a compromise for each to produce e-mails from 5 custodians between 2017 and 2019.  [Id. ¶ 17].  The parties also  agreed that empirical would produce its contracts with Westfalia relative to the alleged repairs to the ASRS System and its contracts with Sikich relative to changes to the empirical software.  [ECF # 100, pg. 2, § 2.a, 2.b].  At the close of the hearing, counsel for empirical agreed to draft a proposed progression order detailing the parties' disclosure obligations and submit it to the court on December 21, 2020. [ECF # 132, ¶ 19].

### 3.    Judge Zwart's Order of December 22, 2020.

On December 22, 2020, Judge Zwart adopted, signed, and entered the Order drafted and presented by empirical ("12/22/20 Order") [ECF No. 100].  The 12/22/20 Order required empirical

-11-

to produce documents and information the parties had agreed was necessary for a successful mediation, including but not limited to:

(a)     empirical's contract with Westfalia for repair/replacement of the existing ASRS System;

(b)     empirical's consulting contract with Sikich LLP for services relating to software hosted, customized and maintained by empirical (e.g. iFIX, Microsoft Dynamics or ERP, and Databases).

(c)     Non-privileged internal communications, and external communications between empirical and Westfalia and empirical and Sikich, and

(d)     Documents identifying the damages claimed by empirical, including internal and external communications with Westfalia reflecting the costs to repair/replace the ASRS System.

[ECF # 100, pgs. 2 – 3, §§ 2.a – 2.e]. Each category of documents was critical for Primus and Swisslog to prepare for and participate in the mediation.  [ECF # 132, ¶¶ 21 - 30; ECF #146, ¶¶ 10 – 24].  The Westfalia contracts were required to identify the scope, cost and nature of the alleged repairs to the $14 million ASRS System, empirical alleged to be defective.  [ECF # 146, ¶ 11].  The Sikich contracts were required to identify the scope, cost and nature of changes to the empirical Software that controlled the operation and functionality of the ASRS System to determine their impact upon the alleged defects.  [ECF # 146, ¶ 21].  And the damages information and documents were required to identify whether the damages sought by empirical resulted from the alleged defects within the ASRS System upon which the lawsuit is based.  [ECF # 132, ¶¶ 28, 30. ECF # 146, ¶ 24].  empirical was to give priority to the production of these documents while the general e-mails from its five custodians were to be produced on a rolling basis between December 31, 2020 and January 20, 2021.  [ECF # 100, pgs. 3 –

4, § 3].

### 4.    empirical's Production of the Westfalia Contracts

empirical produced a copy of the Westfalia Contracts and some (but not all) exhibits thereto between December 31, 2020 and January 25, 2021.  [ECF # 132, ¶¶ 22 – 43].  On December 31, 2020, empirical produced a partial copy of the Westfalia Contract for Phase I dated February 13, 2020 containing boiler plate terms ("Westfalia Phase I Contract") but withheld 8 of the 9 exhibits, including the entire scope of work and specifications for Phase I.  [Id. ¶¶ 22 – 26].  On January 14, 2020, empirical produced Exhibit 1 ("Phase I Proposal") to the Westfalia Phase I Contract, but redacted 8 pages of material information from the Phase I Proposal, including the price breakdown and throughput requirements of the replacement system, both of which were critical to understanding empirical's claims, allegations and damages.  [Id. ¶¶ 33 – 38].  On January 20, 2021, empirical produced the Westfalia Phase II Proposal, but redacted 14 pages, including the scope of work, price, and throughput requirements, all of which were critical to understanding empirical's claims, allegations and damages.  [Id. ¶¶ 39 – 43].  Then, on January 25, 2021 at 11:30 am, empirical produced un-redacted versions of the Phase I and Phase II Proposals, but only after being ordered to do so by Judge Zwart earlier that morning.  [ECF # 114, (audio file)].

### 5.    empirical's Production of the Sikich Contracts.

On December 31, 2020, empirical produced a copy of the Sikich Master Services Agreement, dated February 24, 2017 ("Sikich MSA"), but withheld multiple purchase orders defining the entire scope of work, specifications, and costs paid by empirical under the Sikich MSA.  [ECF # 132, ¶¶ 22, 23, 62 – 75].

### 6.    empirical's Production of Damages Information.

empirical produced multiple variations of its alleged damages between December 31 and

January 25, but has still never produced the costs of alleged repairs required to remedy the defects it claims plague the ASRS System.  [ECF # 132, ¶¶ 27 – 30; 76 – 80; ECF # 146, ¶ 24].  On December 31, 2020, empirical produced the Westfalia Phase I Contract containing a lump sum price of $6.1 million for the Phase I repairs.  [ECF # 132, ¶¶ 22 – 26].  On January 6, 2021, empirical identified 10 general categories of damages including un-plead causes of action (Rescission and Restitution), seeking damages ranging from $1 million to $33.3 million Dollars, including $6.1 million for the Phase I work, and TBD for the Phase II work.  [Id. ¶¶ 27 – 28].  On January 25, 2021, empirical produced the un-redacted version of the Phase II proposal identifying a cost of $9.7million and  a scope of work that was drastically different than the ASRS System empirical originally requested and purchased from Swisslog.

### 7.    empirical's Ongoing violations of Judge Zwart's Orders.

Judge Zwart was absolutely correct when she found during the emergency hearing on January 25, 2021 that empirical was attempting to evade her 8/27/20 Order [ECF # 65] and 12/22/20 Order [ECF # 100], based upon the totality of the lawsuit [ECF # 114, audio file], as evidenced by the following:

(a)    Agreeing to produce the Westfalia contract in the 12/22/20 Order, when it knew or should have known that it was subject to a confidentiality clause in the Westfalia Contract dated February 13, 2020, ten (10) months before the Order was entered. empirical should have communicated this to the Court, or at the very least sought a modification of the Order from the Court.  [ECF # 100, pg. 2, § 2.a].

(b)    Producing the redacted Westfalia contract in bits and pieces on December 31, 2020, January 14, 2021, and January 20, 2021.  [ECF # 100, pgs. 2 – 3, §§ 2.a, 2.e]

(c)    Producing redacted copies of Proposal I and Proposal II based upon alleged objections from Westfalia in open defiance of the 12/22/20 Order of which empirical was the original author.  [ECF # 100, pg. 2, § 2.a].

(d)    Failing to produce all Exhibits to the Westfalia Contract.  [ECF # 100, pg. 2, § 2.a].

(e)    Concealing the scope and price of the Phase II work – work that not only materially changes the scope and nature of the ASRS System empirical purchased from Swisslog but also the building purchased from Primus – until the morning of the mediation.  This

information could have, and certainly should have been disclosed to Primus and Swisslog, even if production of the un-redacted version of the Phase II Proposal was not required by the 12/22/20 Order.  [ECF # 100, pgs. 2 – 3, §§ 2.a, 2.d, 2,e].

