**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

EMPIRICAL FOODS, INC.

          Plaintiff and Counter-
          Defendant,

   vs.

PRIMUS BUILDERS, INC.,

          Defendant,
          Counterclaimant, and
          Third-Party Plaintiff,

   vs.

SWISSLOG LOGISTICS, INC.,

          Third-Party Defendant.

**CASE NO. 8:19-CV-00457**

**REPLY IN SUPPORT OF EMPIRICAL FOODS, INC.'S OBJECTION**
**TO THE MAGISTRATE'S ORDER AWARDING SANCTIONS**

## <u>INTRODUCTION</u>

The story that Defendants Primus and Swisslog are telling this Court about empirical having a grand plan to undermine the mediation by redacting some of Westfalia's documents makes no sense. They say that "empirical voluntarily agreed to mediation," but in the same breath they claim that "empirical never intended to take the mediation seriously." (ECF #165, pp. 1, 13-14.) Why would empirical agree to mediate if it had no intention of taking the mediation seriously? That makes no sense. Similarly, Primus and Swisslog argue that the AEO protective order "was a pretense used by empirical to avoid having to comply with the Court order that empirical itself wrote" but "intended to blatantly defy." (*Id.*, p. 17; ECF #164, p. 31.) Why would empirical write an agreed order if it intended to blatantly defy it? That makes no sense either.

What does make sense is the truth. The truth is that empirical agreed to include the Westfalia contract documents in the December 22 Order because Primus and Swisslog had agreed to enter an AEO protective order. When Primus and Swisslog reneged on that agreement, empirical redacted some of the documents at the request of Westfalia, a third-party competitor of Defendants, until Westfalia could seek an AEO protective order. empirical was substantially justified in taking this approach, and it should not have been sanctioned for it.

Nor should empirical have been ordered to pay fees and expenses that it did not cause. Defendants cannot dispute that causation is required for an award of fees and expenses under Rule 37(b) of the Federal Rules of Civil Procedure and Supreme Court precedent. Yet Primus and Swisslog have not identified any finding by Judge Zwart that the redaction of certain Westfalia documents *caused* them to incur the nearly two weeks of fees and expenses that she awarded. Judge Zwart made no such finding—nor could she. Defendants would have incurred the fees and expenses she awarded regardless of the redactions. As a result, the order must be overruled.

1

## ARGUMENT

I.    **JUDGE ZWART ERRED BY SANCTIONING EMPIRICAL FOR TEMPORARILY REDACTING 26 PAGES AT THE REQUEST OF A THIRD PARTY WITH A LEGITIMATE CONFIDENTIALITY CONCERN.**

    A.    **Empirical's Production Complied With The December 22 Order.**

empirical showed in its opening brief that it complied with the December 22 Order by producing the Westfalia documents, even though 26 pages were initially redacted at the request of Westfalia until it could file a motion for a protective order.[1] In response, Primus and Swisslog do not cite a single case holding that a party violates an order to produce documents if the documents are redacted in any way, for any reason, for any period of time. (ECF #164, p. 17; ECF #165, pp. 13-14.) Primus concedes that it is common for document productions to be redacted, but Primus claims that practice applies only to documents produced in response to requests for production. But these *were* documents produced in response to requests for production. The December 22 Order prioritized and expedited the parties' productions in connection with the mediation, but empirical did not waive all of its objections to discovery any more than Primus and Swisslog did when they agreed to the December 22 Order. Like Primus, in response to the Defendants' discovery requests, empirical "object[ed] to the [requests] to the extent that they seek information that is confidential or proprietary to…third parties" and stated that "[p]roduction of documents containing confidential information will be contingent on entry of an appropriate protective order by the Court." (ECF #122-3 at pp. 2-3.) In light of these objections, empirical complied with the

---

[1]    This reply does not address all the other alleged discovery violations that Primus and Swisslog have used to pad their briefs. Judge Zwart held that "Primus and Swisslog only identified [those instances of alleged] noncompliance after the mediation had occurred and sanctioning empirical based on any of those complaints strikes the court as both unnecessary and potentially unfair." (ECF #154, p. 15 n.4.) If it pleases this Court, empirical would be happy to address its compliance with discovery—and Defendants' noncompliance—at a comprehensive status hearing.

December 22 Order by producing the Westfalia documents, notwithstanding its redaction of 26 pages pending the Court's ruling on Westfalia's anticipated motion for a protective order.

