IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

EMPIRICAL FOODS, INC.,

       Plaintiff,

vs.

PRIMUS BUILDERS, INC.,

       Defendant and Third-Party
       Plaintiff

vs.

SWISSLOG LOGISTICS, INC.,

       Third-Party Defendant.

**8:19CV457**

**MEMORANDUM AND ORDER**

Primus Builders, Inc. ("Primus") has moved for an order assessing the amount of attorney fees and costs due and owing Primus from Plaintiff empirical foods, inc. ("empirical") in satisfaction of this court's award of sanctions at Filing No. 154. (See Filing No. 178).

Being fully advised, the motion will be granted in part and denied in part as outlined below.

BACKGROUND

This lawsuit stems from alleged defects in an automated storage and retrieval system ("ASRS System") within a freezer warehouse at empirical's South Sioux City, Nebraska meat packing facility. empirical hired Primus to design and construct the freezer warehouse, with Swisslog Logistics, Inc. ("Swisslog")

subcontracted to design and install the ASRS System housed within the freezer facility and used for receipt, storage, processing, and distribution of empirical's products. (Filing No. 1 at CM/ECF p. 4, ¶ 14).

On October 18, 2019, empirical sued Primus, claiming the ASRS System was defective. (Filing No. 1). Before Primus had even answered the complaint (and before Swisslog was joined as a party), on November 20, 2019, empirical notified Primus that it had retained a new contractor, Westfalia Technologies, Inc. ("Westfalia"), to begin corrective work on the ASRS System. On November 25, 2019, Primus objected to empirical's plan to begin replacement work, arguing that Primus needed to complete testing on the existing equipment in order to respond to empirical's allegations in this lawsuit. (See, e.g., Filing No. 49-12 at CM/ECF p. 2). Months of delays and disputes related to access and the scope of that testing plagued the early stages of this litigation.

On January 7, 2020, Primus filed a third-party complaint, formally joining Swisslog as a party to this lawsuit. (Filing No. 20). Thereafter, both Primus and Swisslog together (and repeatedly) requested that full on-site testing be performed before empirical started corrective work and/or dismantling the ASRS System. After the COVID-19 pandemic created additional delays, and additional disputes arose between the parties as to the scope and timing of the testing, empirical unilaterally began the process of dismantling the ASRS system beginning on April 14, 2020. (Filing No. 65 at CM/ECF p. 35). empirical's decision to take unilateral action was met with staunch resistance from Primus, which continued to ask for access to the site to complete testing on the allegedly defective system.

Ultimately, no compromise was reached, and the matter was litigated on Primus' motion for an order requiring empirical to halt unilateral disassembly of the ASRS System. (Filing No. 47). After full briefing and two hearings - one before

District Judge Robert F. Rossiter and one before the undersigned magistrate judge – the court agreed with Primus and ordered empirical to cease disassembly of the ASRS System until Primus could, to the extent still possible, conduct end-to-end testing. (Filing Nos. 52, 56, 65, and 81).

The court set progression deadlines on October 7, 2020, with a status conference set for December 8, 2020 to check in on the testing dispute and to discuss other scheduling and discovery matters as necessary. (Filing No. 80). During the conference, it became clear that the parties had not resolved their previous conflict and that they disagreed as to whether empirical was in continued violation of the court's order requiring early discovery and testing on the ASRS System. Having invested significant time and effort into the previous resolution of this discovery issue, and recognizing that the parties' dispute remained largely unresolved, I deferred resolution of all disputes related to my previous expedited ASRS testing and discovery order and instead directed the parties to attempt to resolve this case through mediation.

Following the December 8, 2020 conference, the court entered an order requiring that the parties "jointly submit to the court a proposed order outlining the discovery necessary for informed settlement discussions, the deadlines for providing that information, and the name of the selected neutral for participation in alternative dispute resolution." (Filing No. 93 at CM/ECF p. 1). That order required submission of the foregoing information on or before December 18, 2020, with a mediation to occur no later than January 31, 2021.  After the parties were unable to meet the deadlines set by the court for production of a mediation discovery order, the undersigned conducted an additional hearing on December 17, 2020 to marshal the case toward mediation. (Filing No. 98) (audio file). After conferring with counsel, the deadline for submission of a mediation discovery order was extended to December 21, 2020.

