IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EMPIRICAL FOODS, INC., | |
| Plaintiff, | 8:19CV457 |
| vs. | |
| PRIMUS BUILDERS, INC., | MEMORANDUM AND ORDER |
| Defendant. | |
| vs. | |
| SWISSLOG LOGISTICS, INC., | |
| Third-Party Defendant. | |

Defendant Primus Builder, Inc. ("Primus") moves the court for an order compelling Plaintiff empirical foods, inc. ("empirical") "to comply with the various discovery orders issued by this Court over the past fourteen (14) months." (Filing No. 195). In support of its motion, Primus argues that empirical has failed to fully produce data and materials as ordered by the court and it has engaged in spoliation of evidence by modifying certain components of "ASRS System" - the allegedly nonfunctional food storage retrieval system that lies at the heart of this lawsuit.

Primus argues that, at a minimum, the court should order empirical to supplement its production as to certain categories of data, allow an "immediate Rule 34 inspection" of the ASRS System, and award Primus its fees in connection with this motion. (Filing No. 195 at CM/ECF pp. 7-8). In the alternative, Primus argues that empirical's "open defiance" of the relevant court orders also justifies dismissal of empirical's complaint as a discovery sanction. (Filing No. 195 at CM/ECF p. 10).

The court has weighed the parties' submissions, the proposed sanctions, and the relevant law. Being fully advised, the court will set an evidentiary hearing on Primus' motion.

## BACKGROUND

empirical operates a meat processing facility in South Sioux City, Nebraska. In the spring of 2016, empirical began implementing plans to expand its facility to include an adjacent freezer warehouse for the primary storage of raw material used by empirical to process beef and finished product for shipment. (Filing No. 1 at CM/ECF p. 2, ¶ 8). empirical hired Primus to design and construct the freezer warehouse, with Third-Party Defendant Swisslog Logistics, Inc. ("Swisslog") subcontracted to design and install an automated storage and retrieval system ("the ASRS System") housed within empirical's Two Rivers Distribution ("TRD") facility and used for receipt, storage, processing, and distribution of empirical's products. (Filing No. 1 at CM/ECF p. 4, ¶ 14).

Construction began, but in early 2019, empirical claimed the entire ASRS System was defective and needed to be completely removed and replaced. empirical notified Primus that, based on empirical's reading of the parties' agreements, Primus was liable to empirical for Swisslog's purported failure to implement a functional ASRS System. (See, e.g., Filing No. 61-1, at CM/ECF p. 4). On October 18, 2019, empirical sued Primus for the allegedly defective system. (Filing No. 1).

From the outset of this case, virtually all litigation efforts and disputes have focused on performing onsite testing of the ASRS System. Although two rounds of testing were conducted in early 2020, Primus and Swisslog have maintained

2

throughout this dispute that a third round of comprehensive, end-to-end testing is necessary to fully evaluate the nature and extent to which the ASRS System failed and the reasons underlying that failure. Indeed, this court exhaustively evaluated the request for additional testing in its August 27, 2020 order, finding:

> Under the totality of these circumstances…Primus has shown a need for further onsite testing, particularly considering the 37-item list of alleged defects disclosed in June [2020] and empirical's demonstrated intent to dismantle and replace the ASRS System before formal discovery begins. While empirical claims it will be burdened by further delay if the court allows another inspection, as evident by its submissions to the court, empirical is able to quantify those damages and no doubt intends to request recovery for those damages as part of this lawsuit. Thus, I do not find its burden sufficient to overcome the prejudice to Primus if Primus cannot do end-to-end testing, <u>to the extent still possible</u>, before empirical fully dismantles the ASRS System at issue in this litigation.

([Filing No. 65 at CM/ECF p. 36](#)) (emphasis added).