(f)     Failing to produce the PO 9380 "Westfalia Integration" as required by the 12/22/20 Order under which modifications/changes are being made to the ERP System to accommodate the Westfalia Phase I Proposal and Contract.  [ECF # 100, pg. 2, § 2.b].

(g)     Failing to produce the other sixteen (16) PO's that relate to changes empirical directed to the ERP between January 5, 2018 and December 21, 2020, several of which expressly identify systems involving Swisslog, many of which do not mention Swisslog, but expressly reference activities that very likely impact the operation and functionality of the ASRS System.  [ECF # 100, pg. 2, § 2.b].

(h)     Failing to provide a breakdown of its damages for Phase I and Phase II into categories as required by the 12/22/20 Order.  [ECF # 100, pg. 3, § 2.e].

(i)     Failing to disclose its alleged lump sum damages relative to Phase II until after the mediation had begun.  [ECF # 100, pg. 3, §§ 2.a, 2.d].

(j)     Failing to produce data used by empirical during its unilateral testing of the ASRS System in February of 2021.  [ECF # 65, pg. 49, § 3.b].

(k)     Failing to identify all changes empirical had made and was continuing to make to the empirical software.  [ECF # 65, pg. 49, § 3.d].

(l)     Failing to produce transaction and event logs relative to the empirical software.  [ECF # 65, pg. 49, § 3.h].

(m)     Failing to fully identify what iFIX does and how it interacts with Westfalia systems.  [ECF # 65, pgs. 49 – 50, §§ 3.e, 3.i].

(n)     Failing to identify all alleged defects within the ASRS System that justified the scope of work under the Westfalia Phase I and Phase II proposals.  [ECF # 65, pg. 48 – 49, § 3.a].

(o)     Failing to produce copies of the empirical software.  [ECF # 65, pg. 49, § 3.g].

(p)     Failing to "cooperatively interpret and conduct" … "all discovery and proceedings conducted in this case in a manner that secures the just, speedy and inexpensive determination of the merits" with the "failure to do so" … resulting "in sanctions, either upon motion or *sua sponte*" as provided in the 8/27/20 Order.  [ECF # 65, pg. 50, § 6].

Although empirical has since cured, or at least attempted to cure some of the violations, many of the others remain to be cured and empirical continues to openly defy the 8/27/20 and 12/22/20 Orders issued by Judge Zwart.

**B.     Judge Zwart did not err in Finding that empirical Was Not "Substantially Justified" in violating the 12/22/20 Order.**

Judge Zwart properly ruled that there was no substantial justification for empirical's failure to

comply with the 12/22/20 Order and ruled that:

> "empirical assigns blame for its predicament to everyone but itself: Primus and Swisslog are to blame because they did not agree to a protective order.  Westfalia is to blame because it did not timely seek protection from the court.  However, empirical was the primary author of the Order and joined in submitting it to the court.  As a party to the litigation, it was fully able to protect its own rights and having failed to timely do so, it has no one to blame but itself.

[ECF # 154, pg. 13].  Once empirical determined it could not comply with the 12/22/20 Order, it had an affirmative obligation to seek a modification of its disclosure obligations from the Court.  Nothing Primus, Swisslog, or Westfalia did or did not do prevented empirical from doing so.  Empirical alone must accept responsibility for its failure to seek a modification of the 12/2/20 Order before it became final and binding.

### 1. empirical's Reliance Upon the Confidentiality Provision In The Westfalia Contract is Not a "Substantial Justification" for its Violations of the 12/22/20 Order

Judge Zwart rejected empirical's argument that it was contractually obligated to protect Westfalia's confidential information until Westfalia sought and obtained a protective order, ruling that:

> "The problem with that argument, however, is that empirical did not ask the court to weigh in, even as the January 2, 2021 mediation became imminent.  Empirical knew of its obligations to Westfalia long before empirical drafted and submitted the Order.  And it knew of Westfalia's specific concerns related to production as early as November 2020.

[ECF No. 154, pg. 12].  Judge Zwart further ruled "[i]f empirical believed that it needed an additional court order in place in order to comply with the December 22, 2020 discovery plan, it should have moved for a protective order.  It never did."  [Id. pg. 11].

Nothing within the 12/22/20 Order entitled empirical to withhold and redact the contents of the Westfalia contract documents pending consent or approval by Westfalia.  Westfalia is not a party to this action.  [ECF No. 121, pg. 12].  Westfalia was not bound by the 12/22/20 Order.  Westfalia does not have authority to direct discovery required by the 12/22/20 Order.  If empirical sought an exception to the 12/22/20 Order empirical (not Westfalia) had an obligation to do so before the Order became

final and binding.  empirical's failure to produce un-redacted copies of the Westfalia contracts is a clear violation of the 12/22/20 Order.

### a.      Redaction of the Westfalia Contracts violated the 12/22/20 Order.

empirical argues that redaction of the Westfalia contract documents is very common, is not a violation of the 12/22/20 Order [ECF # 157, pgs. 16-17], and that Judge Zwart erred in finding the redactions displayed "clear non-compliance with a discovery order." [ECF # 154, pg. 9].  While the redaction of documents may be common when producing documents subject to privilege in response to a common discovery request, the same does not apply to the unconditional production of documents required by a court order.  This is especially so when the party asserting the privilege drafted the court order requiring the unconditional production of those documents over which the alleged privilege is being claimed.

Nonetheless, empirical claims "Primus and Swisslog just seized on the opportunity to incense Judge Zwart, telling her that empirical actually 'enjoys defying your orders' and 'disrespecting this Court.'" [ECF #157, pg. 16].  empirical further claims, "Judge Zwart was swayed and speculated at the January 25, 2021 hearing that empirical was 'attempt[ing] to hoodwink the Court" and was 'planning on having an escape hatch so that [empirical] really didn't need to provide" the Westfalia documents it was ordered to produce."  [Id.].  empirical obviously gives counsel for Primus and Swisslog far too much credit, or more likely gives Judge Zwart far too less.  Either way, empirical's first and presumably principal argument for substantial compliance with the 12/22/20 Order is baseless.  Moreover, empirical completely discounts its multiple violations of the 8/27/20 Order and the 12/22/20 Order some of which (not all) had already been made known to Judge Zwart.  [Supra, pgs.  14 – 15].

There is no such thing as partial compliance with a court order.  empirical either violated the 12/2/20 Order or it did not.  As Judge Zwart duly noted:  "The doctrine of substantial performance does not apply to compliance with court orders.  Full compliance is expected, and that argument is without

merit."  [ECF # 154, pg. 13, fn. 3].  Production of the Westfalia contract documents, redacting the price, scope and installation standards, was not full compliance with the 12/22/20 Order.