**B.      Empirical Was Substantially Justified In Honoring Westfalia's Request To Redact The Documents Until It Could Seek An AEO Protective Order.**

**1.      The Westfalia Redactions Were Not As Critical To The Mediation As Defendants Pretend They Were.**

empirical showed in its opening brief that even if producing 26 redacted pages violated the December 22 Order, empirical's redaction of highly confidential and proprietary documents until Westfalia could seek an AEO protective order was "substantially justified" under Rule 37. (ECF #157, pp. 16-22.) In response, Primus and Swisslog claim that empirical's initial redaction of these 26 pages concealed information that was critical to the mediation. (ECF #164, p. 34, ECF #165, pp. 13-14.) These arguments are contradicted by the facts. The Westfalia documents and redactions were far less critical than Defendants have portrayed them to be.

*First*, both Primus and Swisslog misleadingly suggest that the redactions concealed the price of the repair work that Westfalia is expected to perform on the ASRS. (ECF #164, p. 13, ECF #165, p. 13-14.) This argument is disingenuous because (as both Primus and Swisslog know) empirical separately provided them with the contract price for Phase 1 on January 6, 2021 and the price estimate for Phase 2 on January 8, 2021. (ECF #142-18, p. 3; ECF #142-1 at ¶44.) Recognizing that price could be important to the mediation, empirical separately provided it to Primus and Swisslog notwithstanding Westfalia's redaction of the price in the underlying documents. Yet, in their briefs, Primus and Swisslog act like they did not have the price until the documents were unredacted on the morning of the mediation. (ECF #164, p. 14, ECF #165, p. 11.) This is a perfect example of how Primus and Swisslog are trying to overstate the impact of the redactions by obscuring the truth.

*Second*, Primus and Swisslog wrongly assert that other redacted portions of the documents were also of critical importance. For instance, Swisslog argues that the "redacted information concerned…key provisions regarding [the ASRS's] functionality, including the expected 'throughput' of the Westfalia system." (ECF #165, p. 18.) However, Swisslog elsewhere states that the redacted Westfalia contract is merely "***a standard ASRS contract*** which provided information about how conveyors, cranes and computer systems would be used to transport pallets in and out of storage and the rates at which that would occur [*i.e.*, throughput]." (*Id.*, p. 16 emphasis added.) Swisslog cannot seriously claim that the redaction of the Westfalia contract deprived it of crucial information if that contract was "standard" in the industry. As a member of the industry, Swisslog would already be aware of the information that was redacted from a "standard ASRS contract" between Westfalia and empirical.

*Third,* the alleged importance of the Westfalia documents is belied by how little Primus and Swisslog did to obtain them. When Westfalia indicated in November 2020 that it was willing to produce the documents upon entry of an AEO protective order, Swisslog did not agree to one. Nor did Swisslog move to compel Westfalia to produce the documents without an AEO order. Likewise, when empirical indicated in November and December 2020 that it was willing to produce the Westfalia documents upon entry of an AEO protective order, Primus and Swisslog did not agree to one. Nor did Primus or Swisslog ever move to compel empirical to produce unredacted versions prior to the mediation. In fact, it took Primus and Swisslog five days to even notice the redactions after empirical produced the first redacted document, and when they did finally review those documents, they did not file a motion. Even as the mediation approached in January 2021, Swisslog turned down Westfalia's offer to produce the documents subject to an informal AEO agreement. Clearly, if the Westfalia documents were as important as Primus and Swisslog claim,

they would have taken the necessary steps to obtain them at their earliest opportunity. Instead, Primus and Swisslog passed on numerous opportunities to obtain the Westfalia documents in November, December, and January.

*Fourth*, neither Primus nor Swisslog ever addresses why they could not have obtained the information in these documents by simply agreeing to a temporary AEO order to get the information they claim to be so important to all of the work they did for the mediation. Either Defendant could have simply agreed—without waiving any rights—to restrict access to the redacted information to counsel and outside experts then proceeded to expand the scope of the access if needed. This unwillingness to compromise, even in the slightest, demonstrates that it was not the actual information that was of interest to Defendants but rather the opportunity to argue to Judge Zwart that empirical "enjoys defying your orders." (ECF #142-10 at 12:11-13.)