On December 22, 2020, the Court adopted, signed, and entered the parties' proposed discovery order, ("the December 22, 2020 Order"). The December 22, 2020 Order contemplated rolling discovery – with discovery set to occur on four dates prior to mediation: December 31, 2020, and January 7, 14, and 20, 2021. (Filing No. 100 at CM/ECF p. 3). Mediation was set to commence on January 25, 2021.

However, on the night before the mediation, Westfalia (the third party contracted to provide corrective work) filed a third-party motion for protective order, asking this court to protect certain information from unredacted disclosure to Swisslog and Primus. Westfalia claimed the disputed documents contain proprietary and confidential information and that unredacted disclosure would be highly prejudicial. (Filing No. 110 at CM/ECF p. 1-2). empirical joined Westfalia's motion, (Filing No. 111). On the morning of the mediation, the court convened an emergency hearing in the hope that this issue could be resolved without derailing the parties' settlement efforts. The court heard argument from all parties and third-party Westfalia. Having heard from the parties, the undersigned found that the December 22, 2020 order did not contemplate a party's ability to unilaterally determine that certain documents could or should be redacted. And, given the fact that the parties (and in particular, empirical) had drafted the December 22, 2020 order, the court found that empirical's failure to produce unredacted documents was unacceptable and in violation of the court's order. The court directed the parties to brief the issue so that the court could consider the scope of any sanctions to be awarded for empirical's discovery misconduct. After reviewing the full briefing, the court ordered sanctions as follows:

> The court considered the available sanctions, as well as the timeline of relevant events, and will decline to levy sanctions for the entire month of preparatory work conducted ahead of the mediation. It is

> more appropriate to measure the sanctionable period beginning on January 14, 2021. That was the date on which empirical first produced redacted documents, in blatant contravention of the December 22, 2020 Order. (Filing No. 121 at CM/ECF pp. 7-8). Based upon a review of the available record, the court has not identified any prejudice experienced by Primus or Swisslog prior to that first, improper redaction.

(Filing No. 154 at CM/ECF p. 15). The undersigned further held that "under the circumstances presented, the court finds that empirical should be sanctioned for all costs of preparation for the mediation, including expert and mediators' fees, from January 14, 2021 through the conclusion of the January 25-26 mediation." (Filing No. 154 at CM/ECF p. 16). empirical objected to the sanctions order, and Judge Rossiter overruled empirical's objection in its entirety. (Filing No. 170). The court directed Primus and Swisslog to provide empirical with an itemized billing statement so that empirical could assess their requests. The court noted that "[i]f the parties do not agree on the attorney fees and costs to be awarded, Primus and Swisslog shall file a motion for assessment of attorney fees and costs by no later than August 2, 2020." (Filing No. 170).

Thereafter, empirical and Swisslog reached an agreement requiring empirical to pay $50,281.93 to Swisslog within thirty calendar days after the court's order approving their stipulation. (Filing No. 177). But Primus and empirical were unable to reach an agreement.[1] On August 2, 2021, Primus filed its motion for assessment of fees, asking the court to order empirical to pay $149,245.53 to Primus. empirical argues that Primus' request is excessive and unreasonable. (Filing No. 183 at CM/ECF p. 2).

---

[1] Based on prior representations to the undersigned magistrate judge, the court notes that unlike Primus, Swisslog was far more capable of using in-house experts to evaluate Plaintiff's claims.

Having reviewed the briefing and attached evidence, the court finds that Primus' motion should be granted in part and denied in part, and the fees demanded in satisfaction of the sanctions award will be limited as outlined below.