However, while the court agreed that Primus had sufficiently demonstrated that it <u>should</u> be allowed to conduct a third round of testing, the court did not know whether such testing <u>could</u> actually be conducted. empirical had already begun the physical dismantlement of the ASRS System prior to the court's order forbidding further modification until a third round of testing could be performed. And, Primus has been clear throughout that it believes that it must receive certain additional data and related discovery from empirical before it can determine whether additional testing is still feasible. Thus, in the August 27, 2020 order, the court required empirical to halt efforts to disassemble the system and outlined several categories of data, documents, and other materials that empirical was required to provide to Primus so that the proposed end-to-end testing could (to the extent still possible) be expeditiously facilitated. ([Filing No. 65](#)).

The court set progression deadlines on October 7, 2020, with a status conference set for December 8, 2020 to manage any ongoing testing dispute and to discuss other scheduling and discovery matters as necessary. (Filing No. 80). During the conference, it became clear that the parties disagreed on whether empirical was in continued violation of the court's order requiring the above discovery and testing on the ASRS System. Having invested significant time and effort into the previous resolution of this discovery issue, the undersigned deferred resolution of all disputes related to the previous expedited ASRS testing and discovery order and instead directed the parties to attempt to resolve this matter in mediation.

The mediation failed. And the parties thereafter litigated an additional discovery and sanctions dispute related to empirical's conduct leading up to the mediation. In the end, the court found that empirical had failed to comply with the court's mediation discovery order (Filing No. 100) and it ordered empirical to pay Primus' and Swisslog's mediation-related fees. After the sanctions and fees issues were fully litigated and resolved by the court, the court entered a progression order that, in part, set renewed deadlines focused on the completion of the requested additional ASRS System testing. (Filing No. 185).

In accordance with those renewed deadlines, Primus timely filed this motion to compel, (Filing No. 195), arguing that empirical has not complied with several of the court's previous discovery orders. Primus' motion outlines empirical's alleged noncompliance with this court's orders at Filing Nos. 65, 100 and 185. Primus argues sanctions are necessary because empirical has failed to preserve relevant and necessary discovery for this case, and to produce court-ordered discovery. As to preservation, Primus argues empirical dismantled portions of the ASRS System and continued to modify to certain software components that interact with the ASRS System (e.g., iFix, ERP/Dynamics, SynQ, and the host databases) after

ordered to cease such modifications. And as to production, Primus claims that empirical has failed to fully produce the required data and/or that it has failed to produce the data in a useable form. (Filing No. 196 at CM/ECF pp. 2-3).

empirical, in turn, asserts that Primus' characterization of empirical's conduct misconstrues the facts; empirical believes that Primus' assertions are baseless and that empirical has, to the extent reasonably possible, complied with the court's discovery directives. See generally (Filing No. 219).

## DISCUSSION

1) Sanctions under the Federal Rules

Federal Rule of Civil Procedure 37(b)(2) allows the court to sanction a party that fails to comply with the court's discovery orders. Specifically, subsection (A) provides that

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Fed. R. Civ. P. 37(b)(2)(A). The available sanctions include staying further proceedings until the order is obeyed; dismissing the action or proceeding in whole or in part; treating as contempt of court the failure to obey the order; and striking pleadings in whole or in part. Id. And either "instead of or in addition to" the sanctions outlined above, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other

5

circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

"A district court has wide latitude in imposing sanctions for failure to comply with discovery[.]" Aziz v. Wright, 34 F.3d 587, 589 (8th Cir.1994). But "Rule 37 sanctions are to be applied diligently" and equitably. Kilpatrick v. King, 2005 WL 2180097, at *2 (D. Neb. Sept. 7, 2005) (quoting In re Stauffer Seeds, Inc., 817 F.2d 47, 49 (8th Cir.1987)). The district court's "discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute [and] narrows as the severity of the sanction or remedy it elects increases." Vanderberg v. Petco Animal Supplies Stores, Inc., 906 F.3d 698, 704 (8th Cir. 2018) (quoting Doe v. Young, 664 F.3d 727, 734 (8th Cir. 2011)).

Whether a party is or is not in compliance with a previous court order, or has fully responded to relevant discovery, is the threshold inquiry. The court can only impose Rule 37 sanctions if it is sufficiently persuaded that the allegedly noncompliant party has violated a discovery obligation.

The following is a complete listing of Primus' assertions and empirical's response to each.