**b.      Empirical knew of its alleged obligations to Westfalia months before agreeing to Produce the Westfalia Documents Under the 12/22/20 Order.**

Judge Zwart correctly acknowledged that empirical knew of potential issues with production of the Westfalia Contract Documents months before it drafted and submitted the 12/22/20 Order.  [ECF # 54, pg. 11].  The alleged "confidentiality provision" upon which empirical relied to defy the 12/22/20 Order is contained in the Westfalia Phase I Contract dated February 13, 2020 – executed ten + plus months before empirical represented to the Court it would produce these very same documents.  [ECF # 132, ¶ 51].  Swisslog propounded a request for production of the Westfalia contract documents upon empirical in early  November, 2020, and served a Rule 45 Subpoena upon Westfalia on November 16, 2020.  [ECF No. 154, pg. 10].  Westfalia first objected to production of the documents requested by Swisslog on November 30, 2020 claiming the requests sought confidential and proprietary information. [Id.].  empirical knew of the existence of the confidentiality provision in the Westfalia contract documents ten months before drafting and submitting the 12/22/20 Order for execution by the court.

**c.      empirical Failed to Seek Judicial Intervention In a Timely Manner**

empirical argues it was entitled to protect Westfalia's "sensitive information and documents" until a protective order was entered [ECF # 157, pg. 17 – 18], and that Judge Zwart incorrectly found that empirical failed to seek timely "judicial intervention."  [Id.].  In this regard, Judge Zwart found that:

> "empirical, Primus, Swisslog, and Westfalia have been in discussions related to the Westfalia documents since November 2020. On November 16, 2020, Swisslog served Westfalia with a subpoena for the documents.  On November 30, 2020, Westfalia objected to the subpoena on the grounds, that among other things, it sought confidential and/or proprietary information.  Westfalia cited the lack of a protective order with a sufficient AEO provision as one of the reasons for its objection [citation omitted].  Swisslog also requested the documents through written discovery propounded upon empirical.  Empirical reiterated the need for an additional protective order prior to full disclosure of the Westfalia documents.

It does not appear that an agreement was reached between November 2020 and submission of the December 22, 2020 Order.  Given the context of the discussions, including the weeks of fruitless negotiation, empirical was on notice that the protective order was anything but a certainty.  Still, it agreed to full production of the Westfalia documents, without any caveat, based upon a supposed expectation that all parties would come to an agreement at some point after entry of the Order.  While that course of conduct has now put empirical into a tough position, it is a position of its own making.

[ECF # 154, pgs. 11 – 12].  As noted by Judge Zwart, empirical provided nothing to justify its failure to "caveat" production of the Westfalia contracts upon consent from Westfalia under the 12/22/20 Order.  [Id.].  Nor did empirical provide anything to justify its failure to seek judicial intervention justifying its violations of the 12/22/20 Order until Sunday, January 24, 2020 – after the Order had become final and binding and less than twenty-four (24) hours prior to the start of the mediation.  [Id.].

empirical nonetheless argues Judge Zwart erred in failing to find that empirical had sought "judicial intervention" because empirical sought a protective order from the other parties, asked the mediators to speak with counsel for Westfalia, and objected to the written discovery served by Swisslog.  [ECF # 157, pgs. 18 – 19].  empirical provides no explanation as to why or how it equated communications with third-parties to seeking intervention from the court.  [Id.].  Empirical likewise finds fault with Judge Zwart distinguishing those cases previously cited by empirical on the basis they dealt with responses to discovery requests, not the withholding of documents in violation of a court order.  empirical has not produced any case law indicating a party may sit on its hands for over one month violating a court order it drafted while awaiting a third–party to justify such violations.

> **d.      empirical Intentionally and Deliberately Defied the 12/22/20 Order.**

Unbeknownst to Primus, Swisslog and Judge Zwart, empirical and Westfalia were discussing withholding the Westfalia contract documents as early as December 28, 2020 – just six (6) days after the 12/22/20 Order was entered.  [ECF # 141, pgs. 8-9].  On 12/28/20, counsel for empirical sent an e-mail to counsel for empirical reading in pertinent part:

"Thanks for your response.  We certainly understand Westfalia's reservations about

the two documents you identified being produced. ***However, we've been ordered to produce these types of documents in advance of the mediation as they speak to empirical's damages in the case. So I don't think we can just put them in a privilege log and punt in their production until your objections to Swisslog's subpoena are addressed. To be clear we will not be producing these two documents on 12/31***.*"* (emphasis supplied).

[ECF # 145, pg. 8].  In counsel's own words: empirical was ordered to produce the Westfalia contract documents, empirical knew the documents must be produced in advance of the mediation, empirical knew the documents defined the damages empirical sought against Primus and Swisslog, and empirical knew it could not "punt" the issue down the road.  [Id. pgs. 8-9].

Nonetheless, empirical "punted" upon its disclosure obligations under the 12/22/20 Order and redacted critical portions of the Westfalia contract documents.  [Id. pg. 9].  Rather than seeking relief from the 12/22/20 Order, when it had weeks to do so, empirical elected to violate the 12/22/20 Order until Judge Zwart ordered empirical to produce such documents a second time.  [Id.].  Notably, empirical never notified Primus, Swisslog, or the Court that it intended to "punt" and produce redacted copies of the Westfalia contract documents.  [Id.].  Primus and Swisslog were left to discover this on their own.  [Id.].

### e.   The Westfalia Contract did not entitle empirical to Violate the 12/22/20 Order.

empirical argues it was "substantially justified" in violating the 12/22/20 Order based upon the "confidentiality provision" within the Westfalia Contract [ECF # 157, pg. 19], and that Judge Zwart erred in finding empirical's argument "unavailing".  [ECF # 154, pg. 11].  In support of its argument, empirical cites a string of cases that entitle a party to withhold documents in response to discovery requests, based upon a confidentiality objection.  [ECF # 157, pgs. 17 – 18].  None of these cases support empirical's arguments that empirical may intentionally violate a court order it drafted, based solely upon a confidentiality provision contained within a contract it executed 10+ months prior to drafting and submitting the court order being violated.

empirical next argues that it did not sit on its hands and do nothing [ECF # 157, pg. 18], and that Judge Zwart's findings to the contrary are in error.  [ECF # 154, pgs. 11 – 12].  In this regard, Judge Zwart referenced the declaration of David Pope [ECF # 141, pg. 10] and found:

> "Rather than bolster empirical's position, this anecdote simply demonstrates that empirical was aware, as early as December 29, 2020, that a litigated protective order was likely necessary.  And rather than take any action to obtain judicial intervention, it sat on its hands waiting for Westfalia to do it for them.  That complete lack of proactive response to this impending issue does not create any justification, let alone a substantial justification, for failure to comply with the December 22, 2020 Order."