*Finally*, Swisslog dismissively argues that "it is axiomatic that the Westfalia contract and associated proposals contained critical information for the Primus and Swisslog decision makers to have *going into* a mediation." (ECF #165, p. 17.) If having the information *"going into"* the mediation was so critical, Swisslog would not have declined Westfalia's offer to produce the unredacted pages on the weekend before the mediation. Nor would Primus and Swisslog have agreed to proceed with the mediation on January 25 if they needed the unredacted pages beforehand to effectively mediate. Judge Zwart gave Primus and Swisslog the option not to mediate that day, and they chose to proceed because they knew there would be plenty of time during the mediation for their numerous attorneys and experts to review 26 unredacted pages of a "standard ASRS contract." The mediation took place over two days—days that went late and included sessions where the two mediators met with the parties individually. In light of all this, Defendants cannot pretend the Westfalia redactions were so critical to the mediation process.

## 2. Primus And Swisslog—Not Empirical—Reneged On The AEO Agreement.

In its opening brief, empirical showed that Primus and Swisslog reneged on their agreement to enter an AEO protective order. (ECF #157, 5-6.) Now Primus and Swisslog have concocted a story about *empirical* reneging on the AEO agreement—an agreement that empirical itself was asking for. (ECF #164, pp. 24-25; ECF #165, pp. 2-3.) Defendants' story makes no sense and is not true. As the correspondence shows, empirical capitulated to Defendants' insistence that they be allowed to show AEO documents to all of the many in-house non-lawyers they had designated. (Ex. A, Declaration of David D. Pope ("Pope Dec.") ¶3, Ex. 1, p. 1.)[2] empirical sent Primus and Swisslog a final draft of the AEO protective order on December 23 and asked them to approve it for joint submission to Judge Zwart. (*Id.*) The only edit that empirical made to the prior draft that Defendants had agreed to was to state that any additional in-house non-lawyers permitted to see AEO materials needed to be approved in writing (as opposed to orally) by the producing party. (*Id.*) There was nothing controversial about that edit. Indeed, Primus and Swisslog did not express any objection to that provision at the time. Instead, they simply ignored empirical's request to enter the AEO protective order, knowing that because the December 22 Order had been entered the day before, they had accomplished their bait and switch. (*Id.*; ECF #142-1 at ¶28.) The December 22 Order had a requirement to produce Westfalia documents, so Primus and Swisslog decided they no longer needed to work with empirical to get the AEO protective order in place—even though

---

[2]     Any suggestion that empirical did not agree to Primus's and Swisslog's in-house AEO designees is directly contradicted by the words of Primus's counsel at the January 25 hearing: "[T]he parties did agree [on] all designated in-house experts. That's done. That's been agreed upon." (ECF #142-10 at 13:14-16.)

Defendants had agreed to enter an AEO protective order at the December 8 status conference. (ECF #142-1 at ¶24; #142-3.)

Primus and Swisslog now try to confuse the issue by claiming that empirical was insisting on an unreasonable provision in the draft AEO protective order. (ECF #164, pp. 24-25; ECF #165, pp. 2-3.) As an initial matter, there is nothing unreasonable about trying to limit the scope of access to a competitor's highly confidential information. Furthermore, empirical was not even proposing, much less insisting on, any such provision. As the correspondence shows, counsel for empirical misunderstood the intended meaning of certain language that Swisslog had added to the draft AEO protective order. (Ex. A, Pope Dec. ¶4, Ex. 2, pp. 5-7.) After being berated by counsel for Primus and Swisslog for this misunderstanding, empirical's counsel explained that he was not trying to propose any new requirements in the draft AEO protective order that Swisslog had circulated: "Guys, it wasn't our language, we didn't propose it, I'm not even trying to endorse it. It just didn't make sense to me…." (*Id.* at pp. 2-3.) empirical explained that the final draft it would circulate the following morning would be the draft that had been approved by the parties (including Swisslog's language) with the addition of a clause requiring any additional AEO designees to be approved by the producing party in writing, rather than orally. (*Id.* at pp. 1-2.) When empirical circulated that draft on December 23, it stated as follows:

> Per my email last night, here's the slightly revised version of the AEO Protective Order, with the consent to any AEO designees to be in writing. Empirical's final list of designees is Brian Goeden, Dean Karras, Spencer Frankl, and Nick Roth. If this is acceptable, please let me know, and we'll submit the joint motion and order. Thanks.

(Ex. A, Pope Dec. ¶3, Ex. 1, p. 1.) Primus and Swisslog simply ignored this email without any explanation. Swisslog now offers the weak excuse that—although it never said this at the time—it was unwilling to "engage in the worthless exercise of going through the mental gymnastics of

determining what games empirical was playing with this iteration of the AEO order." (ECF #150, p. 7.) The AEO protective order was therefore never entered.