ANALYSIS

"A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Recognizing that principle, this district explicitly directs the parties to discuss and attempt compromise prior to involving the court in the evaluation of appropriateness of attorney time and billing rates. Contested fee awards place the court in an uncomfortable, and somewhat unnatural position: Rather than evaluating the federal procedural rules, or the substance of a party's legal position, the court is instead tasked with evaluating counsel's underlying business practices and decisions. That said, when called upon to do so, federal courts can and do decipher billing statements and assess reasonable fees for sanctionable conduct, with the district court having broad authority to review, limit or expand the scope of recoverable fees and costs. Perdue v. Kenny A., 559 U.S. 542 (2010). Although the court need not calculate fees with mathematical certainty, it must "provide a concise but clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 434.

Where a stipulation as to the appropriate fee award is not possible, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. Under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, a party may be liable for reasonable expenses including attorney's fees caused by the failure to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(C).

6

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate…although a district court has discretion to adjust the fee to account for other considerations. Miller v. Dugan, 764 F.3d 826, 830–31 (8th Cir. 2014) (internal citation omitted). "[H]ours that are excessive, redundant, or otherwise unnecessary must be excluded from the district court's determination of reasonable time expended on the case." El–Tabech v. Clarke, 616 F.3d 834, 842 (8th Cir.2010).

I.   Attorney Fees

Primus claims that it incurred $79,336.75 in attorney fees during the sanctionable period between January 14 and January 26, 2021 and that all of those fees were incurred in preparation for the parties' mediation. (Filing No. 179 at CM/ECF p. 5, ¶ 22) (stating that Primus is "only seeking attorney fees that were necessarily, fairly, and reasonably incurred to represent Primus in connection with its preparations for and participation in mediation ordered by this Court for the Sanctions Period.").

Primus indicates in its supporting evidence that nine attorneys and/or other personnel working for Taylor English Duma LLP ("Taylor English") billed time during the sanctions period in preparation for the mediation. Those efforts resulted in 186.65 hours billed and $63,072.75 charged. The billing rates for Taylor English attorneys and personnel ranged from $395 per hour to $125 per hour. (Filing No. 179 at CM/ECF p. 5, ¶¶ 23-24). Primus further indicates that the services of three individuals at Woods Aitken LLP ("Woods Aitken") were utilized during the sanctions period in preparation for the mediation. (Filing No. 180 at CM/ECF pp. 2-3, ¶¶ 9-10). The billing rates for the Woods Aitken personnel ranged from $350 per hour to $170 per hour and resulted in $16,264.00 in total charged fees.

7

empirical objects to the attorney fees requested, arguing Primus should not have staffed this matter with so many attorneys, that the law firms representing Primus utilized too many partners (rather than associate attorneys), and that the hourly billing rates exceeded the going rates in this jurisdiction. (Filing No. 183 at CM/ECF p. 2).

Primus argues that the rates it billed were in line with those customarily charged by attorneys in this practice area and in this jurisdiction. Primus further argues that the complex nature of this litigation and the millions of dollars in dispute necessitated the use of seasoned partners to prepare for the mediation. They likewise argue that a Herculean effort was necessary to review all the documents provided in response to the December 22, 2020 discovery order and that using multiple attorneys to accomplish that feat in the 34 available days was not only appropriate, but necessary. (Filing No. 181 at CM/ECF p. 10) ("In view of the nearly monumental effort demanded in a compressed 34-day timeline, some 245 hours of attorney's fees were reasonably incurred to represent Primus from January 14 to January 26 at the end of mediation for an average rate of $328 per hour.").

Primus outlines the intensity of the document review in the run-up to mediation as follows:

> [e]mpirical produced 86,917 images electronically, with each image more or less corresponding to one printed page. (Dec. Jeffrey J. Nix, ECF no. 132, ¶ 82 ("Nix Dec.")). Of the empirical images produced, 79% of the images were produced on or after January 14, 2021 – just eleven days before the first date set for mediation. (Nix Dec., ¶ 54). Swisslog produced 387,935 images in the run-up to mediation. (Dec. Stephen L. Wright, ¶ 6). Swisslog's production included within it 15,593 emails. (Nix Dec., ¶ 84). Primus likewise was compelled to prepare for its own production and review its documents. Primus produced 22,892 image pages which amounted to 7,137 documents.