> Primus Assertion 1:
>
> Primus claims empirical has made ongoing improper "modifications" to the ERP/Dynamics software beginning on September 2, 2020, – two days after the 8/27/20 Order was entered – and upon information and belief continuing to present. (Filing No. 196 at CM/ECF p. 2).
>
> empirical Response 1:
>
> empirical explains that Dynamics/ERP software "touches almost every aspect of empirical's business, including sales, accounting, inventory management, operations (including the procurement of raw

6

materials, mechanical parts, equipment management and maintenance, purchasing, and forecasting, and production tracking)" and modifications have occurred related to its functionality in some, if not all, of those usages. (Filing No. 219 at CM/ECF p. 26, n. 4).

However, empirical indicates that it has maintained, without modification, a backup version of the software as it existed when this dispute first arose and "can restore the December 2019 version of Dynamics so that Primus is using the same version that the parties used during the inspections in January and February 2020" during any subsequent testing. (Filing No. 219 at CM/ECF p. 26).

Primus Assertion 2:

Primus argues empirical has failed to provide "a listing of all modifications to the ERP[/Dynamics], iFIX, WMS(SynQ) or host database that have been made since March of 2019, and the date of those modifications" made to its customized software since March of 2019 through present. (Filing No. 196 at CM/ECF p. 2).

empirical Response 2:

empirical represents that while modifications have been made to ERP/Dynamics in order to operate other aspects of empirical's business, no modification was made to the ERP/Dynamics software as it relates to the TRD facility in which the ASRS System resides. (Filing No. 219 at CM/ECF p. 20). empirical claims that it provided a list of the unrelated modifications to Primus in December 2020. (Filing No. 193-3).

As to iFix, empirical states that at no point since March 2019 has empirical made any code changes to the iFix software related to the TRD facility or the ASRS System. (Filing No. 219 at CM/ECF p. 20).

SynQ is Swisslog's software and empirical does not have access to make modifications. empirical claims that it produced "emails attaching release notes from March 2019 through July 2019 indicating when Swisslog was deploying a new software patch and describing what updates were made to its SynQ software in that patch." (Filing No. 219 at CM/ECF pp. 20-21).

And as to the host database, empirical asserts that it has not modified the host database for the TRD facility since Swisslog left the project

7

and has provided copies of the "Host Interface Open Item List," which purportedly outlines modifications to the database, exchanged between Swisslog and empirical, during the project. (Filing No. 219 at CM/ECF p. 21).

Primus Assertion 3:

Primus asserts empirical has failed to produce "recent copies of the ERP[/Dynamics software.]" (Filing No. 196 at CM/ECF p. 2). Primus further asserts that to the extent empirical claims that it in fact has produced such copies, that "empirical has failed to produce a copy of the ERP[/Dynamics] useable for probative integrated end-to-end testing and has failed to produce any copies whatsoever of its iFIX software." (Filing No. 196 at CM/ECF p. 18).

empirical Response 3:

For Dynamics, empirical claims that it has produced data providing Primus with a backup copy of empirical's "full Dynamics environment from a date near the initial inspections by Primus and Swisslog (January 12, 2020) and that this backup copy includes several items, including (1) a backup of empirical's Dynamics live production database (which includes all underlying data in empirical's Dynamics program); and (2) a backup image of empirical's live Dynamics environment, which includes images of the various servers and databases connected to Dynamics." (Filing No. 219 at CM/ECF p. 18). empirical also purports to have provided a copy of the application code for Dynamics, which is "from the Dynamics application server for the test environment utilized during the project." (Filing No. 219 at CM/ECF p. 18).

As for iFix, empirical asserts that it provided copies of the "plant SQL database" that interacts with iFix on May 3 and June 24, 2021. However, empirical could not provide backups of databases and images of servers for iFix, like it did for Dynamics, because, unlike Dynamics, iFix runs off of a "SCADA node." Given this difficulty identified by empirical, empirical believes that it has provided "the most readily usable copy of iFix" possible. (Filing No. 219 at CM/ECF p. 19).