[ECF # 154, pg. 12].  empirical takes umbrage with Judge Zwart's finding and claims it took numerous affirmative steps to resolve the matter, including telling Westfalia to seek a protective order and then joining in Westfalia's motion once filed.  [ECF # 157, pgs. 19 – 20].  Obviously, no "reasonable," "prudent" party would intentionally violate a federal court order for almost one month (from 12/29/20 to 1/24/21) while waiting for a third-party to seek "judicial intervention" justifying ongoing violations of the court order.

### f.    Empirical Stood Upon Westfalia's Redactions Without Verifying the Information was "Highly Confidential," Proprietary, or a Trade Secret.

Empirical appears to claim it was not required to take a position on the justification for the redacted materials [ECF #157, pg. 11], but rather could blindly accept and rely upon Westfalia's claims that the redacted information was "highly confidential," proprietary, and a trade secret when violating the 12/22/20 Order.  [Id.].  Nothing within the confidentiality provision required empirical to accept Westfalia's assertions or would otherwise excuse empirical from independently verifying the redacted information was "highly confidential."  [ECF # 157, pg. 20].  The contract simply provides that, "should either party be required by law or legal process to disclose any information protected by this Article, the party subject to disclosure shall notify the other party of such event in accordance with this Agreement and with as much advance notice as reasonably possible, to permit the party owning the confidential information to protect its rights"  [Id.]

g.  **Nothing Within the Record Supports empirical's Allegations that the Information Redacted from the Westfalia Contracts was "Highly Confidential."**

The Motion for Protective Order, filed by Westfalia on Sunday, January 24, 2020, sought relief from the Rule 45 Subpoena served by Swisslog – not relief from the 12/22/20 Order.  [ECF # 110].  In support of the Motion, Westfalia submitted the one-page summary Affidavit of Daniel Labell, the President of Westfalia.  [ECF # 109-5].  Mr. Labell provided general testimony as follows:  1.) information redacted from empirical's document production is confidential, proprietary trade secrets of Westfalia, 2.) the information redacted reflects decades of research and development to design and implement an automated distribution system, and 3.) the redactions are confidential trade secrets that Westfalia restricts from view of all parties, including the public and its competitors.  [Id. ¶¶ 4, 5, and 7].  The affidavit makes no mention, whatsoever, of the Westfalia contract documents.  [Id.].  Nothing within Mr. Labell's affidavit demonstrates that the redacted portions of the Westfalia contracts dated February 16, 2020 and after, represent decades of research and development, or are otherwise 'highly confidential," proprietary, trade secrets.

h.  **The Information Redacted from the Westfalia Contracts Was Not "Highly Confidential," Proprietary, or a Trade Secret.**

The redacted portions of the Westfalia Contract Documents included: 1.) the scope of alleged repair and replacement work to be performed for empirical, 2.) the cost to be charged to empirical for such work, and 3.) an industry standard used to measure throughput or speed at which materials are moved through the new system.  [ECF # 146, ¶¶ 12 - 17].   Once the redactions within the Westfalia Contracts was made available, it is obvious the information was not worthy of special protection.  [Id.].  None of the information represented decades of research and development.  None of this material represented a trade secret.  [Id.].  None of the material represented confidential and proprietary information.  [Id,].  The scope, price, and industry standards under a contract should not be withheld based upon claims of trade secrets.  [Id.].  Having authored the 12/22/20 Order issued by Judge Zwart,

empirical is not and was not entitled to blindly rely upon Westfalia's claims that the information

redacted from the Westfalia contract documents was "highly confidential."

### 2.     empirical's Reliance Upon the Addition Of An AEO Amendment To ECF # 25 Is Not a "Substantial Justification" For Its Violations Of The 12/22/20 Order

Judge Zwart rejected empirical's argument that its "good faith" belief that the parties would

agree to an enhanced protective order after entry of the 12/22/20 Order justified its redactions of the

Westfalia contract documents ruling that:

> "The court does not find empirical's argument regarding the anticipated protective order persuasive.  The discovery order in question was not drafted by the court. Here, empirical was, by its own admission, a key drafter of the December 22, 2020 Order.  If full compliance with the order was subject to additional conditions, these could, and should, have been included in the draft submitted to the court for consideration."

[ECF # 154, pg. 10].  Having drafted the 12/22/20 Order requiring the unconditional production of the

Westfalia contract documents, there can be no "substantial justification" for empirical to violate those

obligations it drafted, agreed upon, and presented to Judge Zwart for signature.

If empirical was contractually prohibited from compliance with the 12/22/20 Order, it should

have notified the Court.  empirical had ample opportunity to seek a modification of the 12/22/20 Order

but failed to do so.  As Judge Zwart noted, empirical was aware that modification of the 12/22/20 Order

was required as early as December 29, 2020.  [Id. pg. 12].  Yet empirical took no action.  Empirical

never attempted to modify the 12/22/20 Order before it became final and binding.  empirical's later

attempts to justify its violations of a final and binding order are inexcusable.

### a.     empirical Refused To Produce The Un-Redacted Westfalia Documents Even If An AEO Revision Was Added To ECF #25.

empirical's argument that it was prevented from producing unredacted copies of the Westfalia

contract documents due to the lack of an AEO provision within ECF # 25 is misleading.  [ECF # 157,

pgs. 17 – 22].  When counsel for Primus and Swisslog requested counsel for empirical to produce un-

redacted copies of the Westfalia contract documents, empirical responded via e-mail: "Westfalia

objected to the production of this document, and prior versions of this, in un-redacted form, even when treated as AEO." [ECF # 132, ¶ 43].

> **b.    empirical Reneged Upon The AEO Amendments To ECF # 25 – Not Primus And Swisslog.**

empirical argues that Primus and Swisslog reneged upon their agreement to amend ECF #25 to include AEO provisions, [ECF #157, pgs. 20 – 22], and that Judge Zwart erred in not finding this was a substantial justification for empirical to violate the 12/22/20 Order. [ECF # 154, pg. 11]. Empirical's argument has no merit.