Despite the fact that no AEO protective order had been entered, empirical *still* went ahead and produced many AEO documents (which it labeled accordingly), subject to the caveat that it expected Primus and Swisslog not to show these documents to any in-house non-lawyers other than those that had been agreed upon by the parties during the negotiation of the AEO protective order. (*See, e.g.*, ECF #142-11 at p. 2.) Primus and Swisslog evidently had no problem with that expectation, but they were still unwilling to enter the actual AEO protective order. In fact, in response to one of empirical's production letters, Swisslog affirmatively stated on January 15: "***Swisslog has not agreed to AEO***. However, for the purposes of mediation, we will limit distribution to the identified individuals and defer the issue for now." (Ex. A, Pope Dec. ¶5, Ex. 3, p. 1 (emphasis added).)

While this informal AEO understanding was good enough for empirical, Westfalia—whose highly confidential documents were actually being shown to a competitor—was understandably insistent on the entry of an actual court order protecting that information. And unlike empirical, which had been prepared to enter an "in-house expert" AEO protective order on December 23, Westfalia was not comfortable with an order that allowed its competitors to share its confidential documents with approximately 10 in-house non-attorneys.[3] Accordingly, at Westfalia's request, and consistent with its contractual obligations, empirical produced redacted

---

[3]     Swisslog argues that "empirical, by its own admission, never intended to produce the proposals without redactions." (ECF #165, p. 16.) This falsehood is refuted by the correspondence in which counsel for Westfalia indicated on December 28, 2020 that Westfalia "had the opportunity to review empirical's ***intended production***" and identified "two documents that, even with the AEO designation in the current [draft] confidentiality order," Westfalia wanted further protection for. (ECF #142-7, emphasis added.) empirical "intended" to produce those documents without redaction until Westfalia raised this objection on December 28. (*Id.*)

versions of the most sensitive documents until Westfalia itself could seek a formal AEO protective order from Judge Zwart. (ECF #142-1, ¶30.)[4] Under the circumstances, this was a substantially justifiable approach to the issue of third-party confidentiality.[5]

### 3.   Courts Have Routinely Held That A Party Is Substantially Justified In Withholding A Third Party's Confidential Information Pending A Ruling By The Court.

In its opening brief, empirical showed that numerous courts have recognized that protecting a third party's confidential information is a substantial justification under Rule 37 for withholding the documents until the court can address the issue. (ECF #157, pp. 16-19.) *See*, *e.g.*, *Stiffler v. Frontline Asset Strategies, LLC*, 2019 WL 2612726, at *5 (M.D. Pa. June 26, 2019) (party was "substantially justified in withholding disclosure of sensitive…information and documents until a confidentiality order [has been] entered."); *Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*, 2011 WL 4964034, at *3 (N.D. Okla. Oct. 19, 2011) (even where the party "fail[s] to seek a protective order, there is authority that a party is substantially justified…in withholding documents covered by a confidentiality agreement until the court rules on the matter"); *Cook v. Med. Savs. Ins. Co.*, 2006 WL 687126, at *2 (W.D. Okla. Mar. 17, 2006) (denying sanctions because a party's "confidential settlement [agreement]…substantially justified its nondisclosure of…information");

---

[4]      Primus argues that empirical failed to seek "judicial intervention in a timely manner." (ECF #164, p. 18.) But, like empirical, Primus itself explained that it did not seek judicial intervention sooner because Judge Zwart "expressed some dissatisfaction with having to monitor and babysit these parties," and thus the parties "tried to resolve this through the mediators." (ECF #142-10 at 12:17-23.) Indeed, Judge Zwart had said at the December 17 hearing that she "wish[ed] you could, among yourselves, resolve something without me." (ECF #98.) That is what empirical tried to do.

[5]      Swisslog makes much of the so-called "withdrawal" of AEO designation post-mediation, which was at its request. (ECF #165, pp. 16-17.) Considering that an AEO protective order was never actually entered, Swisslog had not agreed to treat the documents as AEO beyond the mediation, and Judge Zwart had made clear that she disfavored AEO limitations in this instance, removing the "AEO" stamps from the documents was fairly meaningless.