(Wright Dec., ¶ 7). Primus' production included emails of four email custodians who played central roles during the Project and which constituted 4,531 emails. (Wright Dec., ¶ 7).

(Filing No. 181 at CM/ECF p. 3).

The court finds that Primus' attorney assignments were reasonable. Based on Primus' description and the court's own understanding of the complexities of this case, the court is convinced that Primus was tasked with reviewing, digesting, and understanding an extremely large quantity of complex legal and technical documents in a short period of time, particularly since almost 80 percent of the documents were produced on or after January 14, 2021. (Filing No. 181 at CM/ECF p. 3). Moreover, on January 6, 2021, empirical "disclosed theories of relief solely against Primus for rescission and for restitution for total damages sought in excess of $33 million." (Filing No. 181 at CM/ECF p. 10). The timeline, coupled with both the breadth of documents to review and empirical's multi-million dollar theories of recovery, provide context when deciding whether too many attorneys were simultaneously working on this project. While ten attorneys assigned and actively working on a case at one time appears excessive at first blush, under the facts presented, using a full team of attorneys to absorb the information quickly so the case could potentially be settled early was not unreasonable.

The court is likewise disinclined to find that the rates billed, or the use of both partners and associates, was unreasonable under the circumstances. See Cent. Valley Ag Coop. v. Leonard, 2020 WL 587022, at *7 (D. Neb. Feb. 6, 2020), aff'd, 986 F.3d 1082 (8th Cir. 2021) (approving hourly rates for partners ranging between $258 and $390 per hour and hourly rates for associates ranging between $220 and $260 per hour); Powers v. Credit Mgmt. Servs., Inc., 2016 WL 6994080, at *3 (D. Neb. Nov. 29, 2016) (approving hourly rates up to $375).

9

Notwithstanding the above, the court will limit the amount of fees recoverable. Rule 37 requires that the court consider whether attorney's fees were "caused by the failure to comply with a discovery order." Fed. R. Civ. P. 37(b)(2)(C). Often, that task is uncontroversial, as Rule 37 monetary sanctions are frequently limited to the cost of reviewing produced discovery, meeting and conferring with opposing counsel, and drafting and litigating motions to compel. Put differently, when a party fails to comply with an order compelling disclosure of requested discovery, it is typically easy to discern what the opposing counsel was required to do in response and what fees are therefore recoverable.

Here, we are in a different posture with a different scope of sanctions to consider. The court sanctioned empirical for mediation preparation costs because empirical violated a court order when it failed to timely provide highly material information (details and cost of Westphalia's repair/replacement of the alleged defective work) necessary for informed settlement discussions. And by failing to disclose this information at any time prior to the start of the mediation, empirical not only undermined Primus' and Swisslog's advance preparation for settlement discussions, but also undercut their ability to trust empirical's representations during the mediation. The court therefore found that "empirical should be sanctioned for all costs of preparation for the mediation, including expert and mediators' fees, from January 14, 2021 through the conclusion of the January 25-26 mediation." (Filing No. 154 at CM/ECF p. 16).

But it is extremely difficult to distinguish what efforts were related solely to mediation preparation and what portion of these efforts should be understood as more generally applicable to this pending litigation. When parties are focused on limiting the risk, time, and expense of litigation, a general understanding of complex facts can be sufficient for reaching a compromise. A far more in-depth understanding is needed at trial and pretrial depositions. So, the level of review

10

and organization of documents, and of receiving expert assistance to understand those documents, is somewhat different if the parties are preparing to compromise rather than win.