Primus Assertion 4:

8

Primus represents that empirical refuses to produce "recent copies (or any copy for that matter)" of iFIX. (Filing No. 196 at CM/ECF p. 2).

empirical Response 4:

As noted above, empirical claims that it has provided Primus with access to iFix in "most readily usable" format" available. (Filing No. 219 at CM/ECF p. 19). Specifically, empirical claims that it provided a "virtualized machine" which provides Primus with "the clearest picture of how empirical's customized iFix environment works. A virtualized machine provides Primus with the ability to see all iFix screens that are available to empirical." (Filing No. 219 at CM/ECF p. 19).

Primus Assertion 5:

Primus claims that empirical failed to preserve and produce copies of the "transactional data and event logs" from the ERP, iFIX, and host database and failed to maintain records of the continual changes made to further customize its software, failed to activate features within its software that would automatically track such changes, and cannot identify the changes made to its software between March of 2019 and present. (Filing No. 196 at CM/ECF p. 3).

empirical Response 5:

empirical claims that "[a]fter an extensive search for the data, empirical informed Primus that no change logs exist for Dynamics and iFix that would show specific modifications to the software." (Filing No. 219 at CM/ECF p. 22). Nevertheless, empirical claims to have "produced the closest possible substitute." (Filing No. 219 at CM/ECF p. 22). empirical claims that it was not aware that there were certain features within the software that could have been activated to capture the data Primus requests. As a result, empirical claims that those features were not enabled and the data was therefore not captured in the form requested. (Filing No 219 at CM/ECF pp. 22-23).

For iFix, empirical asserts that it "produced all alarm and event logs available in iFix dating back to March 2019. And for the host database (about which Primus has not complained), empirical informed Primus that all logs associated with the host database are contained within the copies of the database that empirical already provided." (Filing No. 219 at CM/ECF p. 22).

9

Primus Assertion 6:

empirical has failed to provide full and complete "information regarding what iFIX does" by failing to fully disclose and explain how iFIX "simultaneously interacts with two ASRS Systems, the new system installed by Swisslog, and an aged system installed by Westfalia back in 2003." (Filing No. 196 at CM/ECF p. 3).

empirical Response 6:

empirical asserts that it provided to Primus "a narrative description of what iFix is and how empirical uses it." (Filing No. 219 at CM/ECF p. 16). empirical also claims to have provided "a screenshot of what iFix shows in the TRD facility in which the ASRS resides (the screenshot particularly showed the case conveyors in the facility)," a "diagram showing the connectivity of iFix to the ASRS," and a supplemental narrative description of "iFix and its functionality related to the ASRS." (Filing No. 219 at CM/ECF p. 16).

empirical also claims to have produced documents from the project showing "(1) the types of transactions and data exchanges associated with executing inventory adjustments; (2) a drawing of the process for executing an inventory adjustment; and (3) a network drawing showing where iFix sits in relation to the rest of empirical's network." Finally, empirical produced all of the iFix screens related to the TRD facility. (Filing No. 219 at CM/ECF p. 16).

Primus Assertion 7:

Primus asserts that empirical has failed to identify all "components and equipment" that have been removed, "including the supporting data connection and configuration and the electrical, pneumatic, walkways, and other related sub-subsystems that are integral to the operation and functionality, and end-to-end testing of the ASRS System." (Filing No. 196 at CM/ECF p. 3).

empirical Response 7:

On October 23, 2020, empirical provided a 99-item list of the equipment that has been removed (e.g., "pallet conveyors outside of freezer and in goods-to-person area"), the corresponding part

10

numbers for that equipment, and the date. All items were removed during the week of April 14, 2020. (Filing No. 219 at CM/ECF p. 24).

empirical claims that the 99-item list is comprehensive and includes all removed items.