On November 5, 2020 empirical represented it may need to seek leave of Court to amend ECF # 25 to allow for an Attorneys Eyes Only designation to protect alleged proprietary, confidential or technical information. [ECF # 146, ¶ 8]. Counsel for Primus and Swisslog responded that their clients had in-house experts that would be needed to review the Westfalia Contract Documents and any other documents designated AEO. [Id.]. This was discussed and agreed upon at the December 8th status conference, after which each party identified in-house experts who would be allowed access to AEO documents. After the parties appeared to agree in-house experts would be allowed access to documents with an AEO designation, empirical added a new and additional requirement. [ECF 145, pg. 7]. empirical insisted that the designated in-house experts could only see AEO documents with express written permission from the producing party as to each and every page of each and every document. [Id.]. The new requirement imposed by empirical was unacceptable to Primus and Swisslog, and the amendments to ECF # 25 were never finalized. empirical reneged upon the alleged AEO agreement – not Primus and Swisslog.

empirical nonetheless implies it was fraudulently induced to enter into the 12/22/20 Order, based upon a bait and switch made by Primus and Swisslog. [ECF $ 157, pg. 21]. empirical fails to acknowledge it: 1.) agreed upon the unconditional production of the Westfalia contracts prior to

-24-

modifying ECF # 25, and 2.) made the "bait and switch" to proposed amendments to ECF # 25, by imposing new and additional conditions upon the inclusion of in-house experts' access to documents containing an AEO designation.  empirical then argues that Judge Zwart's finding that, "given the context of the discussions, including weeks of fruitless negotiation [of a draft AEO Order] empirical was on notice that the protective order was anything but a certainty," [ECF # 157, pg. 21], was akin to finding that empirical should have "anticipated" Primus and Swisslog would renege on amending ECF #25 to include AEO  provisions.  empirical's interpretation of Judge Zwart's words is baseless, in that she was very clearly indicating that empirical's proposed amendments to ECF #25 had not been agreed upon when empirical drafted the 12/22/20 Order and were "anything but a certainty."  empirical made the "bait and switch" – not Primus and Swisslog.

### c.    empirical Produced Multiple Un-Redacted Documents Under an AEO Designation – But Redacted the Westfalia Contract Documents.

empirical was not forced to defy the 12/22/20 Order due to the alleged lack of AEO provisions within the existing Protective Order [ECF # 25].  empirical produced 500 images containing the AEO designation without redactions and without a formal modification of ECF # 25.  [DOC # 145, pg. 6]. Notably, empirical produced the redacted versions of the Westfalia contract documents subject to an AEO designation.  [ECF # 121, pgs. 8 – 9].  Nothing prevented empirical from complying with the 12/22/20 Order and producing un-redacted versions of the Westfalia contract documents using this same AEO designation.  [Id.].

### d.    empirical's Continued Reliance Upon the AEO Designation is a Red Herring

empirical's continued attempts to justify its violations of the 12/22/20 Order using the lack of an AEO amendment to ECF #25 to justify its violations of the 12/22/20 Order is a complete red herring. After the briefing was completed upon the Motions for Sanctions filed by Primus and Swisslog, empirical withdrew its use if the AEO designation.  empirical reproduced all 500 documents previously

produced with an AEO designation, without the AEO designation, subject only to the standard terms of ECF #25.  Notably, empirical also removed the AEO designation from the Westfalia Contract Documents that had been redacted in violation of the 12/22/20 Order.  Empirical obviously recognized that the AEO designation was not warranted in the first instance.  empirical cannot continue to credibly argue the lack of an AEO Amendment to ECF #25 is a substantial justification for its violations of the 12/22/20 Order.

**C.**   **Judge Zwart Did Not Err in Finding that Other Circumstances Did Not Render Sanctions Unjust Under Rule 37.**

Judge Zwart ruled "empirical has not articulated any relevant circumstances that would render the imposition of sanctions unjust under Rule 37."  [Id. pg. 15].  She rejected empirical's "hypocrisy" argument ruling that comparing Primus's objections to discovery requests based upon confidentiality concerns was "incongruent" with empirical's redactions of the Westfalia documents in the face of the 12/22/20 Order.  [Id. pgs. 13 – 14].  She likewise rejected empirical's argument that after-the-fact compliance with the 12/22/20 Order does not excuse or erase its non-compliance. [Id. pg. 14].  Finally, Judge Zwart refused to consider empirical's arguments related to the outcome of the mediation since it was empirical's conduct leading up to the mediation that is relevant to the sanctions imposed.  [Id.].

**1.**   **empirical's Allegations That Primus' and Swisslog's Objection to Ordinary Discovery Requests Justifies its Violations of the 12/22/20 Order are Unfounded.**

Judge Zwart properly ruled that confidentiality objections raised by Primus and Swisslog in response to discovery requests served by empirical did not in turn provide a "substantial justification" for empirical to violate the 12/22/20 Order based upon similar confidentiality objections.  empirical drafted and submitted the 12/22/20 Order and expressly consented to the unconditional production of the Westfalia contract documents.  No such order or agreement applies to the discovery served upon Primus and Swisslog.  The comparison is "incongruent" as was found by Judge Zwart.

2.      **empirical was Given Due Notice and the Opportunity to Be Heard.**

empirical's argument that it was not provided with notice of the violations of Judge Zwart's orders is untrue and misguided.  [ECF # 157, pg. 29 - 30].  On August 27, 2020, Judge Zwart cautioned the parties and counsel all further proceedings must be conducted in a cooperative manner.  [ECF No. 65, pg. 50, § 6].  The 8/27/20 Order expressly provided:

> "The parties and their counsel shall cooperatively interpret and conduct this order, and all discovery and proceedings in this case in a manner that secures the just, speedy, and inexpensive determination of the merits.  Failure to do so will result in sanctions, either upon motion or *sua sponte*."

[Id.].  Given the warning issued by Judge Zwart, empirical was given ample notice that violations of her discovery orders would subject both empirical and its counsel to sanctions by the Court.

Similarly, empirical's claims it was not given an opportunity to be heard is likewise untrue.  Westfalia filed a Motion and supporting Brief for a Protective Order on Sunday, January 24, 2021 [ECF No.109], that was joined in a 6- page joinder document filed by empirical.  [ECF # 111].  Judge Zwart conducted an emergency hearing on the morning of July 25, 2021.  [ECF #114 audio file].  During the hearing, counsel for Swisslog specifically requested sanctions on two separate occasions.  [Id.].  Thus, contrary to the argument now made by empirical, there was a motion before the Court.  [ECF No. 157, pg. 30].  Counsel for empirical appeared at the hearing and was afforded a full and complete opportunity to make every argument as to why empirical was not in violation of the 12/22/20 Order.  [Id.].  empirical was given both notice and an opportunity to be heard.

Judge Zwart then gave empirical a second opportunity to be heard when considering empirical's opposition to Primus's and Swisslog's Motions for Sanctions.  Empirical filed a 38- page brief arguing that sanctions were not proper, that empirical was "substantially justified" in defying the 12/22/20 Order, and that other circumstances rendered sanctions unjust.  [ECF # 141].  Once again, empirical was afforded an opportunity to be heard and justify its violations of the 12/22/20 Order.