*Gulf S. Lithotripsy, LLC v. N. River Ins. Co.*, 2008 WL 11353646, at *2 (E.D. La. Feb. 6, 2008) ("Because the requested materials involve third parties…and contain a confidentiality provision, plaintiff was substantially justified in objecting to the request for production and opposing this motion").

Defendants, by contrast, do not cite a single case holding that a party is *not* substantially justified in withholding a third party's confidential documents pending a ruling by the court. Instead, Swisslog merely argues (in a footnote) that some of the cases cited by empirical "involved motions to compel, not a party's failure to abide by a court order." (ECF #165, p. 18 n.4.) However, according to the language of Rule 37, this is a distinction without a difference. Rule 37(a) applies to motions to compel discovery, and Rule 37(b) applies to failure to comply with a court order. Both subsections have the same standard for when a court is precluded from awarding fees and expenses as a sanction: when the party's conduct is "substantially justified." *See* Fed. R. Civ. P. 34(a)(5)(A)(ii) (no fees and expenses when "the opposing party's nondisclosure, response, or objection was substantially justified"); 34(b)(2)(C) (no fees and expenses when "the failure [to comply with an order] was substantially justified"). Defendants' attempt to distinguish Rule 37(a) from Rule 37(b) therefore falls flat. Regardless of whether a discovery request or a discovery order is involved, a party is "substantially justified" in temporarily protecting a third party's confidential information from disclosure until the court can address the confidentiality issue. *Stiffler*, 2019 WL 2612726, at *5; *Transp. Alliance*, 2011 WL 4964034, at *3; *Cook*, 2006 WL 687126, at *2; *Gulf S. Lithotripsy*, 2008 WL 11353646, at *2.

## II. JUDGE ZWART ERRED BY AWARDING PRIMUS AND SWISSLOG FEES AND EXPENSES THAT WERE NOT CAUSED BY EMPIRICAL'S ALLEGED VIOLATION OF THE ORDER.

### A. Causation Is Required For The Award Of Fees And Expenses As A Discovery Sanction Under Rule 37(b).

empirical showed in its opening brief that under Rule 37(b) and U.S. Supreme Court precedent, there must be a causal connection between the discovery violation and the fees and expenses awarded as a sanction. *See* Fed. R. Civ. P. 37(b)(2)(C) (fees and expenses must be "caused by the failure" to comply with the order); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) ("the court can shift only those attorney's fees incurred because of the misconduct at issue"). Primus and Swisslog contend that *Goodyear* applies only to sanctions awarded pursuant to a court's "inherent powers" and not sanctions awarded pursuant to Rule 37. (ECF #164, pp. 30-31, ECF # 165, p. 22.) But *Goodyear* is not so limited. To the contrary, the Supreme Court expressly recognized "the need for a court, when using its inherent sanctioning authority (*and civil procedures*), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Goodyear*, 137 S.Ct. at 1186 (emphasis supplied). Moreover, Defendants' distinction is not even relevant because there is no dispute that Rule 37(b)(2)(C) explicitly requires a causal connection. The dispute here is not so much about the standard, but rather Judge Zwart's failure to apply that standard properly.

### B. Judge Zwart Did Not—And Could Not—Find That The Redactions Caused Primus And Swisslog To Incur Two Weeks Of Fees And Expenses Preparing For The Mediation.

In its opening brief, empirical showed that Judge Zwart's sanctions order did not establish any causal connection between empirical's redaction of certain Westfalia documents and her award of nearly two weeks of fees and expenses that Primus and Swisslog incurred preparing for and participating in the mediation. (ECF #157. p. 22-28.) In response, Primus and Swisslog cannot

point to any finding in the sanctions order that the redactions *caused* all of those fees and expenses. The order did not identify a single fee or expense that Primus and Swisslog would not have incurred but for the redactions. The standard is whether the fees and expenses were "caused by the failure" to comply with the order. *See* Fed. R. Civ. P. 37(b)(2)(C). Judge Zwart did not find that they were, and thus the sanctions order was clearly erroneous and contrary to law.