Where, as here, the case does not settle, the parties do not start over from scratch. The knowledge gained from early mediation provides a solid springboard for further, and more detailed, trial preparation. In other words, in fairness, the court cannot assess all attorney fees for expert consultation and document review prior to mediation where a portion of that attorney work product will now be used to prepare this case for trial. Under such circumstances, the court finds that Primus is entitled to only half of the attorney document review fees and half of the attorney fees related expert consultation incurred during the sanctions period. As to all other attorney fees requested, (e.g., preparation of mediation PowerPoint, preparing mediation position statements, attendance at the mediation, etc.), the court finds the fees incurred were focused on the mediation itself, necessary for that purpose, and both fair and reasonable.

In sum, the court finds that the billing rates and hours billed by Primus' attorneys were not unreasonable. However, the court is not convinced that all the document review fees and fees related to expert consultation were "caused by the failure to comply with a discovery order." Fed. R. Civ. P. 37(b)(2)(C). The court will therefore, in its discretion, limit the recoverable attorney fees to $63,079.51.[2]

---

[2] In order to arrive at the above figure, the court reviewed all attorney billing, and isolated what were, in the court's view, entries solely related to document review or solely related to communication(s) with expert consultants. Then, the court allowed for recovery of half of the fees it had characterized as document review fees and half of the fees it characterized as expert/attorney consultation fees. The court then allowed for full recovery of all other billed attorney fees and costs.

II.    Consultant Fees

Primus claims that its consultants – Third Stage Consulting Group and David Schneider and Richard Woolery of Industrial Stage – "rendered substantial services in support Primus for mediation." (Filing No. 181 at CM/ECF p. 11). Primus further claims that its consultants "rendered a combined 194 hours of services for a total cost of $51,847.25 at an average hourly rate of $267.25" in preparation for the mediation of this case.

As with the attorney fees above, the court does not find the billed rates or hours expended to be unreasonable. This is a highly technical case regarding a multi-faceted project, with tens of millions of dollars in contention. It does not strike the court as unreasonable for the consultants involved to have devoted significant time and effort into understanding the software and other technology underpinning this dispute. And that knowledge would have been an important piece of mediation preparation.

But it will also be important as the case goes forward to trial. It is impossible to discern how much of these efforts can be apportioned solely to preparation for the mediation and not to the general preparation of the case. And since the case did not settle, some of the consultant work will need to be repeated as the case is further evaluated for trial. The court is not prepared to find that the total amount of claimed expert consultant fees were incurred solely for the purpose of preparing for the mediation and "caused by the failure to comply with a discovery order." Fed. R. Civ. P. 37(b)(2)(C). The court will allow Primus to recover half of its claimed consultant fees. Therefore, the court finds that $25,923.63 is recoverable as consultant fees incurred in preparation for mediation during the sanctionable period.

12

III.    Mediator Fees and Other Expenses

It seems uncontroversial that empirical shall bear the full cost of mediator fees. The parties chose these mediators and agreed to the cost. empirical must pay Primus' share of the cost, totaling $17,999.03.   empirical will likewise pay Primus' other itemized expenses, which the court finds reasonable and within the scope of the sanctions order. That total amount is $562.50

CONCLUSION

The court will grant in part an deny in part Primus' motion, as outlined in this order. To summarize, the court finds that Primus' fees were not unreasonable but that there was insufficient evidence to tie the total amount billed to the sanctionable conduct at issue. The court is unconvinced that the total demand represented efforts that could solely be characterized as efforts to prepare for mediation. With the reduction explained above, the court finds that Primus is entitled to reimbursement in the total amount of $107,564.67. That number represents: (1) $63,079.51 in attorney fees; (2) $25,923.63 in consultant fees; (3) $17,999.03 mediator fees; and (4) $562.50 in other expenses.

Accordingly,

IT IS ORDERED:

1)  Primus' motion (Filing No. 178) is granted in part and denied in part as outlined in this order.

2) Within thirty (30) calendar days of the date of this order, empirical shall remit the $107,564.67 due and owing to Primus in satisfaction of sanctions awarded and upheld by this court (Filing Nos. 154 and 170).

Dated this 22nd day of September, 2021.

BY THE COURT:

s/ Cheryl R. Zwart
United States Magistrate Judge