Primus Assertion 8:

Primus argues that empirical has failed to produce all "contracts" it has with Sikich, LLP ("Sikich") which identify (on a summary basis) the ongoing modifications being made to the empirical software. (Filing No. 196 at CM/ECF p. 3).

empirical Response 8:

empirical claims that "Primus does not and cannot deny that empirical produced its consulting contract and the communications with Sikich required by the Mediation Order." (Filing No. 219 at CM/ECF p. 28). empirical further asserts that "[o]n December 2, 2020, weeks before the Mediation Order was entered, empirical voluntarily produced a summary of changes to the Dynamics software used at one of empirical's other facilities (known as DCS) and committed to producing "all Sikich invoices related to work done in conjunction with the Primus/Swisslog project, as well as all invoices for work unrelated to the project. empirical produced 48 Sikich invoices that same day." (Filing No. 219 at CM/ECF p. 24).

Primus Assertion 9:

Primus claims that empirical has failed to identify the "specific repairs" to the ASRS System that it alleges are required or the "specific costs" of the same in direct violation of Paragraph 4 of the 8/18/21 Order thereby preventing the parties from determining the 'proportionality' of discovery to be conducted in this proceeding, and whether this is a $10 million case, a $30 million case, or some much higher amount.

empirical Response 9:

empirical argues that its Supplemental Damages Statement complies with the court's order. (Filing No. 219 at CM/ECF pp. 33-34).

11

empirical's noncompliance with this court's previous orders is hotly disputed. empirical argues emphatically that it has attempted, in good faith, to fully comply with the court's discovery directives. Conversely, Primus claims that empirical has substantially underproduced the relevant data and materials and has likewise failed to meet the court's mandate that it preserve all components of the ASRS System.

Upon the court's thorough review of the record, briefing, previous orders, and submitted evidence, the court cannot determine, at this point, whether empirical has violated a discovery order. For example, the court cannot currently determine whether empirical's iFix narrative summary, its Supplemental Damages Statement, and its Sikich document production met the requirements of the court's previous orders. And while Primus states further responsive information should exist, or that more readily useable copies of empirical's software should be obtainable, empirical states it has produced everything it has.

Each party has numerous experts who attended the failed mediation, and those experts could no doubt explain the types of reports and information empirical has or should have available. Given the complexity and contentious nature of this case and the amounts at issue, the court would benefit from hearing the testimony of these experts to determine whether empirical has provided forthright and complete responses to written discovery. An evidentiary hearing will be scheduled.

2) Sanctions for Spoliation

Primus claims empirical's modifications and dismantling have spoliated key evidence for this case. Based on the information of record, empirical began dismantling the ASRS System while on notice that parties to this litigation were requesting testing or additional testing, and empirical admits it modified the non-

ASRS functions of the ERP/Dynamics software after the court's August 27, 2020 order forbidding software modifications. empirical failed to seek leave of court, through motion for protective order or otherwise, prior to making these alterations and modifications.

In considering whether to impose sanctions for spoliation, the court must consider whether evidence was intentionally destroyed to hide the truth, and whether the party claiming spoliation has been prejudiced by the destruction of evidence. Strutton v. Meade, 668 F.3d 549, 559 (8th Cir .2012); Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir.2007); Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir.2004)). Under the facts presented, specifically as to the issue of prejudice, the court must decide whether relevant end-to-end testing is still possible.

Here, empirical claims its post-order modifications of the ERP/Dynamics software would not affect the software's interaction with the ASRS System. It further asserts that it maintained a backup copy of the software, without any modification, that can be used in any subsequent testing conducted by Primus (and Swisslog). (Filing No. 219 at CM/ECF p. 22). Primus asserts that empirical's production constitutes "uncoordinated and disparate bits and pieces of the relevant software and databases from a broad range of dates" which, Primus claims, provide Primus with "no means to stitch these pieces together to conduct anything resembling probative end-to-end testing." (Filing No. 195 at CM/ECF p. 7). Primus' motion further suggests that the court enter an order requiring empirical "to re-install and restore the components and equipment to the ASRS System so as to enable end-to-end testing of the full and integrated ASRS System (i.e. including the pallet crane 'freezer' section of the ASRS System, not just the 'fresh' mini-load crane section) as requested by Primus's experts, David K. Schneider and Daryl

13

Grabus-Crockett in their accompanying declarations." (Filing No. 195 at CM/ECF p. 9).