**3.   empirical's Continued Disclosures About What Transpired During the Mediation are Improper.**

Judge Zwart did not consider "empirical's arguments related to the outcome of the mediation: It is empirical's conduct leading up to the mediation that is relevant to the sanctions determination here." [ECF No. 154, pg. 14].  So, any allegation by empirical that it participated during the two-days of mediation in "good faith" is irrelevant.  [ECF # 157, pgs. 30 – 31].  Nonetheless, empirical continues to disclose information to the Court regarding the two-day mediation session in direct violation of its obligations not to do so.  [ECF No. 145, pg. 3].

> All Parties signed a mediation agreement containing a "Confidentiality" provision that reads:
>
> This entire process is a compromise negotiation. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the Parties, their agents, employees, experts and attorneys, any person who attends the mediation via zoom or in-person and Mediator for purposes of these compromise negotiations are confidential. ***Such offers, promises, conduct, and statements will not be disclosed to third parties and are privileged and inadmissible for any purpose, including impeachment, under Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule or common law provisions.*** However, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or not discoverable as a result of its use in the mediation.  (emphasis supplied).

[Id.].  empirical signed this agreement.  [Id.]  empirical understood its obligations.  [Id.].  empirical continues to intentionally introduce inadmissible information to this Court.  [Id.].  There is absolutely no excuse for such conduct.

Moreover, empirical's reliance upon the Section 4(d) of the Mediation Plan for the United States District Court for the District of Nebraska is completely misplaced.  [ECF No. 145, pg. 2, fn. 1].  First, that provision is not applicable, because the parties' mediation was not conducted pursuant to the procedures set out in Paragraph 4.  Instead, the parties had an express agreement that nothing said or done in the mediation was admissible in this Court.  [Id.].  Second, Section 49(d) applies only to a "motion for sanctions ***regarding*** the mediation," [Id.] (emphasis added), whereas the current Motions for Sanctions apply to empirical's violations of the 12/22/20 Order and intentional misconduct leading

up to the mediation.  [Id.].  Moreover, empirical grossly mischaracterizes events during the mediation.  Accordingly, Primus respectfully requests the Court decline to consider the inadmissible information empirical has set forth.  Alternatively, should the Court elect to consider such information, Primus respectfully requests the opportunity to supplement the record with a more accurate accounting of what occurred during the mediation.

## D. Judge Zwart Did not Err in Finding empirical was Responsible for Costs and Fees Incurred Between January 14, 2020 and January 26, 2020 in preparation for and participation in the Failed Mediation.

Judge Zwart properly ruled that "[u]under the circumstances presented, the Court finds that empirical should be sanctioned for all costs of preparation for the mediation, including experts and mediators' fees, from January 14, 2020 through the conclusion of the mediation."  [ECF # 154, pg. 16].  Her ruling was based upon findings that:

> empirical has failed to accept any responsibility for its course of conduct., and it has engaged in similar conduct before.  When faced with the hard choice – disassembly v, preservation of the ASRS System – it began disassembly with no notice to the court.  When faced with a choice of complying with my order (with or without a post-order ruling on the protective order dispute), or complying with a contractual confidentiality clause, empirical chose to comply with the confidentiality clause. In both cases, empirical acted unilaterally, choosing to ask for the court's forgiveness rather than its permission.  In this district, that is not the type of litigation tactic that the court expects or condones.
>
> Empirical drafted the order in question, and then did not comply with it.  That disrupted and delayed preparation for mediation and necessitated a hostile confrontation with opposing counsel minutes before those same individuals were scheduled to attempt a fruitful mediation of this multi-million dollar dispute.  No doubt, the spirit of compromise necessary for settlement was derailed by the anger and mistrust arising from empirical's non-compliance, and by the fact that due to empirical's unilateral decision to withhold court-ordered discovery, Primus and Swisslog were not afforded an opportunity to read and consider information necessary for case evaluation before the mediation began.

[ECF # 154, pg. 16].  These finding were more than supported by the evidence produced by Primus in support of its Motion for Sanctions.  [ECF # 121, pgs. 11 – 23; ECF # 145, pgs. 6 – 19; ECF # 132, ¶¶ 56 – 61; ECF # 146, ¶¶ 13 – 17].

1.      **Judge Zwart Had Multiple Options in Assessing Sanctions Under Rule 37.**

Judge Zwart properly cited the sanctions available under Rule 37, for empirical's violations of

her 12/22/20 Order when finding that:

> The available sanctions include staying further proceedings until the order is
> obeyed; dismissing the action or proceeding in whole or in part; treating as
> contempt of court the failure to obey the order; and striking pleadings in whole or
> in part. [Fed. R. Civ. P. 37(b)(2)(A)]. And either "instead of or in addition to" the
> sanctions outlined above, "the court must order the disobedient party, the attorney
> advising that party, or both to pay reasonable expenses, including attorney's fees,
> caused by the failure, unless the failure was substantially justified or other
> circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C )
> (emphasis added)

[ECF # 154, pg. 8]. Judge Zwart then recognized "a district court has wide latitude in imposing

sanctions for failure to comply with discovery … [b]ut that Rule 37 sanctions are to be applied

diligently and equitably." [Id. pg. 8]. Given empirical's history of non-compliance with orders issued

by the court, Judge Zwart's assessment of fees and expenses (without further sanctions) was

extraordinarily generous and equitable towards empirical.

2.      **empirical's Reliance Upon *Goodyear* is Misplaced.**

empirical argues that the assessment of sanctions is governed by the decision of the United

States Supreme Court in *Goodyear Tire & Rubber Co, v. Haeger*, 137 S. Ct. 1178, 1186 (2017) [ECF

# 157, pgs. 23 – 29], and that Judge Zwart erred in awarding fees and expenses that Primus would have

incurred regardless of empirical's misconduct. As indicated above, the *Goodyear* decision was limited

to the issue before it. *See Goodyear*, 137 S. Ct. at 1183-84 ("In this case, we consider a federal court's

inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal

fees."). In *Goodyear*, the Supreme Court held that district courts must only order sanctions under their

inherent authority that are "'calibrated to the damages caused by' the bad-faith acts on which it is

based." Id. at 1186 (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 834 (1994)). Here, Judge Zwart

did not enter a fee award pursuant to any "undelegated power" based upon a finding of "bad faith."