Primus relies on case law holding that an award of fees may be appropriate "where the offending parties' conduct required their opponents to spend their time 'hounding' [them] for discovery instead of preparing the case." (ECF #164, p. 8, quoting *Management Registry, Inc. v. A.W. Companies, Inc.*, 2020 WL 1910589, at *12 (D. Minn. April 20, 2020).) That may be, but in such cases the court awards fees for the time spent "hounding" the other party, not for the time spent "preparing the case." The need to hound the other party is caused by the violation, whereas the need to prepare the case is not. Here, Judge Zwart did not award Primus and Swisslog the relatively minimal fees and expenses they incurred seeking to have the documents unredacted. Instead, she awarded Primus and Swisslog nearly two weeks of fees and expenses incurred "*preparing for and participating in mediation*." (ECF #154, p. 17 (emphasis added).) empirical's redaction of the Westfalia documents did not cause Primus and Swisslog to incur these fees. They would have spent time preparing for and participating in the mediation regardless of whether the Westfalia documents had been redacted or not. At most, the redactions caused Primus and Swisslog to write a few emails, make a few phone calls, and attend one hearing on Westfalia's motion for a protective order. The rest of Defendants' fees and expenses "would have been incurred in the absence of the discovery violation," and thus "the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone." *Goodyear*, 137 S.Ct. at 1187 (internal quotation omitted).

12

**C.    Primus And Swisslog Were Ordered To Mediate And Therefore Would Have Incurred Fees And Expenses Regardless Of Any Redactions.**

empirical showed in its opening brief that, regardless of the Westfalia redactions, defendants would have had to prepare for and attend the mediation, and thus Judge Zwart's award of fees and expenses incurred preparing for and participating in the mediation was clearly erroneous and contrary to law. (ECF #157, p. 22-28.) Judge Zwart ordered the parties to mediate on December 8, two weeks prior to the December 22 Order and more than a month before the production of the first redacted document. (ECF #93.) The redactions that allegedly violated the December 22 Order therefore could not have *caused* the mediation-related fees and expenses.

In response, Primus argues that it "would not have incurred any costs had it known empirical intended to violate the 12/22/20 Order." (ECF #164, p. 32.) But Primus then goes on to say that, in such case, Primus "would have requested Judge Zwart to delay the entire mediation process until the matter of full disclosure [of Westfalia documents] could be resolved." (*Id.*) Delaying the mediation would not have spared Primus the costs of mediating. If Primus and Swisslog had wanted to vacate the December 8 order requiring them to mediate, they could have requested that at any time. But they did not do that. Defendants also could have asked Judge Zwart to postpone the mediation to give them more time to review the 26 unredacted pages beforehand. They did not do that either. Nor did they ask empirical to reschedule or postpone the mediation. Judge Zwart even gave Primus and Swisslog an opportunity to cancel or postpone the mediation on the morning of, and they both declined that offer. (ECF #142-10 at 42:17-43:3.) Defendants cannot say they would have refused to mediate if they had known about the redactions beforehand because they *did* choose to mediate even *after* learning of the redactions.

Defendants' argument also misapplies the legal standard for causation. Rule 37(b)(2)(C) provides for the award of fees and expenses "caused by the failure" to comply with a court order.

13

Here, empirical allegedly failed to comply with the December 22 Order by producing 26 pages of Westfalia documents that had redactions. The question is whether these redactions, allegedly in violation of the December 22 Order, "caused" Primus and Swisslog to incur fees and expenses preparing for and participating in the mediation. Defendants never squarely address this question in their briefs because the answer is "of course not." Instead, Defendants claim (disingenuously) that had they "known from the outset that empirical intended to blatantly defy the 12/22/20 Order, they (unlike empirical) would have requested relief from Judge Zwart and avoided the costs and expenses of proceeding with a mediation doomed to failure." (ECF #164, p. 31.) But that is not the standard. The standard is whether the failure to comply with the order caused the fees and expenses. No matter how hard Defendants try to twist the standard to justify the award, empirical's alleged violation of the December 22 Order simply did not cause the fees and expenses that Judge Zwart awarded.

In addition to being legally flawed, Defendants' argument is logically flawed as well. Primus and Swisslog claim that they only agreed to mediate because empirical agreed to put the Westfalia documents in the December 22 Order. (ECF #164, p. 12; ECF #165, p. 17.) But at the time, Primus and Swisslog had agreed to enter an AEO protective order, which led to the inclusion of the Westfalia documents in the December 22 Order. Primus and Swisslog have not disputed that empirical (and Westfalia) told them repeatedly and consistently starting in November 2020 that an AEO protective order was a precondition of the production of the Westfalia contract documents. Nor have Primus and Swisslog denied that they agreed to enter an AEO protective order at the December 8 status conference. It is misleading to suggest that empirical pulled the rug out from under them by redacting certain Westfalia documents after Defendants refused to enter an AEO protective order.