The court and the parties must determine whether a third round of testing is possible and feasible; whether the software, hardware, and mechanical parts at issue in this case can be restored to the condition they were in when empirical declared a breach so that further end-to-end testing can be done. Primus has requested an immediate Rule 34 inspection of the TRD facility to evaluate the state of the ASRS System and to determine whether such testing may occur.

The court will set this issue for a hearing to address whether additional end-to-end testing can happen and at what cost. The parties (including Swisslog) must collaborate prior to the hearing and discuss whether and to what extent ASRS System hardware components must be reinstalled, whether and to what extent backup versions of the software components need to be reinstalled, the availability of experts and other necessary attendees at any additional testing, and whether Primus and/or Swisslog needs pre-testing access to the site for inspection and preparation prior to the hearing. The parties must also engage in good faith discussion related to the production of data and materials in this case. empirical is instructed to collaborate with Primus and Swisslog to the full extent reasonably possible to provide remaining information that might facilitate this testing.

If Primus and Swisslog believe that testing is now rendered impossible, they must be prepared to inform the court what missing data they believe is <u>actually fatal</u> to attempted end-to-end testing. And, if end-to-end testing is, by agreement of all parties, no longer an option, the parties must be prepared to explain whether the preservation requirements and/or injunctive effects of the court's August 27, 2020 order may now be lifted.

14

If a third round of testing is not possible, given the landscape in which the court and the parties now find themselves, the court will need to decide whether empirical intentionally spoliated evidence in an effort to conceal it. empirical was under an independent obligation (by operation of the Federal Rules of Civil Procedure) not to destroy relevant ESI and physical evidence <u>prior</u> to the court August 27, 2020 order requiring it to halt modifications to the ASRS System hardware and software. So even if empirical irreparably destroyed Primus and Swisslog's ability to conduct this testing by its conduct <u>before</u> the court's August 27, 2020 order, it may be subject to a spoliation sanction. The court must conduct an evidentiary hearing before deciding such issues.

Accordingly,

IT IS ORDERED that as to Primus' motion ([Filing No. 195](#)),

1) The court will conduct a hearing on the following issues:

    a) whether empirical has fully produced court-ordered discovery, and if not, what sanction is appropriate under these circumstances;

    b) whether a third round of end-to-end testing of the ASRS System can still be conducted; if so, at what cost; which party should bear that cost; and is that cost and effort proportionate to the need of Primus and Swisslog to obtain additional testing evidence for this case; and

    c) whether empirical intentionally failed to preserve relevant evidence for this case.

2) On or before February 11, 2022, the parties must meet and confer in preparation for the hearing on Primus' motion. The parties' discussions will include, but are not limited to, the following topics:

    a) Whether and to what extent ASRS System hardware components must be reinstalled in order to conduct additional testing;

    b) Whether and to what extent backup versions of the software components need to be reinstalled in order to conduct additional testing;

    c)    The availability of experts and other necessary attendees at any additional testing;

    d)    Whether Primus and/or Swisslog needs access to the site to determine if additional testing can be performed and if so, pre-testing access or inspection in preparation for additional testing;

    e)    Whether and to what extent remaining information in empirical's possession might facilitate this testing;

    f)    If Primus and Swisslog believe that testing is now rendered impossible, they must be prepared to inform the court, at the hearing to be set by this order, what missing data they believe is actually fatal for attempted end-to-end testing; and

    g)    If end-to-end testing is, by agreement of all parties, no longer an option, the parties must be prepared to discuss whether the preservation requirements and/or injunctive effects of the court's August 27, 2020 order may now be lifted.

3) A conference call will be held on February 22, 2022 at 11:00 a.m. to discuss the date and anticipated length of the evidentiary hearing on Primus' motion. The parties shall use the conferencing information assigned to this case to attend the conference. At the conference call on February 22, 2022, the parties must be prepared to discuss when they and their necessary witnesses are able to attend the hearing.

4) The requirement to conduct all remaining testing within thirty days of a ruling on Primus' motion ([Filing No. 195](#)) is set aside.

January 25, 2022.

                                                    BY THE COURT:

                                                    *s/ Cheryl R. Zwart*
                                                    United States Magistrate Judge