[ECF # 154, pg. 8, fn. 2].  Instead, she expressly entered a fee award, as required under Rule 37, after finding that empirical had violated an Order of the Court.  [Id. pgs. 8 – 15].  Accordingly, *Goodyear*, and the other "inherent authority" cases empirical cites, have little application.  *See, e.g.*, *Equal Employment Opportunity Commission v. CRST Van Expedited, Inc*., Case No. 07-CV-95-LRR, 2017 WL 11453368 (N.D. Iowa Dec. 27, 2017) (explaining that *Goodyear*, which "consider[ed] a federal court's inherent authority to sanction a litigant for bad-faith conduct," was inapposite to the imposition of attorney fees pursuant to statutory authority).  Moreover, Judge Zwart's analysis carefully considered the remedial goal of sanctions, and the impact of empirical's conduct on Primus and Swisslog.  [ECF # 154 at 15-16].  As such, even if *Goodyear* does apply to attorney fee awards for discovery order violations under Rule 37(b)(2)(C), Judge Zwart's sanctions Order was specifically calibrated to the damages caused by empirical's violation of the discovery Order.

> **3.     The Parties' Obligation to Mediate was Not Cast in Stone.**

empirical argues that the parties' obligation to mediate was established on December 8, 2020 and Judge Zwart erred in assessing sanctions against empirical to reimburse costs that would have been incurred regardless of empirical's subsequent violations of the 12/22/20 Order.  [ECF # 157, pgs. 25 – 26].  In doing so, empirical fails to acknowledge that the 12/22/20 Order governed all aspects of the mediation, including, most importantly, the discovery required for a successful mediation.  [ECF # 100].  empirical's blatant violations of the 12/22/20 Order caused severe prejudice to Primus, and Swisslog.  [ECF # 132, ¶ 80].  Had Primus and Swisslog known from the outset that empirical intended to blatantly defy the 12/22/20 Order, they (unlike empirical) would have requested relief from Judge Zwart and avoided the costs and expenses of proceeding with a mediation doomed for failure.

> **4.     Primus Would not Have Incurred Any Costs in Preparing and Conducting the Mediation Had it Known empirical Intended to Violate the 12/22/20 Order.**

empirical argues that Judge Zwart erred in failing to find "causation" between empirical's violations of the 12/22/20 Order and the assessment of fees and expenses incurred by Primus and

Swisslog between January 14, 2020 and January 26, 2021.  [ECF # 157, pgs.26 – 27].  empirical acknowledges Primus sought all fees and expenses incurred when preparing and participating in the mediation, [Id. pg. 26], but refuses to recognize that Primus would not have incurred any costs had it known empirical intended to violate the 12/22/20 Order.  [ECF # 132, ¶ 76 - 80; ECF # 146, ¶¶ 12 - 28].  If empirical had made known it intended to withhold the scope and costs of repairs from the outset, Primus would have requested Judge Zwart to delay the entire mediation process until the matter of full disclosure could be resolved.  Primus would not have incurred any costs.

As it is, Judge Zwart limited the fees and expenses that had been requested by Primus and Swisslog, finding that:

> It is more appropriate to measure the sanctionable period beginning on January 14, 2021.  That was the date on which empirical first produced redacted documents, in blatant contravention of the December 22, 2020 Order.

[ECF # 154, pg. 15].  Although Judge Zwart did not identify "any prejudice experienced by Primus and Swisslog prior to that first, improper redaction," Primus would not have incurred any costs and expenses had it known empirical would fail to comply with the 12/22/20 Order from the outset and was therefore prejudiced when incurring all cost and expenses related to the mediation between December 22, 2020 and January 26, 2021.  [ECF # 132, ¶ 76 - 80; ECF # 146, ¶¶ 12 - 28].

### 5.  empirical's Redaction of the Westfalia Documents in Violation of the 12/22/20 Order Was a Substantial Contributing Factor In Causing the Mediation to Fail.

empirical argues that redaction of the Westfalia contract documents did not cause the mediation to fail, and that Judge Zwart erred in finding otherwise.  [ECF # 157, pgs. 27 – 29].  In doing so, empirical fails to acknowledge it did not provide Primus and Swisslog with un-redacted copies of the Phase I and Phase II proposals until 11:30 am on January 25, 2021.  [ECF No. 121, pg. 12].  At that time, the first day of the Mediation was well underway.  [Id.].  Neither Primus, its in-house experts, nor its third-party experts had sufficient time to fully investigate and evaluate the information contained

within the un-redacted proposals.  [Id.].

Upon receipt of the un-redacted portions of the Westfalia Contract Documents, Primus finally received critical information and materials necessary for the investigation and evaluation of empirical's claims, allegations, and damages.  [ECF # 121, pgs. 13 – 14; ECF # 132, ¶¶ 56 – 61].  The un-redacted portions of the Phase I and Phase II Proposals revealed that: 1.) empirical is removing and replacing the entire $14 million ASRS System despite its repeated denials and representations to the contrary, [Id.], 2.) empirical is removing and replacing portions of the ASRS System that have never been identified as being defective as required by the 8/27/20 Order, [Id.], 3.) the "throughput" requirements under the Westfalia contract do not materially differ from the "throughput" requirements established by Swisslog that empirical claimed to be defective, [Id.], 4.) empirical is replacing the 42,000-case system installed by Swisslog with a 2,200 pallet system installed by Westfalia, [Id.], and 5.) empirical has no grasp whatsoever over the alleged costs of repair or replacement it seeks to recover from Primus and Swisslog.  [Id.].  Item 4 was especially critical because it revealed that empirical was replacing the case system (i.e. handling single boxes) it designed and purchased from Swisslog, with a pallet system (i.e. handling 20+ boxes to each pallet) that it was purchasing from Westfalia.  [Id.].

### a. empirical Knew the Scope and Cost of Repairs was Critical to a Successful Mediation.

empirical has openly acknowledged that the scope and cost of repairs of alleged defects within the existing ASRS System was critical to the mediation.  [ECF # 141, pg. 33, ¶ 2]. empirical conceded "[u]nder Nebraska law, the cost of the repair – i.e. the cost of Westfalia' s work – supplies the default measure [of damages] unless the breaching party shows that economic waste would result."  [Id.].  Thus, were empirical to prevail upon its claims, the "costs of repair" would be the proper measure of damages, and that information was critical to prepare for and negotiate a meaningful settlement during the mediation.  [Id.].  Hence, Primus and Swisslog had informed empirical back on December 8 and

again on December 17, 2020 that copies of the Westfalia contracts identifying the scope of repairs, costs of the repairs and the standards applicable to the alleged repairs was critical to a successful mediation.  [ECF # 146, ¶¶ 12 - 24].  Despite such knowledge, empirical redacted all costs of repair from both the Phase I and Phase II proposals.