14

Primus and Swisslog knew of the need for AEO for the production of the Westfalia documents when the mediation was ordered, and they never objected to proceeding at that time. Instead, they both actively worked to avoid coming to a reasonable compromise to address a valid concern about the highly confidential nature of the information versus their need for the information. Both Primus and Swisslog played their own part in how this dispute unfolded. empirical's alleged violation of the December 22 Order did not cause the mediation to be ordered on December 8, nor did it cause the fees and expenses that Defendants incurred preparing for and participating in that mediation.

### D. The Redactions Did Not Cause The Mediation To Fail.

empirical showed in its opening brief that "Judge Zwart did not find that empirical's initial redaction of certain Westfalia documents caused the mediation to fail, and thus her sanctions award could not have been based on the outcome of the mediation." (ECF #157, p. 26.) In response, Primus concedes that "Judge Zwart found that the outcome of the mediation was largely irrelevant." (ECF #164, p. 8.) Accordingly, the failure of the mediation cannot be a justification for Judge Zwart's sanctions award. Nevertheless, Primus insists that the temporary redaction of 26 pages of Westfalia documents was a "substantial contributing factor in causing the mediation to fail." (ECF #164, p. 32.) This is not true, and Defendants know it.

As an initial matter, it is important to keep in mind that Defendants *did have* the unredacted pages of the Westfalia documents during the mediation. empirical produced those pages immediately after the January 25 hearing on the morning of the first day of the mediation. So it is not as though Primus and Swisslog were without the information when the parties mediated for two days. The only issue is the timing of the production, but here Primus and Swisslog had plenty of time to review the unredacted documents. Their numerous attorneys and inside and outside

15

experts had two days to review and analyze them. And they even had empirical on hand to answer any questions about the documents using the mediators (no questions were asked). Indeed, if having the unredacted Westfalia documents for a longer period of time would have caused the parties to settle at the mediation, then the case would be settled by now. Primus and Swisslog have had the unredacted documents for *four months* now, and yet somehow their settlement position has not changed in light of this supposedly critical information. The argument that unredacting 26 pages of a standard ASRS contract sooner would have reversed the outcome of a multi-million dollar mediation is simply untenable.

Defendants' failure to address how little Westfalia came up during the mediation itself speaks volumes. They suggest that it is not proper to discuss what transpired at a mediation, even in a motion for sanctions, but that is incorrect. Not only does this District's Mediation Plan expressly provide for the admissibility of statements made during mediation in a "a motion for sanctions regarding the mediation," courts in this District have likewise found that such statements may be considered in connection with a motion for sanctions. *See Doe v. State of Nebraska*, 971 F.Supp. 1305, 1308 (D. Neb. 1997) (Piester, M.J.). In reality, Defendants' purported confidentiality concerns are merely an excuse because they know that the Westfalia documents played no part in the mediation. Day 1 of the mediation consisted mainly of discussions about liability issues and testing, and Westfalia's work was not a part of those discussions. (ECF #142-1 at ¶52.) Day 2 focused mainly on damages, but Westfalia's work had nothing to do with what either side offered or demanded to settle the claims. (*Id*.) Westfalia was simply a non-issue at the mediation.

To bolster the relevance of the redactions, Primus points out that the cost of repair—*i.e.*, what it claims is the work to be performed by Westfalia—is the default measure of damages for

breach of contract under Nebraska law. (ECF #164, p. 33.) But what Primus leaves out is that it has claimed that Westfalia's work "constitutes 'economic waste' for which empirical is solely responsible." (ECF #18, at p. 21). Under Nebraska law, in cases of economic waste, "the measure of damages is the difference between the value as constructed and the value if built according to the contract." *Moss v. Speck*, 306 N.W.2d 156, 157 (Neb. 1981). Because the Westfalia work would not be relevant under Defendants' theory of economic waste, the redactions would not have impacted the success of the mediation.