### b.   empirical Concealed Critical Information and Documents Required for a Successful Mediation.

During the December 17, 2020 hearing before Judge Zwart, Primus and Swisslog notified empirical they would require certain specific documents and information to prepare for and participate in a successful mediation. The critical documents and information included: 1.) the complete Westfalia Contract Documents, required to identify and investigate the scope of the alleged repairs, the costs of the alleged repairs, and any changes between the existing ASRS System and any alleged repairs thereto, 2.) the complete Sikich contract documents, required to identify and investigate the scope changes made to the empirical software, the costs of the changes, and how changes made to the empirical software impacted the operation and functionality of both the existing ASRS System and any repairs thereto, and 3.) a breakdown of the damages empirical was seeking to recover from Primus and Swisslog resulting from alleged defects within the existing ASRS and the alleged repairs undertaken thereto. [ECF # 100, pgs 2 – 3, §§ 2.a – 2.e].  empirical failed and refused to provide most of this information prior to the mediation.  empirical failed to provide the un-redacted Westfalia contract documents until Judge Zwart ordered empirical to do so a second time on the morning of January 25, 2021.  empirical has still not provided some of this information even as of this writing.

### c.   Understanding the Scope of Alleged Repairs empirical Claimed was Needed was Critical to a Successful Mediation.

The redactions within the Phase I and Phase II proposals concealed the scope of the alleged repairs for which empirical was claiming Primus and Swisslog were responsible.  [ECF # 132, ¶¶ 56 – 61].  It was not until after the start of the mediation that empirical disclosed this information in its

entirety, indicating it was removing and replacing the entire $14 million ASRS System.  [Id.].  The failure of empirical to disclose this information as required by the 12/22/20 Order prevented Primus from evaluating empirical's claims and allegations.

The scope of work under the Phase I contract includes: 1.) ripping out all (2) of the pallet load cranes, 2.) ripping out all of the pallet load conveyors, 3.) ripping out the horizontal members of the 9,200-pallet load racking system, never before identified as defective, and 4.) replacing all of the Swisslog equipment with two (2) Westfalia pallet cranes, Westfalia pallet conveyors, and new horizontal members for the existing pallet racking system at a contract cost of $5.6 million.  [ECF # 132, ¶ 60].

The scope of work under the Phase II Proposal is far more severe and includes: 1.) ripping out all (4) case load cranes, 2.) ripping out all case load conveyors, 3.) ripping out the entire 42,000-case load racking system, 4.) adding a new mezzanine to the existing building, 5.) replacing all of the Swisslog case load equipment with two (2) Westfalia pallet cranes, Westfalia pallet conveyors, and an entirely new 2,300-pallet position racking system, and 6.) adding new and additional equipment not within the Swisslog scope of work at a budgeted cost of cost of $9.7 million. [ECF # 132, ¶ 61].

### d.   Understanding the Alleged Costs of Repair Was Critical to a Successful Mediation.

The redactions within the Phase II Proposal concealed the alleged costs of repair claimed by empirical relative to the existing case load portion of the ASRS System.  On the morning of the first day of mediation, Primus discovered that empirical intended to replace the case system installed by Swisslog with a drastically different pallet system that empirical neither purchased nor requested at a budgeted cost of $9.7 million.  [ECF # 146, ¶¶ 16 – 17].  empirical's claim for alleged Phase II repairs has nothing to do with alleged defects within the ASRS System – but is based entirely upon

-35-

buyer's remorse.

      **e.**    **empirical Dumped Massive Amounts of Information Upon Primus and Swisslog Just days before the Mediation was Scheduled to Occur.**

empirical produced 86,917 images in response to the 12/22/20 Order. [ECF No. 121, pg. 11, ECF # 132, ¶ 82]. 68,333 or 79% of those images were produced on or after January 14, 2021. [Id.]. The productions made by empirical on January 14 and 20, each took approximately 24 hours to download and process. Primus therefore had less than six (6) business days to process, review and investigate 68,333 documents/images prior to the start of the mediation on January 25, 2021. [Id.].

As of January 25, 2021, empirical had failed to identify critical facts and information it had agreed to produce under the 12/22/20 Order that were required for a successful mediation. The missing documents and information included, among others: 1.) the damages sought by empirical, including the costs to repair/replace Phase II, 2.) documents identifying the changes made to the empirical software controlling the ASRS System, and 3.) the scope of the alleged repair/replacement work to be performed by Westfalia under Phase I and Phase II. [ECF # 146, ¶¶ 12 – 17]. Counsel for Primus was therefore forced to devote extraordinary time and effort in an attempt to locate the missing information within the 68,333 images produced on or after January 14, 2021. Contrary to the assertions by empirical, these same efforts must now be replicated in order to review these same documents for the greater purpose of investigating the remaining issues involving the entire case.

empirical concludes it made only minimal redactions (i.e., 26 pages); however, these redactions concealed the critical information Primus and Swisslog required for a successful mediation. Had empirical alerted Primus and empirical from the outset that it intended to conceal this information, the costs and expenses incurred in preparing for and attending the failed mediation would have been avoided. [ECF # 132, ¶ 76 - 80; ECF # 146, ¶¶ 12 - 28].

## **CONCLUSION**

For the reasons set forth above, Judge Zwart's Memorandum and Order should be affirmed.

Dated this 19th day of May, 2021.

/s/ Joel D. Heusinger
JOEL D. HEUSINGER, Neb. No. 18326
KARI A.F. SCHEER, Neb. No. 24870
WOODS AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, NE 68508-2578
Telephone:   (402) 437-8500
Facsimile: (402) 437-8558
jheusinger@woodsaitken.com
kscheer@woodsaitken.com

STEPHEN L. WRIGHT
Georgia Bar No. 778747, admitted pro hac vice
JEFFREY J. NIX
Georgia Bar No. 544776, admitted pro hac vice
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone:   (770) 434-6868
Facsimile:   (770) 434-7376
swright@taylorenglish.com
jnix@taylorenglish.com

Counsel for Defendant Primus Builders, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with NECivR 7.1(d)(3). I further certify that my word processing program, Microsoft Word, counted 12,898 words, and was applied to include the caption, and all headings, footnotes, and quotations.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of May, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification to the following counsel of record:

Michael C. Cox, Esq.
J. Daniel Weidner, Esq.
John V. Matson, Esq.
Koley Jessen PC, LLO
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, Nebraska 68124-1079
daniel.weidner@koleyjessen.com
john.matson@koleyjessen.com
*Counsel for Plaintiff*

Jeremy T. Fitzpatrick, Esq.
Joshua S. Weiner, Esq.
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102
jeremy.fitzpatrick@kutakrock.com
Joshua.weiner@kutakrock.com
*Counsel for Third-Party Defendant*

J. Erik Connolly, Esq.
Nicole E. Wrigley, Esq.
David Pope, Esq.
Kathryn E. Clausing, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
econnolly@beneschlaw.com
mwrigley@beneschlaw.com
kclausing@beneschlaw.com
*Counsel for Plaintiff*

*/s/ Joel D. Heusinger*
JOEL D. HEUSINGER

02040798

-38-