## III.   JUDGE ZWART'S AWARD OF SANCTIONS WAS OTHERWISE UNJUST.

### A.   Awarding Sanctions Against Empirical At The Hearing On Westfalia's Motion For A Protective Order Was Unjust.

In its opening brief, empirical showed that Judge Zwart sanctioned empirical without first giving empirical (1) notice that sanctions were being considered and (2) a meaningful opportunity to be heard. (ECF #157, p. 28.) Primus responds that empirical was "given ample notice that violations of [Judge Zwart's] discovery orders would subject both empirical and its counsel to sanctions by the Court" because Judge Zwart had stated in an August 2020 order that failure to cooperatively conduct discovery would result in sanctions, "either upon motion or *sua sponte.*" (ECF #164, p. 27; ECF #65, p. 50.) As an initial matter, even when sanctions are raised *sua sponte*, the party against whom sanctions are being considered must still receive notice and an opportunity to be heard. *Security Nat. Bank of Sioux City, Iowa v. Day*, 800 F.3d 936, 944 (8th Cir. 2015). Moreover, the idea that Judge Zwart's admonition in August 2020 provided blanket notice that sanctions would be awarded at any given time in the future without such notice and opportunity flies in the face of due process.

Judge Zwart did not issue an order to show cause or set a briefing schedule before concluding at the January 25 hearing that empirical "will be sanctioned." (ECF #142-10, 40:22.)

empirical walked into a hearing on a third party's motion for a protective order, and it walked out having been sanctioned for violation of an order that was not noticed up for hearing or under consideration. That is not due process. *See Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) ("before a district court may impose sanctions, the individual must receive notice that sanctions against her are being considered and an opportunity to be heard"); *Neb. Data Ctrs., LLC v. Khayet*, 2018 WL 10757614, at *1 (D. Neb. July 6, 2018) (Zwart, M.J.) ("[a]n opportunity to be heard" requires "the opportunity to fully brief the issue").

### B.   Awarding Sanctions Against Empirical Was Unjust Because Empirical Mediated In Good Faith.

Finally, as empirical pointed out in its opening brief, there appears to be no case in which a court has ordered a party to pay the costs of mediation as a sanction when that party participated in the mediation in good faith. (ECF #157, p. 29.) Evidently, Primus and Swisslog could not find such a case either. In fact, courts in this District have been "unable to conclude that an assessment of costs is warranted" where a party "prepared a mediation statement, sent an individual with settlement authority to the mediation, and incurred costs in connection with the mediation"—all of which demonstrates good faith. *Factory Mut. Ins. Co., Inc. v. Rasmussen Mech., Inc.*, 2014 WL 12577026, at *2 (D. Neb. May 6, 2014).

Here, Defendants cannot deny that empirical mediated in good faith. empirical devoted three litigation partners, two associates, an entire team of contract attorneys, and a paralegal to preparing for the mediation. empirical had two experts analyzing testing and software issues throughout December and January, and it made those experts available to discuss the case directly with the mediators without counsel present. empirical drafted and submitted three briefs to the mediators and Primus and Swisslog, totaling over 50 pages. And empirical sent three executives (including both its President and its General Counsel), four outside attorneys, and two expert

witnesses to the mediation itself. (ECF #142-1, ¶54.) Primus and Swisslog likewise prepared extensively for the mediation and negotiated in good faith. While it is disappointing that the parties did not settle, ordering empirical to pay for all three parties to prepare and participate in the mediation, merely because it redacted 26 pages of confidential documents, for two weeks, at Westfalia's request, pursuant to a contract, was unjust.

<u>**CONCLUSION**</u>

For all these reasons, Judge Zwart's sanctions order (ECF #154) should be vacated, and no sanctions should be ordered. Alternatively, if sanctions are ordered, then the amount of the sanction should be limited to the fees and expenses incurred by Defendants in seeking to have the Westfalia documents unredacted.

Dated:  May 26, 2021

EMPIRICAL FOODS, INC.,
*Plaintiff/Counter-Defendant*

By: *s/ John V. Matson*

Michael C. Cox, #17588
J. Daniel Weidner, #23738
John V. Matson, #25278
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500;
(402) 390-9005 (facsimile)
Daniel.Weidner@koleyjessen.com
John.Matson@koleyjessen.com

J. Erik Connolly (*pro hac vice*)
Nicole E. Wrigley (*pro hac vice*)
David D. Pope (*pro hac vice*)
Kathryn E. Clausing (*pro hac vice*)
BENESCH, FRIEDLANDER,
   COPLAN & ARONOFF, LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 212-4949
(312) 767-9192 (facsimile)
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
dpope@beneschlaw.com
kclausing@beneschlaw.com

*Attorneys for empirical foods, inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is less than 6,500 words as contemplated by NECivR 7.1(d)(3). I further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2016 and contains 6,433 words.

*s/ John V. Matson*
John V. Matson

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 26th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

<u>      *s/ John V. Matson*      </u>
John V. Matson